Stephen F. Yunker (CSB 110159)
**YUNKER & SCHNEIDER**
655 West Broadway, Suite 1400
San Diego, California 92101
Tel:  (619) 233-5500
Fax:  (619) 233-5535
Email:  sfy@yslaw.com

Gretchen Freeman Cappio
(admitted *pro hac vice*)
Dean N. Kawamoto (CSB 232032)
Gretchen S. Obrist (admitted *pro hac vice*)
**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel: (206) 623-1900
Fax: (206) 623-3384
E-mail: gcappio@kellerrohrback.com
          dkawamoto@kellerrohrback.com
          gobrist@kellerrohrback.com

Joseph N. Kravec, Jr. (admitted *pro hac vice*)
Wyatt A. Lison (admitted *pro hac vice*)
McKean J. Evans (admitted *pro hac vice*)
**FEINSTEIN DOYLE**
  **PAYNE & KRAVEC, LLC**
Allegheny Building, 17th Floor
429 Forbes Avenue
Pittsburgh, PA  15219
Tel:    (412) 281-8400
Fax:    (412) 281-1007
Email:  jkravec@fdpklaw.com
Email:  wlison@fdpklaw.com
Email:  mevans@fdpklaw.com

James M. Pietz (admitted *pro hac vice*)
**PIETZ LAW OFFICE**
429 Forbes Avenue, Suite 1710
Allegheny Building
Pittsburgh, PA  15219
Tel:  (412) 288-4333
Fax  1-866-633-1820
Email:  jpietz@pietzlaw.com

***ATTORNEYS FOR PLAINTIFFS AND
THE PROPOSED CLASS AND SUBCLASSES***

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| VICTOR P. GIOTTA and LORALEE GIOTTA, on Behalf of Themselves and All Others Similarly Situated , <br><br> Plaintiffs, <br><br> v. <br><br> OCWEN FINANCIAL CORPORATION, et al., <br><br> Defendants. | Case No. CV 15-00620 BLF <br><br> **PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS BY OCWEN FINANCIAL CORPORATION AND OCWEN LOAN SERVICING, LLC** <br><br> <u>CLASS ACTION</u> <br><br> Date:   September 17, 2015 <br> Time:   9:00 a.m. <br> Dept:   Courtroom 3, 5th Floor |

## TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................................................1

II.  SUMMARY OF THE OCWEN ENTERPRISE...............................................................3

III. ARGUMENT .......................................................................................................................4

  A.  The Notice Provision of the Deed of Trust Does Not Apply to Plaintiffs' Claims .......................4

    1.  The Deed of Trust Requires No Notice For Claims Against a Loan Servicer.........................4

  B.  The Notice Provision Does Not Extend to the Type of Claims Asserted Here ..............................7

  C.  Plaintiffs Do Not Assert a Breach of Contract Claim ................................................................8

  D.  Ocwen Servicing Fails to Present a Single Argument Warranting Dismissal of Plaintiffs'
      UCL, FDCPA, or RFDCPA Claims ...........................................................................................11

    1.  Plaintiffs Adequately Allege UCL Claims. ..........................................................................12

      a.  Plaintiffs Adequately Allege an "Unfair" UCL Claim ....................................................12

      b.  Plaintiffs Adequately Allege a UCL "Fraudulent" Prong Claim .....................................13

      c.  Plaintiffs Adequately Allege a UCL "Unlawful" Prong Claim ........................................15

    2.  Plaintiffs Adequately Allege FDCPA and RFDCPA Claims .................................................15

  E.  Plaintiffs Properly Allege Fraud and RICO Claims ...................................................................16

    1.  The Fraud Claim .....................................................................................................................16

      a.  No Fiduciary Relationship is Necessary ..........................................................................16

      b.  The Economic Loss Rule Does Not Bar Plaintiffs' Fraud Claim .....................................18

    2.  Plaintiffs Adequately Allege RICO Violations.......................................................................19

      a.  Plaintiffs Adequately Allege a Section 1962(c) Claim.....................................................20

        i.   The FAC Alleges a "Pattern Of Racketeering Activity." ...........................................20

        ii.  Racketeering Activity is Not Based on a Breach of Contract.....................................22

        iii. Plaintiffs Adequately Allege Fraudulent Intent .........................................................23

    3.  Ocwen Has Not Shown Plaintiffs' RICO Conspiracy Claim Fails.........................................24

F.   Ocwen Financial is Jointly and Severally Liable for Ocwen Servicing's Misconduct.................24

IV. CONCLUSION..........................................................................................................................25

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS BY OCWEN FINANCIAL CORPORATION
AND OCWEN LOAN SERVICING, LLC

# TABLE OF AUTHORITIES

## Cases

*AngioScore, Inc. v. TriReme Med., Inc.*,
  No. 12-CV-03393-YGR, 2015 WL 4040388 (N.D. Cal. July 1, 2015).................................25

*Beyer v. Countrywide Home Loans Servicing LP*,
  2008 WL 1791506 (W.D. Wash. Apr. 18, 2008), *aff'd*, 359 Fed. App'x 701 (9th Cir.
  2009) ........................................................................................................................................7

*Bias v. Wells Fargo & Co.*,
  942 F. Supp. 2d 915 (N.D. Cal. 2013) ................................................................. *passim*

*Bojorquez v. Gutierrez*,
  2010 WL 1223144 (N.D. Cal. Mar. 25, 2010)........................................................................18

*Boschma v. Home Loan Ctr., Inc.*,
  198 Cal. App. 4th 230, 129 Cal. Rptr. 3d 874 (2011)............................................12, 14, 17

*Bridge v. Phx. Bond & Indem. Co.*,
  553 U.S. 639 (2008)..................................................................................................................22

*Casey v. U.S. Bank Nat'l Ass'n*,
  127 Cal.App. 4th 1138 (2005) .................................................................................................25

*Cirino v. Bank of Am., N.A.*,
  2014 WL 9894432 (C.D. Cal. Oct. 1, 2014)...........................................................................13

*Commercial Union Assurance Co., plc v. Milken*,
  17 F.3d 608 (2d Cir.1994).........................................................................................................23

*Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio*,
  900 F.2d 882 (6th Cir. 1990) ...................................................................................................22

*Ellis v. J.P. Morgan Chase & Co.*,
  950 F. Supp. 2d 1062 (N.D. Cal. 2013) ..........................................................................17, 18

*Foster-Gardner, Inc. v. Nat'l Union Fire Ins. Co.*,
  959 P.2d 265 (Cal. 1998), *as modified* (Sept. 23, 1998)......................................................5

*Fredrickson v. Starbucks Corp.*,
  980 F. Supp. 2d 1227 (D. Or. 2013) .........................................................................................8

*Gerber v. First Horizon Home Loans Corp.*,
  2006 WL 581082 (W.D. Wash. Mar. 8, 2006) .........................................................................7

*Goodman v. Kennedy*,
  556 P.2d 737 (Cal. 1976) ..........................................................................................................17

*Grant v. Alperovich*,
  2014 WL 221807 (W.D. Wash. Jan. 21, 2014)..................................................................11, 16

*Gueyffier v. Ann Summers, Ltd.*,
  184 P.3d 739 (Cal. 2008) ............................................................................................................8

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS BY OCWEN FINANCIAL CORPORATION
AND OCWEN LOAN SERVICING, LLC

*Hill v. Nationstar Mortgage LLC*,
  2015 WL 4478061 (S.D. Fla. July 2, 2015)......................................................................6

*Hollowell v. Alliance Bancorp, Inc.*,
  2011 WL 2884801 (N.D. Cal. July 19, 2011)..............................................................6, 7

*In re First Alliance Mortgage Co.*,
  471 F.3d 977 (9th Cir. 2006) .......................................................................................25

*In re Nat'l W. Life Ins. Deferred Annuities Litig.*,
  2012 WL 440820 (S.D. Cal. Feb. 10, 2012) ...............................................................22

*In re Pomona Valley Med. Grp., Inc.*,
  476 F.3d 665 (9th Cir. 2007) .......................................................................................15

*In re U.S. Foodservice Inc. Pricing Litig.*,
  729 F.3d 108 (2d Cir. 2013).....................................................................................22, 23

*Jackson v. Atlantic Savings of America*,
  2013 WL 48028879 (N.D. Cal. Sept. 26, 2014) ........................................................6, 7

*James v. Litton Loan Servicing, LP*,
  2011 WL 724969 (N.D. Cal. Feb. 22, 2011) ...............................................................18

*Jessup v. Progressive Funding*,
  35 F. Supp. 3d. 25 (D.D.C. 2014) ..................................................................................7

*Johnson v. Countrywide Home Loans, Inc.*,
  2010 WL 5138392 (E.D. Va. Dec. 10, 2010) .............................................................6, 7

*Kariguddaiah v. Wells Fargo Bank, N.A.*,
  2010 WL 2650492 (N.D. Cal. July 1, 2010).................................................................11

*Katzman v. Victoria's Secret Catalogue*,
  167 F.R.D. 649 (S.D.N.Y.1996) ...................................................................................24

*Katzman v. Victoria's Secret Catalogue, Div. of The Ltd., Inc.*,
  113 F.3d 1229 (2d Cir.1997)........................................................................................24

*Klay v. Humana, Inc.*,
  382 F.3d 1241 (11th Cir. 2004) ...................................................................................22

*Korea Supply Co v. Lockheed Martin Corp.*,
  29 Cal. 4th 1134 (2003) ...............................................................................................12

*Lavie v. Procter & Gamble Co.*,
  105 Cal. App. 4th 496, 129 Cal. Rptr. 2d 486 (2003).................................................14

*LiMandri v. Judkins*,
  52 Cal. App. 4th 326, 60 Cal. Rptr. 2d 539 (1997).....................................................17

*Lustiger v. United States*,
  386 F.2d 132 (9th Cir. 1967) .......................................................................................24

*McKenzie v. Wells Fargo Bank, N.A.*,
  931 F. Supp. 2d 1028 (N.D. Cal. 2013) .......................................................................11

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS BY OCWEN FINANCIAL CORPORATION
AND OCWEN LOAN SERVICING, LLC

*Miller v. Yokohama Tire Corp.*,
   358 F.3d 616 (9th Cir.2004) ....................................................................................20

*Nymark v. Heart Fed. Sav. & Loan Ass'n*,
   231 Cal. App. 3d 1089 (1991) ...............................................................................18

*Oaks Mgmt. Corp. v. Superior Court*,
   145 Cal. App. 4th 453 (2006) ................................................................................18

*Odom v. Microsoft Corp.*,
   486 F.3d 541 (9th Cir. 2007) .................................................................................20

*Parker v. Title & Trust Co.*,
   233 F.2d 505 (9th Cir. 1956) .................................................................................17

*Patrick v. Teays Valley Trustees, LLC*,
   2012 WL 5993163 (N.D.W. Va. Nov. 30, 2012).....................................................6

*Plascencia v. Lending 1st Mortgage*,
   583 F. Supp. 2d 1090 (N.D. Cal. 2008) .................................................................17

*Puentes v. Wells Fargo Home Mortgage, Inc.*,
   160 Cal. App. 4th 638, 72 Cal. Rptr. 3d 903 (2008)...............................................12

*Rasmussen v. Apple Inc.*,
   27 F. Supp. 3d 1027 (N.D. Cal. 2014) ...................................................................16

*Robinson Helicopter Co. v. Dana Corp.*,
   102 P.3d 268 (2004)...............................................................................................18

*Sanders v. Cnty. of Santa Cruz*,
   2014 WL 4773992 (N.D. Cal. Sept. 19, 2014) .........................................................5

*Saroli v. Agua Caliente Band of Cahuilla Indians*,
   2010 WL 4788570 (S.D. Cal. Nov. 17, 2010) on reconsideration, 2011 WL 2433089
   (S.D. Cal. June 10, 2011).......................................................................................11

*Saunders v. Superior Court*,
   27 Cal. App. 4th 832, 33 Cal. Rptr. 2d 438 (1994) ...............................................15

*Schmidt v. Wells Fargo Home Mortg.*,
   2011 WL 1597658 (E.D. Va. Apr. 26, 2011), *aff'd*, 482 Fed. App'x 868 (4th Cir.
   2012) ......................................................................................................................6, 7

*Schreiber Distrib. Co. v. Serv–Well Furniture Co., Inc.*,
   806 F.2d 1393 (9th Cir.1986) ................................................................................20

*Sedima, S.P.R.L. v. Imrex Co.*,
   473 U.S. 479 (1985)................................................................................................23

*Shepherd v. Am. Home Mortgage Svs. Inc.*,
   2009 WL 4505925 (E.D. Cal. Nov. 20, 2009)........................................................18

*Sosa v. DIRECTV, Inc.*,
   437 F.3d 923 (9th Cir. 2006) .................................................................................20

*Stewart v. Screen Gems-EMI Music, Inc.*,
  2015 WL 890994 (N.D. Cal. Mar. 2, 2015)......................................................13

*Stitt v. Citibank*, N.A.,
  942 F. Supp. 2d 944 (N.D. Cal. 2013) .............................................................17

*Svenson v. Google Inc.*,
  No. 13-CV-04080-BLF, 2015 WL 1503429 (N.D. Cal. Apr. 1, 2015) ...............14

*Ticor Title Ins. Co. v. Florida*,
  937 F.2d 447 (9th Cir. 1991) ...........................................................................23

*United Guar. Mortgage Indem. Co. v. Countrywide Fin. Corp.*,
  660 F. Supp. 2d 1163 (C.D. Cal. 2009) ............................................................19

*United States v. Allen*, 554 F.2d 398 (10th Cir.),
  *cert. denied*, 434 U.S. 836 (1977)...................................................................24

*United States v. Beecroft*,
  608 F.2d 753 (9th Cir. 1979) ...........................................................................24

*United States v. Benny*,
  786 F.2d 1410 (9th Cir. 1986) .........................................................................24

*United States v. Cloud*,
  872 F.2d 846 (9th Cir. 1989) ...........................................................................21

*Vega v. Ocwen Fin. Corp.*,
  2015 WL 1383241 (C.D. Cal. Mar. 24, 2015)...........................................9, 10, 23

*Vega v. Ocwen Fin. Corp.*,
  2015 WL 3441930 (C.D. Cal. May 28, 2015) ...........................................10, 23

*Wahl v. Am. Sec. Ins. Co.*,
  2009 WL 1766620 (N.D. Cal. June 18, 2009) ...........................................8, 19

*Walker v. Countrywide Home Loans, Inc.*,
  98 Cal. App. 4th 1158, 121 Cal. Rptr. 2d 79 (2002).........................................13

*Warner Constr. Corp. v. City of Los Angeles*,
  466 P.2d 996 (Cal. 1970) ...........................................................................16, 17

*Weiner v. Ocwen Fin. Corp.*,
  No. 2:14-02597, 2015 WL 4599427 (E.D. Cal. July 29, 2015)................................ *passim*

*Young v. Wells Fargo*,
  671 F. Supp. 2d 1006 (S.D. Iowa 2009) ...........................................9, 13, 14

**Statutes**

15 U.S.C. § 1692(e) ...........................................................................15

15 U.S.C. § 1692a(5) ...........................................................................15

15 U.S.C. § 1692a(6) ...........................................................................15

Case No. CV 15-00620 BLF
PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS BY OCWEN FINANCIAL CORPORATION
AND OCWEN LOAN SERVICING, LLC

15 U.S.C. § 1692e .......................................................................................................15

18 U.S.C. § 1961(1) ...............................................................................................20, 23

18 U.S.C. § 1962(c) ...............................................................................................15, 20

18 U.S.C. § 1962(d) ..................................................................................................15

Cal. Bus. & Prof. Code § 17200 ...............................................................................12

Cal. Civ. Code § 1788.1(b) ......................................................................................15

Cal. Civ. Code § 1788.2(c) .......................................................................................15

Cal. Civ. Code § 1788.2(d) .......................................................................................15

Case No. CV 15-00620 BLF

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS BY OCWEN FINANCIAL CORPORATION AND OCWEN LOAN SERVICING, LLC

## I.    INTRODUCTION

This is a putative class action seeking to end and recover damages for years of tortious loan servicing of troubled subprime home mortgages.  The four Defendants – three affiliated companies and their key founding executive – set in motion a highly effective conspiracy of hidden self-dealing that continues to operate (the "Ocwen Enterprise").  The conspiracy started when, in 2009, Ocwen Financial spun off the Altisource Parent, which thereafter leased back the computer system Ocwen Financial developed to run its servicing business to Ocwen Financial.  Through the Ocwen Enterprise, Defendants maximized loan servicing fees by contracting with one another to exchange services at inflated and unfair rates.  Those rates were passed on to millions of struggling homeowners nationwide.

There is nothing theoretical or assumed about this fundamentally unlawful scenario.  Defendants or their affiliates have entered into three public consent orders to date which were designed to break up this conspiracy, and to beat down its servicing fees passed on to homeowners.  Those orders collectively extracted about $2.28 billion, imposed prolonged compliance monitoring, limited Defendants' ability to contract with one another, and forced their key executive to step down and "retire."  Also, those orders all left Defendants exposed to consumer class actions like this one because the monies paid under those orders were largely penalties and fines that did not compensate consumers for their losses on the claims at issue.

The four Defendants have now brought three motions to dismiss, none of which even mentions the consent orders, nor the years of investigation and documentation which culminated in them.  Instead, the motions offer variations on two common themes, both of which are red herrings.

The first theme is that no one Defendant could be liable based just on his or its limited role in the allegations.  This theme ignores the fundamental allegation that all the Defendants acted *in concert*.

The second theme is that Defendants' acts were allowed by contract, namely that the servicing fees in question were authorized under the mortgage loan agreements.  This theme ignores the equally fundamental allegation that the <u>amounts</u> and <u>frequency</u> of the fees were inflated and unfair – and hence tortious and illegal under numerous federal and state laws that protect consumers – even if the types of fees were contractually permissible.

In short, Defendants have moved to dismiss a different case than the one framed by the original Complaint, and clarified by the First Amended Complaint (Dkt. No. 41; "FAC").  They want to defend a

contract case against each Defendant individually, rather than a tort case against all Defendants collectively as co-conspirators.  However, consistent with the consent orders, Plaintiffs have alleged a tort case against a conspiracy.

Relying these inapplicable themes and mischaracterizations of the FAC, Defendant Ocwen Loan Servicing, LLC ("Ocwen Servicing"), which is a wholly-owned subsidiary of Defendant Ocwen Financial Corporation ("Ocwen Financial") (together, "Ocwen") contends all of Plaintiffs' claims should be dismissed based on two inapplicable contract arguments.  First, Ocwen asserts Plaintiffs' failed to comply with the notice-and-cure provision of their deed of trust.  Ocwen Motion to Dismiss Amended Complaint, ECF No. 52 ("Ocwen MTD"), pp. 6-9.  This argument fails because, on its face, the notice-and-cure provision applies neither to claims against the non-lender entities Plaintiffs sued (it applies only to claims against the lender, *infra*, pp.4-7), nor to the non-contract claims Plaintiffs bring (it applies only to contract claims, *infra*, pp.7-8).  Second, Ocwen contends the Ocwen Enterprise's conduct does not violate the deed of trust.  Ocwen MTD, pp. 9-15.  This ignores the fact Plaintiffs bring no contract claim, and whether the Ocwen Enterprise's conduct violated Plaintiffs' deed of trust is irrelevant to the non-contract claims Plaintiffs did bring (*infra*, pp.8-11).

Beyond its contractual arguments, the only specific claims Ocwen seeks to dismiss are Plaintiffs' fraud and RICO claims.  Ocwen contends Plaintiffs' fraud claim must be dismissed because Ocwen owed Plaintiffs no duty to disclose the Ocwen Enterprise's existence or conduct, and the economic loss rule bars Plaintiffs' claim.  Ocwen MTD, pp. 15-19.  This is contrary to law, which provides Plaintiffs need not allege Ocwen had a fiduciary relationship with Plaintiffs (*infra*, pp.16-18) and that the economic loss rule does not apply to Plaintiffs' claims (*infra*, pp.18-19).  Moreover, Plaintiffs' claims are not based solely on Defendants' omissions, but also on their misrepresentations.  *Infra*, pp. 17-14.  Ocwen's seeks dismissal of Plaintiffs' RICO claim based on its mistaken contention that Plaintiffs fail to allege a RICO predicate act and a RICO conspiracy.  Ocwen MTD, pp. 19-22.  This ignores Plaintiffs' allegations, which plead all RICO elements (*infra*, pp.19-24).  Ocwen makes no direct attack on Plaintiffs UCL, FDCPA or RFDCPA claims, and the Court should sustain these claims (*infra*, pp. 11-15).

As an afterthought, Ocwen contends all Plaintiffs' claims against Ocwen Financial specifically should be dismissed because, they contend, Plaintiffs did not allege Ocwen Financial participated in the

Ocwen Enterprise.  Ocwen MTD, pp. 22-23.  In contrast, Plaintiffs' pled Ocwen Financial's direct participation in the Ocwen Enterprise (*infra*, pp. 24-25).

 For the reasons discussed below, Ocwen's motion to dismiss should be denied in its entirety.

## II.   SUMMARY OF THE OCWEN ENTERPRISE

Plaintiffs Victor and Loralee Giotta are homeowners with a mortgage loan on their home in San Jose – a house they have occupied for over 50 years.  They defaulted on the full amount of mortgage payments due in 2013, although they have continued to make payments.  Under their mortgage loan agreement, that default allowed their mortgage servicer to charge for certain services "for the purpose of protecting Lender's interest in the Property" – including charging for "property inspection and valuation fees."  Plaintiffs have paid at least 12 separate fees totaling over $316 for a "Property Valuation Expense" or "Property Inspection Fee" between 2013 and 2014.  FAC, ¶¶ 6 & 81-85; Ex. 9, § 14.

Those servicing fees were paid to Ocwen Servicing, a wholly-owned subsidiary of Ocwen Financial.  Those two Ocwen Defendants are closely affiliated with defendant Altisource Solutions, Inc. and – at the material time – all three Defendants were either directly or effectively controlled by defendant William Erbey.  He was then the CEO of Ocwen Financial, the Executive Chairman of Ocwen Servicing, and Chairman of the Board of both Altisource Solutions and its parent, namely Altisource Portfolio Solutions S.A. (based in Luxembourg, and a prior named defendant in this case, but now dismissed under a tolling agreement).  The four entities and Mr. Erbey are the co-conspirators in this case.  (FAC, ¶¶ 7-11).

Here are the key details on the co-conspirators, and how their conspiracy works:

- Mr. Erbey was a purported innovator in the servicing of troubled mortgage loans, of which there was a huge increase starting with the 2008 recession.  Despite holding himself out as a homeowner-friendly innovator, in reality, Mr. Erbey's operations simply charged more and higher servicing fees, and sold foreclosed properties faster, than did other mortgage servicers – all at excessive cost to homeowners. By 2014-15, regulators and public prosecutors recognized and attempted to stop these practices.  Three resulting consent orders led to Mr. Erbey's forced "retirement" from the mortgage servicing business. FAC, ¶¶ 1, 7, 16, 23-24 & 59.

- Ocwen Financial was Mr. Erbey's main entity for managing the mortgage servicing business.  Though neither a lender nor a servicer itself, it acquired the troubled loan portfolios of other

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS BY OCWEN FINANCIAL CORPORATION
AND OCWEN LOAN SERVICING, LLC

lender-servicers, and had those loans serviced by its wholly-owned subsidiary Ocwen Servicing. The Ocwen Entities' business grew tenfold during the recession, and Ocwen Servicing is now the largest non-lending servicer in the United States. Under the 2014-2015 consent decrees, the Ocwen Entities stipulated to charging excessive servicing fees (among many other offenses), and paid $2.28 billion in compensation, penalties, fines, and charges for investigation and monitoring (although these payments did not compensate borrowers for the FAC's allegations). FAC, ¶¶ 2, 8-9, 26-27, 31-32 & 51-63; Exs. 6-7.

- The Altisource Entities began as a division of Ocwen Financial handling its collection and fee processing work, and using its Erbey-designed computer systems. In 2009, Ocwen Financial spun off the Altisource Parent, which thereafter leased back the same computer systems to Ocwen Financial. Likewise, Altisource thereafter sold back the same collection and fee processing work to Ocwen Financial. FAC, ¶¶ 3, 10-11, 39-46.

The purpose of these machinations was to orchestrate a system of undisclosed self-dealing in order to charge borrowers more and increased distressed mortgage fees. All these fees – increased to excessive and unreasonable amounts by these purportedly "independent" transactions – are passed through to homeowners. The end result of this conspiracy of self-dealing is excessive fees, which in turn means higher profits for each co-conspirator. FAC, ¶¶ 2-4, 8-11, 23-24, 31-33, 38-63.

## III.   ARGUMENT

### A.   The Notice Provision of the Deed of Trust Does Not Apply to Plaintiffs' Claims.

Ocwen argues that "the Amended Complaint must be dismissed in its entirety because the Giottas failed to comply the [*sic*] notice-and-cure provision of their deed of trust . . ." Ocwen MTD at 6. Ocwen's argument is without merit for two independent reasons. First, Ocwen overlooks the fact that Section 20 of the Deed of Trust, by its plain language, only pertains to certain claims between the Borrower and Lender as explicitly defined in the contract – not to claims between the Borrower and Defendants, none of whom is the Lender. Second, even if a Borrower's claims against any of the Defendants could be included in Section 20's notice requirement, the notice requirement does not extend to the *type* of claims at issue here.

#### 1.   The Deed of Trust Requires No Notice For Claims Against a Loan Servicer.

The "notice-and-cure" requirement that Ocwen attempts to invoke is found within the second paragraph of the deed of trust's Section 20. In pertinent part, Section 20 provides:

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS BY OCWEN FINANCIAL CORPORATION AND OCWEN LOAN SERVICING, LLC

1
2
3
4

> Neither *Borrower* nor *Lender* may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such *Borrower* or *Lender* has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.

5  ECF No. 41-9 at 9, Section 20 (emphasis added). The Deed of Trust defines the Borrower as "VICTOR P

6  GIOTTA AND LORALEE GIOTTA" and the Lender as "BankUnited, FSB." *Id*. at 1. Thus, putting aside

7  that the Giottas (Borrower) are not even bringing claims that arise from this contract in the first instance

8  as discussed *infra* subsection III.C, no claims of *any* kind against any of Defendants (none of whom are

9  the Lender) could be covered by the notice-and-cure requirement. Section 20's plain text simply does not

10  reach claims between the parties to the instant case – the Borrower and the Loan Servicer (Ocwen

11  Servicing), its parent (Ocwen Financial), its CEO (Erbey) and its service provider (Altisource).

12         Section 20 puts to rest any question about whether the terms "Lender" and "Loan Servicer" are

13  interchangeable. They are not. Section 20 defines the "Loan Servicer" as different from the Lender. The

14  Loan Servicer is the "entity . . . that collects Periodic Payments due under the Note and this Security

15  Instrument . . . ." ECF No. 41-9 at 9. Given Section 20's careful use of the terms Lender and Loan Servicer,

16  and the definition of "Loan Servicer" within a provision that excludes that entity from the notice-and-cure

17  requirement, Ocwen's effort to conflate itself with the Lender to invoke the notice-and-cure provision

18  contradicts basic principles of contract interpretation. "If contractual language is clear and explicit, it

19  governs." *Foster-Gardner, Inc. v. Nat'l Union Fire Ins. Co*., 959 P.2d 265, 272 (Cal. 1998), *as modified*

20  (Sept. 23, 1998).[1] Moreover, contractual definitions of a term "must be followed." *Sanders v. Cnty. of*

21  *Santa Cruz*, 2014 WL 4773992, at *5 (N.D. Cal. Sept. 19, 2014) (quoting Cal. Civ. Code § 1644).

22         Thus, there can be no doubt the notice-and-cure requirement does not apply to claims against the

23  Loan Servicer, its parents, officers or their service providers. If it had been intended to apply, the parties

24  simply would have included the Loan Servicer in Section 20's second paragraph along with the Borrower

25  and Lender. They did not do so, and Ocwen cannot re-write the contract now to impose a nonexistent

26  requirement on Borrowers suing Loan Servicers, their parents, their officers or their service providers.

27
28

---

[1] California law governs interpretation of the deed of trust. ECF No. 41-9, Section 16.

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS BY OCWEN FINANCIAL CORPORATION AND OCWEN LOAN SERVICING, LLC

Numerous courts reviewing similar provisions have recognized the basic distinction between a lender and a loan servicer. *See, e.g., Patrick v. Teays Valley Trustees, LLC*, 2012 WL 5993163, at *9 (N.D.W. Va. Nov. 30, 2012) ("the Notice-and-Cure Provision in the Plaintiffs' Deed of Trust expressly bind the borrower and the lender—not the borrower and a loan service provider or substitute trustee."); *Schmidt v. Wells Fargo Home Mort.*, 2011 WL 1597658, at *3 (E.D. Va. Apr. 26, 2011) *aff'd*, 482 F. App'x 868 (4th Cir. 2012) ("The notice-and-cure provisions in the deeds of trust bind the borrower and the lender, not the borrower and the loan servicer.").

Moreover, the claims at issue here neither arise from the *Lender's* actions nor attempt to hold BankUnited, FSB liable for anything Ocwen Servicing and the other non-Lender Defendants did. The cases Ocwen cites in support of its notice-and-cure argument are inapposite because they do not involve claims where a borrower is suing the loan servicer, its parent, its officers or its service providers for deceptive business practices.[2] Ocwen falsely asserts that the claim in *Hollowell v. Alliance Bancorp, Inc.*, 2011 WL 2884801, *1 (N.D. Cal. July 19, 2011) was "against [the] lender and servicer . . ." Ocwen MTD at 7. In fact, the *only* claim in that case that was dismissed for failure to comply with the notice requirement was a breach of contract claim against the *lender* (U.S. Bank). In *Jackson v. Atlantic Savings of America*, 2013 WL 48028879 (N.D. Cal. Sept. 26, 2014), a wrongful foreclosure action, the court relied on *Hollowell* and dismissed without prejudice the plaintiff's claim that sought to set aside the deed of trust. Significantly, however, plaintiff Jackson had not clarified which claims were asserted against the lender and which were asserted against the loan servicer. *See Jackson*, 2014 WL 4802879, at *13 ("In her amended complaint Plaintiff must state, within each cause of action, which Defendant she accuses and the alleged actions of that Defendant."). In addition, Jackson failed to explain why the notice provision did not apply. *Id.* at *6. In contrast, Plaintiffs explained why the notice provision does not apply to their claims against Ocwen Servicing (the contractually-defined Loan Servicer), its parent, CEO and service provider. Neither

---

[2] Not only do the parties differ here; the claims differ as well. Unlike the Giottas' claims, which do not sound in contract, *see infra* subsection III.C, each of Ocwen's cited cases also include a breach of contract claim or homeowners suing to prevent foreclosure where the claims arise "entirely from actions taken pursuant to the deed of trust." *Johnson v. Countrywide Home Loans, Inc.*, 2010 WL 5138392, at *2 (E.D. Va. Dec. 10, 2010). *Cf. also Hill v. Nationstar Mortgage LLC*, 2015 WL 4478061, at *2 (S.D. Fla. July 2, 2015) (wherein the plaintiff asserted a breach of contract claim and the court found the "Homeowners' claims [to be] entirely based on their mortgage contracts, specifically Paragraph 9"). None of this case law governs the instant case.

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS BY OCWEN FINANCIAL CORPORATION AND OCWEN LOAN SERVICING, LLC

*Hollowell* nor *Jackson* support Ocwen's argument that pre-suit notice to a loan servicer is required.

The same is true for *Jessup v. Progressive Funding*, 35 F. Supp. 3d 25, 36 (D.D.C. 2014), where the claim challenged the *lender's* assignment of the deed of trust. Finally, in *Johnson,* 2010 WL 5138392, the court "dismiss[ed] [the] borrower's multi-count complaint against [the] *lender*" not the servicer. Ocwen MTD at 7-8 n. 4 (emphasis added).

### B.  The Notice Provision Does Not Extend to the Type of Claims Asserted Here.

Even if Section 20 could be construed to include a notice-and-cure requirement for claims against Defendants here, as opposed to the Lender, multiple courts have acknowledged that nearly identical notice-and-cure provisions do not extend to claims based on deceptive business practices.

For instance, in *Johnson*, a case cited by Ocwen, the court relied on *Gerber v. First Horizon Home Loans Corp.*, 2006 WL 581082 (W.D. Wash. Mar. 8, 2006), a case involving claims for breach of contract, violation of the Washington Consumer Protection Act, and unjust enrichment. Because he failed to provide notice before filing suit, the *Gerber* plaintiff was only foreclosed from bringing the breach of contract claim, but he was permitted to bring his other claims because those claims involved allegations of deceptive business practices that "existed independently of the contract between the parties." *Johnson*, 2010 WL 5138392, at \*2. Following *Gerber*, the *Johnson* court found that because *all* of the *Johnson* plaintiff's allegations were based on the deed of trust, the plaintiff was required to provide notice. Thus, these cases stand for the unremarkable proposition that where a claim is brought pursuant to a deed of trust, and the deed of trust contains a notice provision, it should be heeded.

In contrast, *none* of the claims here are brought pursuant to the deed of trust. *See* FAC ¶¶29, 86, 124, 154, 164, 177, 187, 198 and 213 (clarifying the deed of trust is not a basis of Giottas' claims).  The Giottas assert statutory consumer and tort-based claims for unfair business practices, fraud, and related misconduct. In addition to *Gerber*, numerous courts have held that notice-and-cure provisions do not apply to these types of claims. *See, e.g.*, *Beyer v. Countrywide Home Loans Servicing LP*, 2008 WL 1791506 (W.D. Wash. Apr. 18, 2008), *aff'd*, 359 Fed. App'x 701 (9th Cir. 2009) (the "Court concludes that the notice provision does not bar Plaintiff's unjust enrichment and [state law statutory] claims"); *Schmidt v. Wells Fargo Home Mortg.*, 2011 WL 1597658 (E.D. Va. Apr. 26, 2011), *aff'd*, 482 Fed. App'x 868 (4th Cir. 2012) ("notice-and-cure provisions do not extend to claims based on deceptive business practices").

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS BY OCWEN FINANCIAL CORPORATION AND OCWEN LOAN SERVICING, LLC

Accordingly, Section 20's notice-and-cure requirement does not apply to the Giottas' claims because the plain language of the deed of trust limits its application to lenders, not loan servicers and other non-lenders, and because the Giottas are asserting statutory and common law claims based on deceptive business practices.[3]

### C.   Plaintiffs Do Not Assert a Breach of Contract Claim.

Focusing on a nonexistent breach of contract claim, Ocwen asks the Court to dismiss the FAC in its entirety because, according to Ocwen, Plaintiffs "do not allege facts showing the Distressed Mortgage Fees actually violated their deed of trust." Ocwen MTD at 9. But in building up the straw man of "contract" claims, Ocwen ignores the obvious: Plaintiffs have not sued Ocwen for breach of the terms of their deed of trust, and their claims do not sound in contract. *See, e.g.,* FAC, ¶¶ 29, 86. This renders Ocwen's contract argument (Ocwen MTD at 9-15, § B) irrelevant. *See, e.g., Fredrickson v. Starbucks Corp.*, 980 F. Supp. 2d 1227, 1250 (D. Or. 2013) ("Because no actual claim has been pleaded based on those facts, there is no claim to dismiss, rendering moot Starbucks's motion to dismiss those non-existent 'claims.'").

The focus of the Giottas' case is not whether their deed of trust authorizes the charges, but whether these charges, and the manner in which they are imposed, violate various statutory duties imposed by the UCL, the Fair Debt Collection Practices Act ("FDCPA"), the Rosenthal Fair Debt Collection Practices Act ("RFDPCA"), or constitute common law fraud or a violation of RICO. While the Giottas do not concede that Ocwen's fees are authorized under their deed of trust, even if they were, Ocwen cannot hide behind the deed of trust to insulate itself from liability under state and federal borrower and consumer protection statutes. *See* FAC ¶¶ 124, 154, 164, 177, 187, 198 and 213. Unfair or fraudulent practices are still actionable, even if they do not violate the terms of a private agreement.   *See, e.g., Wahl v. Am. Sec. Ins. Co.*, 2009 WL 1766620, at *7 (N.D. Cal. June 18, 2009) (sustaining claim for unfair conduct under California's UCL despite the alleged conduct not breaching the parties mortgage contract).

---

[3] Besides the notice-and-cure provisions not applying to claims based on deceptive business practices, the nonperformance of a contractual provision may be excused for a number of legally recognized reasons, including where performance would be futile. *See, e.g., Gueyffier v. Ann Summers, Ltd.*, 184 P.3d 739, 744 (Cal. 2008). Here, compliance with the notice provision would be excused because providing notice would have been futile.

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS BY OCWEN FINANCIAL CORPORATION
AND OCWEN LOAN SERVICING, LLC

The Giottas' claims, premised on Defendants' fraudulent and deceptive business practices, are akin to those recently sustained in *Weiner v. Ocwen Fin. Corp.*, No. 2:14-02597, 2015 WL 4599427 (E.D. Cal. July 29, 2015). *Weiner* involves nearly identical allegations against Ocwen, alleging Ocwen inflated fees for broker price opinions ("BPOs") and title search and report fees resulting from the same conspiratorial conduct among Ocwen, Altisource and Erbey that is alleged in Plaintiffs' action. *Weiner*, 2015 WL 4599427 at *2. The difference between Plaintiffs' claims and those raised in *Weiner* are that Plaintiffs allege Ocwen overcharged for more than just BPOs and title search and report fees, and Plaintiffs added the other co-conspirators, Altisource and Erbey, as additional defendants. Compare *id*. with FAC, ¶¶ 38-50.

Facing a similar motion to dismiss as filed by Ocwen here, Chief Judge England of the Eastern District of California denied Ocwen's motion to dismiss in its entirety, sustaining RICO, UCL, RFDCPA, fraud, and unjust enrichment claims. *Weiner*, 2015 WL 4599427 at **6-13. The *Weiner* court based its decision, in part, on *Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915 (N.D. Cal. 2013). In *Bias*, under circumstances similar to this case, the plaintiff challenged Wells Fargo's practice of assessing unlawfully marked-up BPO fees on the accounts of borrowers in default. The Northern District was unpersuaded by Wells Fargo's argument that its conduct amounted, at most, to breach of contract. *Id*. at 938 n.18. *See also Young v. Wells Fargo*, 671 F. Supp. 2d 1006, 1034-35 (S.D. Iowa 2009) (allegations that Wells Fargo assessed unnecessary default-related service fees went beyond a mere breach of contract and instead amounted to "a systematic course of conduct to defraud mortgage borrowers").

Ocwen further argues Plaintiffs' claims should be dismissed based on *Vega v. Ocwen Fin. Corp.*, 2015 WL 1383241 (C.D. Cal. Mar. 24, 2015) ("*Vega I*"). However, *Vega I* is inapposite to the claims raised by Plaintiffs here, and by the plaintiffs in *Weiner* and *Bias*.

In *Vega I*, the focus of the plaintiff's complaint was on Ocwen's failure to comply with the terms of the deed of trust. While the plaintiff did not assert a contract claim, her case turned on whether Ocwen violated the contractual standard in the deed of trust – namely whether the imposed fees were "necessary." *Id*. This was problematic given that the plaintiff's mortgage agreement made no mention of the fees having to be "necessary," and it appears that Vega's complaint and briefing had been pulled directly from other cases litigated by her counsel in which "necessity" of the fees was a stated requirement in other plaintiffs'

**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS BY OCWEN FINANCIAL CORPORATION AND OCWEN LOAN SERVICING, LLC**

contracts. *Id.* at * 3. Thus, the court found Vega's claims not only sounded in contract, but were premised on allegations that were not supported by her own mortgage agreement. "Because Vega argue[d] someone else's mortgage agreement, dismissal [was] appropriate." *Id.* at *2. As another basis for dismissal, the court found that Vega's theory of liability based on "a failure to disclose" did not include allegations that "the property inspection fees were inflated or concealed . . ." *Id.* *6. Instead, "the *only* alleged failure to disclose relate[d] to Ocwen's decision to not use the term 'unnecessary' on the billing statements." *Id.* at *7 (emphasis in original). Thus, all of Vega's allegations adopted the same contractual standard of "necessary" derived from the deed of trust. Those allegations – essentially that Ocwen breached the deed of trust – "did not rise to the level of fraud or deception . . ." sufficient to support Vega's claims. *Id.*

Vega's amended complaint remained focused on Ocwen's failure to comply with the deed of trust. This time, the amended complaint (which added additional plaintiffs) based all of the substantive claims on violations of the (corrected) *contractual* standard ("reasonable and appropriate"). *See Vega v. Ocwen Fin. Corp.*, 2015 WL 3441930, at *2, *5 (C.D. Cal. May 28, 2015) ("*Vega II*") (acknowledging and rejecting the plaintiffs' argument that mortgage contract *interpretation* is essential to their claims). Compounding the problem with their ubiquitous reliance on the contract's language, the plaintiffs essentially asked the court to use the Fannie Mae Servicing Guide as parol evidence of a violation of the contract's "reasonable and appropriate" standard, to then establish that they had sufficiently pleaded *non*-contract claims. *Id.* at *5. Based on the allegations, the court held that plaintiffs' claims were dependent on the alleged violation the Fannie Mae Servicing Guide, which could not give rise to any private cause of action. *Id.* at *3-4 (no third-party beneficiary private right of action to enforce Fannie Mae Servicing Guide). None of these maladies affect the Giottas' case.

Here, in contrast to both iterations of the Vega's complaints, the Giottas' claims are not premised on violation of a provision of the Deed of Trust or any contractual standard of conduct, nor do they sound in contract. *See* FAC, ¶¶29, 86, 124, 154, 164, 177, 187, 198 and 213.  Plaintiffs instead allege that Ocwen breached various statutory and common law duties, and that these duties exist independently of contractual obligations.  In addition, Plaintiffs included the specific types of allegations the Vegas did not (like concealment and inflation of fees). *See, e.g.*, FAC, ¶¶ 9, 11, 31, 45, 51, 66-79, 81-84, 88, 91, 92, 97, 98-104 (discussing inflated and duplicative fees); ¶¶ 3, 77, 88, 91, 92, 93, 94, 95, 123, 131, 153, 163 195, 196,

199, 206, 208, 210 (discussing material misrepresentations and concealment). These same concealment claims were sufficient to sustain fraud-based and RICO claims in *Weiner* against Ocwen. *Weiner*, 2015 WL 4599427 at *10. Second, the Giottas' claims are not dependent on Ocwen's violation of the Fannie Mae Servicing Guide, nor do Plaintiffs seek enforce those guidelines as third party beneficiaries as Ocwen suggests.[4] The purpose of citing to Fannie Mae's guidelines in the FAC is not to *enforce* them against Ocwen, but as support for the contention that Fannie Mae has specifically warned of the dangers associated with repetitive fees, and the need to examine such fees carefully. Moreover, Ocwen is incorrect in suggesting that the Fannie Mae guidelines somehow authorize monthly inspections, no matter what.[5]

### D. Ocwen Servicing Fails to Present a Single Argument Warranting Dismissal of Plaintiffs' UCL, FDCPA, or RFDCPA Claims.

While Ocwen has moved to dismiss the entire FAC based on the insufficiency of a nonexistent contract claim, Ocwen failed to address the substance of Plaintiffs' actual consumer claims under the UCL, FDCPA, or RFDCPA, each of which is well-supported by the allegations. *See* FAC, ¶¶ 145-156 (violation of FDCPA), ¶¶ 157-166 (violation of RFDCPA), ¶¶ 167-202 (violation of UCL). Accordingly, Plaintiffs' claims should be sustained. *See, e.g., Grant v. Alperovich*, 2014 WL 221807, at *6 (W.D. Wash. Jan. 21, 2014), appeal dismissed (Feb. 25, 2014) (denying motion for summary judgment where the moving party failed to address allegations of direct and vicarious liability); *Saroli v. Agua Caliente Band of Cahuilla Indians*, 2010 WL 4788570, at *1 (S.D. Cal. Nov. 17, 2010) on reconsideration, 2011 WL 2433089 (S.D. Cal. June 10, 2011) (a defendant's motion to dismiss under Rule 12(b)(2) was denied for the defendant's failure to include argument or authority in support of their motion). The loan contract, whatever its terms, does not – and cannot – provide immunity to Ocwen for consumer abuses under state and federal law  and

---

[4] This fact also renders Ocwen's citations to *McKenzie v. Wells Fargo Bank, N.A.*, 931 F. Supp. 2d 1028 (N.D. Cal. 2013), and *Kariguddaiah v. Wells Fargo Bank, N.A.*, 2010 WL 2650492 (N.D. Cal. July 1, 2010), inapposite because those cases involve plaintiffs seeking to enforce servicer guidelines as third-party beneficiaries of the government's requirements on servicers.

[5] Plaintiffs also cite to the Fannie Mae guidelines to rebut Ocwen's contention that "monthly" fees cannot be improper. *See* Ocwen MTD at 10. The Fannie Mae guidelines show that Ocwen Servicing is required to have clear written policies regarding fees, and that Ocwen Serving's automatic assessment of property inspection fees lacks the required determination of whether the "circumstances" warrant multiple inspections. *See* FAC ¶ 37.

Ocwen cites no authority to support this proposition, because none exists.[6] Indeed, *Weiner* sustained the same claims brought under the UCL and RFDCPA.  2015 WL 4599427 at *8 (RFDCPA), **11-12 (UCL).

### 1.    Plaintiffs Adequately Allege UCL Claims.

California's unfair competition law broadly prohibits "any unlawful, unfair or fraudulent business act or practice . . ." Cal. Bus. & Prof. Code § 17200. "Because . . . section 17200 is written in the disjunctive, it established three varieties of unfair competition—acts or practices which are unlawful, or unfair or fraudulent. 'In other words, a practice is prohibited as 'unfair' or 'deceptive' even if not 'unlawful' and vice versa.'" *Boschma v. Home Loan Ctr.*, Inc., 198 Cal. App. 4th 230, 252, 129 Cal. Rptr. 3d 874, 893 (2011) (quoting *Puentes v. Wells Fargo Home Mortgage, Inc.,* 160 Cal. App. 4th 638, 643–644, 72 Cal. Rptr. 3d 903 (2008)).  Here, there is no question Plaintiffs adequately allege violations of the unfair, fraudulent, and unlawful prongs of the UCL.

### a.    Plaintiffs Adequately Allege an "Unfair" UCL Claim.

"[A] practice may be deemed unfair even if not specifically proscribed by some other law. *Korea Supply Co v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1143 (2003). A business practice is "unfair" under the UCL if "(1) the consumer injury is substantial; (2) the injury is not outweighed by countervailing benefits to consumers or competitions; and (3) the injury could not reasonably have been avoided by consumers themselves." *Boschma*, 198 Cal. App. 4th at 252.

Here, Plaintiffs allege substantial harm to borrowers. The assessment of inflated Distressed Mortgage Fees not only harms borrowers by charging them excessive fees they should not have to pay, but also further harms borrowers by making it difficult, if not impossible to keep current on their loans after even one missed monthly payment. FAC, ¶¶ 67-68. Additionally, borrowers who fall further and further behind in their payments due to Ocwen's assessment of illegal and unauthorized fees have their credit scores damaged. *Id*. The injuries suffered by Plaintiffs and other borrowers are not outweighed by any conceivable benefit. Indeed, the *only* benefit of the inflated fees inure to Defendants in the form of increased profits and revenues. Moreover, Plaintiffs, like all other borrowers whose loans are serviced by Ocwen, could not have reasonably avoided their injuries because they did not know, nor did they have

---

[6] The contract specifically acknowledges that it cannot authorize violations of such laws. *See* ECF No. 41-9 at Section 14 (fees may not be charged if "prohibited by this Security Instrument or by Applicable Law").

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS BY OCWEN FINANCIAL CORPORATION AND OCWEN LOAN SERVICING, LLC

reason to know, that Ocwen was not entitled to collect the inflated amounts charged to borrowers for Distressed Mortgage Services. As explained below, Ocwen misrepresented and actively concealed that its Distressed Mortgage Fees were improperly inflated.

Defendants mistakenly cite to *Walker v. Countrywide Home Loans, Inc.*, 98 Cal. App. 4th 1158, 121 Cal. Rptr. 2d 79 (2002). *Walker* is inapposite because it involved a motion for summary judgment and the question of whether it was *ever* appropriate for a loan servicer to charge a delinquent borrower a property inspection fee. 98 Cal. App. 4th at 1175–78, 121 Cal. Rptr. 2d 79. In contrast, the issue here is whether Defendants are entitled to charge inflated and duplicative Distressed Mortgage Fees. This is a basic distinction that has been recognized by numerous courts in cases with similar allegations. *See, e.g.,* *Weiner*, 2015 WL 4599427, at *12 ("*Walker's* recognition that a loan servicer can charge a delinquent borrower a property inspection fee for this purpose, however, does not mean that Defendants can charge marked-up default-related service fees, an issue not addressed in *Walker*"); *Bias*, 942 F. Supp. 2d at 933 n.12 (holding that *Walker* was "inapposite" to the claim that Wells Fargo's practice of marking-up BPO fees violated the UCL's unfair prong, because Walker "arose at the summary judgment stage" and "did not involve the level of fraud and concealment alleged [by plaintiff]"); *Cirino v. Bank of Am., N.A.*, 2014 WL 9894432, *8 (C.D. Cal. Oct. 1, 2014) (finding that *Walker* does not address whether automated property-inspection practices are fraudulent and unfair); *Young*, 671 F. Supp. 2d at 1024–25 (denying a motion to dismiss the plaintiff's California UCL claim by finding that *Walker* only addressed "the imposition of property inspection fees in general").

Accordingly, Plaintiffs have stated a claim under the "unfair" prong of the UCL and Ocwen has provided no argument warranting dismissal.

### b.       Plaintiffs Adequately Allege a UCL "Fraudulent" Prong Claim.

A defendant violates the fraudulent prong of the UCL by engaging in conduct by which "members of the public are likely to be deceived." *Stewart v. Screen Gems-EMI Music, Inc.*, 2015 WL 890994, at *20 (N.D. Cal. Mar. 2, 2015). While common law fraud requires the perpetrator to have known that the statement was actually false and reasonably relied upon by a victim who incurs damages, none of these elements are required to state a fraudulent claim under the UCL, which merely focuses on "the defendant's

conduct, rather than the plaintiff's damages, in service of the statute's larger purpose of protecting the general public against unscrupulous business practices." *Boschma*, 198 Cal. App. 4th 230 at 252.

Here, Plaintiffs allege that Ocwen Servicing misleads delinquent borrowers into paying duplicative and marked-up fees – resulting from its undisclosed relationship with Altisource – which it is not authorized to collect by representing them as legitimate on billing statements.  FAC, ¶¶ 194-197. Plaintiffs provide examples of specific dates on which they were charged marked-up fees. *Id*. ¶¶ 81-85. Based on these allegations, which must be taken as true, there can be no real dispute that Ocwen's "[conduct] is such that it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Lavie v. Procter & Gamble Co*., 105 Cal. App. 4th 496, 129 Cal. Rptr. 2d 486 (2003). *See also Weiner*, 2015 WL 4599427, at *7 (sustaining fraud-based claims alleging "Ocwen's scheme to charge marked-up default services through use of a spin-off company with shared management and ownership"); *Bias*, 942 F. Supp. 2d at 935 (holding plaintiffs stated UCL fraudulent prong claim based on the defendant's practice of marking-up BPO fees and noting that fees listed in mortgage statements "are akin to misrepresentations").

Ocwen urges the Court to conclude that both the frequency and the amount of the challenged fees are reasonable.  Ocwen MTD at 10-13.  However, the factual question in this case is not whether Ocwen's fees are within a reasonable market range; rather, the issue whether Ocwen's fees are inflated or duplicative by reason of Defendants' conspiratorial scheme to defraud.  The Giottas allege that the inspections are duplicative of other services for which they are also being charged, and are inflated due to conspiratorial scheme, make the challenged fees unfair to distressed borrowers. These allegations are set forth in detail in the FAC.  *See* FAC, ¶¶ 66-84. Given these allegations, "the question of whether the fees were reasonable in this context is a factual issue that cannot be addressed until the Court is presented with an evidentiary record." *Young*, 671 F. Supp. 2d at 1024-25. While the issue here is one of fairness, and not reasonableness, this basic principle applies not just to evaluation of the sufficiency of Plaintiffs' allegations on the UCL "fraudulent" prong, but to all of Plaintiffs' claims. Defendants' factual disputes about an issue not raised by the FAC cannot supply a basis to dismiss any of Plaintiffs' claims. *Svenson v. Google Inc*., No. 13-CV-04080-BLF, 2015 WL 1503429, at *3 (N.D. Cal. Apr. 1, 2015)(Labson Freeman, D.J.).

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS BY OCWEN FINANCIAL CORPORATION AND OCWEN LOAN SERVICING, LLC

### c.       Plaintiffs Adequately Allege a UCL "Unlawful" Prong Claim.

"An unlawful act is one 'forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made.' " *In re Pomona Valley Med. Grp., Inc.*, 476 F.3d 665, 674 (9th Cir. 2007) (quoting *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 33 Cal. Rptr. 2d 438, 441 (1994)). Thus, stating that a defendant committed an act forbidden by another law means that a plaintiff has properly alleged a UCL claim under the "unlawful" prong. *Id.*

Plaintiffs adequately allege violations of the unlawful prongs of the UCL because Plaintiffs have adequately pleaded violations of federal and state statutes, including RICO (18 U.S.C. §§ 1962(c) and (d)), which is discussed in more detail *infra* subsection III.E.2, the FDCPA (15 U.S.C. §§ 1601, *et seq.*), and the RFDCPA (Cal. Civ. Code §§ 1788, *et seq.*). In fact, Ocwen provides no argument challenging Plaintiffs' FDCPA or RFDCPA claims whatsoever and Plaintiffs' allegations are sufficient to state a claim.

### 2.       Plaintiffs Adequately Allege FDCPA and RFDCPA Claims.

The RFDCPA's purpose is "to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts." Cal. Civ. Code § 1788.1(b). The FDCPA seeks to eliminate abusive debt collection practices and promote consistent action to protect consumers. 15 U.S.C. § 1692(e).

A "debt collector" violates the RFDCPA, *e.g.*, when it makes a false representation that a consumer debt may be increased by the addition of fees or other charges if such fees or charges may not be lawfully added and when it falsely represents the true nature of the service being rendered. Cal. Civ. Code § 1788.13. And under the FDCPA, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.

Here, Plaintiffs state claims under both the RFDCPA and FDCPA because Ocwen Servicing is a "debt collector" within the meaning of both statutes, Cal. Civ. Code § 1788.2(c) and 15 U.S.C. § 1692a(6), the Distressed Mortgage Fees paid by Plaintiffs are a "debt" within the meaning of Cal. Civ. Code § 1788.2(d) and 15 U.S.C. § 1692a(5), and Plaintiffs allege that Ocwen Servicing affirmatively misstates and conceals the true nature of the services being rendered and that fees assessed were inflated and/or duplicative Distressed Mortgage Fees that it was not legally authorized to asses in violation of both statutes. FAC, ¶¶ 153-54; 163-64. Accordingly, Plaintiffs state a claim under both the RFDCPA and FDCPA.

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS BY OCWEN FINANCIAL CORPORATION AND OCWEN LOAN SERVICING, LLC

1   **E.      Plaintiffs Properly Allege Fraud and RICO Claims.**

2        **1.      The Fraud Claim.**

3   Plaintiffs' fraud claim is properly alleged because no fiduciary relationship is necessary for a claim

4   for misrepresentations and omissions, and the claim is not barred by economic loss doctrine.

5        **a.      No Fiduciary Relationship is Necessary.**

6   As explained *supra*, fraud and other claims against both Ocwen Servicing and Ocwen Financial for

7   inflating BPO fees, title report fees and title search fees based on the same conspiratorial conduct at issue

8   in this action were recently sustained in *Weiner*. *Weiner,* 2015 WL 4599427 at **6-12.   For the same

9   reasons fraud was sustained in *Weiner*, it should be sustained in Plaintiffs' action here.

10   Ocwen argues Plaintiffs' fraud count fails because Ocwen did not owe a fiduciary duty to Plaintiffs

11   that would give rise to a duty to disclose information.  Ocwen MTD at 17.  Ocwen's argument is

12   unpersuasive since Plaintiffs allege misrepresentations – a point Ocwen ignores – in addition to omissions.

13   Moreover, no fiduciary relationship is necessary to give rise to a claim for fraud based on a nondisclosure

14   of material facts.  *Warner Constr. Corp. v. City of Los Angeles*, 466 P.2d 996, 1001 (Cal. 1970).

15   Plaintiffs allege Ocwen misrepresented to Plaintiffs and other Class Members that Ocwen's

16   distressed mortgage service fees were lawful on their billing statements, that services reflected on the

17   statements were being charged by a disinterested third-party and negotiated in good faith, and that the

18   charges were not for duplicative services.  FAC, ¶¶ 205-207, 209-210.  Ocwen does not argue that these

19   claims fail to give rise to a claim for fraud based on misrepresentations, and therefore Plaintiffs' fraud

20   claim must be sustained.  *See, e.g., Grant v. Alperovich*, 2014 WL 221807, at *6 (W.D. Wash. Jan. 21,

21   2014), *appeal dismissed* (Feb. 25, 2014) (denying motion for summary judgment where the moving party

22   failed to address allegations of direct and vicarious liability).

23   Ocwen also failed to disclose the material facts of the existence of the conspiracy, and that the

24   distressed mortgage services had inflated fees and/or duplicative of other services.  FAC, ¶¶ 205-06. Had

25   Ocwen disclosed the true nature of the inflated and duplicative Distressed Mortgage Fees, Plaintiffs would

26   have disputed the charges and not paid the fees.  *Id.*, ¶ 207.  Defendants' misrepresentations, coupled with

27   its omissions, are deceitful statements of half-truths actionable as fraud under California law. *Rasmussen*

28   *v. Apple Inc.*, 27 F. Supp. 3d 1027, 1039 (N.D. Cal. 2014) ("[A] plaintiff seeking to state a fraud claim on

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS BY OCWEN FINANCIAL CORPORATION
AND OCWEN LOAN SERVICING, LLC

the basis of an omission need not prove a 'duty to disclose' where the defendant 'volunteer[ed] information, in which case 'the telling of a half-truth calculated to deceive is fraud.'"); *Parker v. Title & Trust Co.*, 233 F.2d 505, 510 (9th Cir. 1956) ("Though one may be under no duty to speak as to a matter, if he undertakes to do so, either voluntarily or in response to inquiries, he is bound not only to state truly what he tells, but also not to suppress or conceal any facts within his knowledge which materially qualify those stated. If he speaks at all, he must make a full and fair disclosure.").

Ocwen argues its nondisclosures are not actionable as fraud because Ocwen is not a fiduciary to Plaintiffs. Ocwen MTD at 16-17. But under California law, a nondisclosure is actionable if there is "*some relationship* between the parties which gives rise to a duty to disclose such known facts." *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 337, 60 Cal. Rptr. 2d 539, 543 (1997) (emphasis in original). Such a relationship can come into being from any *transaction* between the parties. *Id.* (citing *Warner Constr.*, 2 Cal. 3d at 294 and *Goodman v. Kennedy*, 556 P.2d 737 (Cal. 1976)) (emphasis in original); *Boschma v. Home Loan Ctr., Inc.*, 198 Cal. App. 4th 230, 250, 129 Cal. Rptr. 3d 874, 891 (2011) (mortgage company "has a common law duty to avoid making partial, misleading representations that effectively concealed material facts"); *Plascencia v. Lending 1st Mortgage*, 583 F. Supp. 2d 1090, 1100 (N.D. Cal. 2008) (upholding fraud claim based on nondisclosure or concealment of facts based on the legal relationship between parties to a mortgage contract). In similar cases within this Circuit, mortgage servicers have been held to have a duty to disclose such material facts, and omitting them is a predicate for a fraud claim. *See, e.g., Weiner*, 2015 WL 4599427, at *6-7 (sustaining fraud claim based on the same omissions and misrepresentations made against Ocwen here); *Ellis v. J.P. Morgan Chase & Co.*, 950 F. Supp. 2d 1062, 1091-91 (N.D. Cal. 2013) (finding a mortgage servicer's alleged omissions interwoven with misrepresentations made in mortgage statements reflecting marked-up fees gave rise to a fraud claim for both the misrepresentations and omissions); *Stitt v. Citibank*, N.A., 942 F. Supp. 2d 944, 961 (N.D. Cal. 2013) (same); *Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 943-44 (N.D. Cal. 2013) (same).

Here, there was and continues to be "some relationship" between Plaintiffs and Ocwen.  Ocwen Financial purchased the servicing rights to Plaintiffs' loan and Ocwen Servicing services Plaintiffs' loan. FAC ¶8.  There are continuing transactions between the parties, including each time Ocwen charges Plaintiffs for inflated or duplicative Distressed Mortgage Fees, and each time Ocwen Servicing sends a

billing statement to collect a debt from Plaintiffs. Thus, the misrepresentations and omissions alleged by Plaintiffs are a proper basis for a fraud count. *Weiner*, 2015 WL 4599427, at *6-7 (upholding parallel fraud claims based upon Ocwen up-charging for BPOs through the use of Altisource and not disclosing the up-charge on billing statements or elsewhere); *Ellis*, 950 F. Supp. 2d at1091 (sustaining fraud count for omissions of marked-up servicing fees by a mortgage servicer); *Bias*, 942 F. Supp. 2d at 944 (same).

Ocwen's cited authorities are inapposite.[7]  In *Nymark*, the Court found a lender had no duty to a borrower to state whether the value of the borrower's house supported the loan.  231 Cal. App. 3d at 1096. In *James*, the Court found the plaintiffs failed to allege a fiduciary relationship necessary for a constructive fraud claim, and did not analyze whether the parties had "some relationship" for the purpose of a fraud claim.  2011 WL 724969, at *3.  In *Oaks Mgmt. Corp.*, the court found no sufficient fiduciary relationship existed between a borrower and a lender-attorney to disqualify the attorney in a subsequent action against the borrower. 145 Cal. App. 4th t 466. Finally, in *Bojorquez* and *Shepherd*, the courts found the plaintiffs failed to allege mortgage servicers had fiduciary duties for the purpose of negligence claims. *Bojorquez*, 2010 WL 1223144, at *7; *Shepherd*, 2009 WL 4505925, at *2. None of these cases control whether the Giottas properly allege a claim for fraud because the cited cases did not involve nondisclosures where only "some relationship" and a "transaction" between the parties needs to be alleged, and not a fiduciary duty.

### b.   The Economic Loss Rule Does Not Bar Plaintiffs' Fraud Claim.

Ocwen also argues the economic loss doctrine bars Plaintiffs' common law fraud claim based on its straw-man argument that Plaintiffs' claims constitute a breach of the deed of trust. Ocwen MTD at 17-18. As discussed *supra* in subsection III.C, Plaintiffs have not sued Ocwen for breach of the deed of trust, and their claims do not sound in contract. Plaintiffs instead allege that Ocwen breached various statutory and common law duties, and that these duties exist independently of contractual obligations. Thus, the economic loss doctrine does not apply because it is *inapplicable* to breaches of non-contractual duties. *Robinson Helicopter Co. v. Dana Corp.*, 102 P.3d 268, 273 (2004); *United Guar. Mortgage Indem. Co. v.*

---

[7] Ocwen MTD at 16-17 (citing *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal. App. 3d 1089, 1096 (1991); *James v. Litton Loan Servicing, LP*, 2011 WL 724969, at *3 (N.D. Cal. Feb. 22, 2011); *Oaks Mgmt. Corp. v. Superior Court*, 145 Cal. App. 4th 453, 466 (2006); *Bojorquez v. Gutierrez*, 2010 WL 1223144, at *7 (N.D. Cal. Mar. 25, 2010); *Shepherd v. Am. Home Mortgage Svs. Inc.*, 2009 WL 4505925, at *2 (E.D. Cal. Nov. 20, 2009)).

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS BY OCWEN FINANCIAL CORPORATION AND OCWEN LOAN SERVICING, LLC

*Countrywide Fin. Corp.*, 660 F. Supp. 2d 1163, 1181 (C.D. Cal. 2009). Indeed, in the loan servicing context, multiple courts have rejected efforts to mischaracterize a complaint as a contract action in order to invoke the economic loss doctrine. *See, e.g., Weiner*, 2015 WL 4599427 at *7 ("[W]hile Ocwen was clearly entitled under the terms of the Deed of Trust to be reimbursed for fees it paid to protect its security interest in defaulted property, according to Plaintiff's Complaint it went well beyond any contractual right in that regard by failing to disclose that the fees for which it sought reimbursement had been significantly marked-up . . . ."); *Bias*, 942 F.Supp.2d at 938 n.18 (rejecting a mortgage servicer's argument that fraud allegations for allegedly unlawful marked up fees amounted to a breach of contract action).

Moreover, the cases Ocwen cites stand for unremarkable proposition that a party cannot recover in tort for a contractual breach. Ocwen MTD at 17 (citing cases). As discussed *supra* in subsection III.C, *Vega*, upon which Ocwen primarily relies, is inapposite. Ocwen simply ignores the fact that unfair, unlawful or fraudulent practices are still actionable, even if they do not violate the terms of a private agreement. *See, e.g.*, *Wahl*, 2009 WL 1766620, at *7 (sustaining claim for unfair conduct under California's UCL despite the alleged conduct not breaching the parties mortgage contract).

### 2.  Plaintiffs Adequately Allege RICO Violations.

The FAC provides detailed facts about how Ocwen played a central role in an undisclosed self-dealing scheme to defraud homeowners in violation of RICO. Rather than confront the consequences of their participation in this well-documented scheme, Ocwen again cites *Vega I* to argue that Plaintiffs only remedy is a contractual one under a mortgage contract. Ocwen MTD at 19.  However, as Plaintiffs have previously discussed, *Vega I* is readily distinguishable. *See supra* subsection III.C. Instead, the roadmap for rejection of the Rule 12(b)(6) RICO defenses Ocwen raises is found in *Bias* and *Weiner* – two cases substantially similar to this one – which included virtually identical RICO claims based on up-charged Distressed Mortgage Fees and, in the case of *Weiner*, based on the same conspiracy.

As *Bias* and *Weiner* illustrate, there is no rule providing that a RICO claim is barred by the potential for a breach of contract action against someone else. This is a purported rule that Ocwen has simply made up. A RICO claim is wholly distinct from a breach of contract claim, with much different pleading requirements. The focus here is whether Plaintiffs have met these distinct requirements, and, as demonstrated below, there is no question they have.

### a.    Plaintiffs Adequately Allege a Section 1962(c) Claim.

The elements of a valid 18 U.S.C. § 1962(c) claim include (1) conduct, (2) of an enterprise (3) through a pattern (4) of racketeering activity. *See Odom v. Microsoft Corp.,* 486 F.3d 541, 547 (9th Cir. 2007) (*en banc*). Ocwen contends that Plaintiffs have not sufficiently alleged the requirement of "racketeering activity" because: (1) a breach of contract claim does not give rise to racketeering activity, and, (2) Plaintiffs have not alleged a duty to disclose.  Ocwen's position is without merit.

### i.    The FAC Alleges a "Pattern Of Racketeering Activity."

Ocwen falsely contends that Plaintiffs do not sufficiently allege a "racketeering activity" because the alleged predicate acts are based upon a breach of contract. Ocwen MTD at 19.  To the contrary, Plaintiffs do not allege a breach of contract claim. FAC ¶ 86.  The Giottas allege that Ocwen participated in an undisclosed self-dealing scheme in violation of the wire and mail fraud statutes to charge inflated and duplicative fees, and "[w]hether or not they are contractually authorized to assess any or all of the fees at issue in this action, they cannot charge or collect fees that are unlawful, unfair or the product of a self-dealing fraudulent conspiracy under federal or state laws." *Id.* ¶ 124 (RICO Count).  *See also* id. at ¶¶ 29, 154, 164, 177, 187, 198 and 213. Here again, as demonstrated by *Bias* and *Weiner,* these allegations give rise to a "pattern of racketeering activity," not premised on any breach of contract.

Racketeering activity is defined to include "a number of generically specified criminal acts as well as the commission of one of a number of listed predicate offenses." *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 939 (9th Cir. 2006) (citing 18 U.S.C. § 1961(1)). One of the predicate acts explicitly defined is "any act which is indictable" under 18 U.S.C. §§ 1341 and 1343, which prohibit mail and wire fraud, respectively. 18 U.S.C. § 1961(1). *Bias*, 942 F. Supp. 2d at 937. The elements of mail and wire fraud include (1) the formation of a scheme or artifice to defraud; (2) use of the mails in furtherance of the scheme; and (3) with the specific intent to deceive or defraud." *Schreiber Distrib. Co. v. Serv–Well Furniture Co., Inc.,* 806 F.2d 1393, 1399–1400 (9th Cir.1986); *Miller v. Yokohama Tire Corp.,* 358 F.3d 616, 620 (9th Cir.2004) (quoting *Schreiber*). The requirement of specific intent under these statutes is satisfied by "the existence of a scheme which was 'reasonably calculated to deceive persons of ordinary prudence and comprehension,' and this intention is shown by examining the scheme itself." *Schreiber*, 806 F.2d at 1400.

Here,  the elements of mail and wire fraud are alleged with particularity. *First,* the  Plaintiffs allege

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS BY OCWEN FINANCIAL CORPORATION
AND OCWEN LOAN SERVICING, LLC

a secret, pre-conceived, "undisclosed self-dealing scheme" to charge marked-up or duplicative fees for Distressed Mortgage Services. FAC, ¶¶ 38-50. In this scheme, Ocwen Financial spun-off a subsidiaries to create a "purported" independent company called Altisource. *Id*. ¶¶ 40-41. Defendants then designated Altisource to act as an intermediary between Distressed Mortgage Service providers and Ocwen Servicing in that Altisource was tasked with finding and negotiating the cost of Distressed Mortgage Service Fees and then charging Ocwen Servicing for the provision of those services. *Id.* ¶¶ 40-45. In the process of passing the Distressed Mortgage Service Fees charges onto Ocwen Servicing, Altisource added "upcharges" or duplicated fees that were paid by Ocwen to Altisource. *Id*. ¶¶ 46-47. Ocwen Servicing, in turn, passed those up-charges on to mortgagors via their monthly bills. *Id*. ¶ 46.  However, unbeknownst to the mortgagors, Altisource did not act as an independent intermediary, but rather sought to increase Distressed Mortgage Servicing Fees so that Ocwen Servicing and its corporate affiliates – all of whom were owned and controlled by Mr. Erbey and other senior executive – extracted as much in fees from borrowers as possible. *Id*. ¶¶ 47-48.  In sum, the Ocwen Enterprise enabled itself to be on both sides of the "Distressed Mortgage Service Fees " in order to garner and profit from the upcharges. Altisource was created to be a captive intermediary company so that the Ocwen Enterprise could reap distressed services up-charges at the expense of mortgagors. *Id*. ¶¶ 47-48. These allegations are more than plausible, they are the facts found by federal and state regulators. *Id*. ¶¶ 51-65.

*Second,* Plaintiffs allege use of the mail and wires in furtherance of the scheme. *Id*. ¶¶ 128-129. The invoices, statements, or proofs of claims provided by Ocwen Servicing disguised the fact that the Distressed Mortgage Service Fees were up-charged or duplicative, and misrepresented that the fees were for legitimate services, when in fact homeowners were being charged for services that provided no benefit to either the borrower or lender and were solely imposed to enrich the Ocwen Enterprise. *Id*. ¶ 131.

*Third,* the formation and commission of the scheme as alleged clearly demonstrates specific intent to defraud or deceive. *Id*. ¶¶ 38-50.  Here, Ocwen and the other Defendants targeted mortgagors to reap increased revenues from the up-charges all the while concealing from them the true cost of the Distressed Mortgage Service Fees. These allegations demonstrate an intent to defraud. *United States v. Cloud,* 872 F.2d 846, 852, n. 6 (9th Cir. 1989) ("intent to defraud" means "to act willfully, and with the specific intent to deceive or cheat for the purpose of either causing some financial loss to another, or bringing about some

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS BY OCWEN FINANCIAL CORPORATION AND OCWEN LOAN SERVICING, LLC

Case 5:15-cv-00620-BLF   Document 56   Filed 08/18/15   Page 30 of 35

financial gain to oneself"). These allegations meet the requirements for particularized pleading as demonstrated by *Weiner* and *Bias*. *See Weiner*, 2015 WL 4599427 at *10 (quoting *Bias*, 942 F. Supp. 2d at 938-39) ("These allegations square with assertions deemed sufficient by the Court in *Bias*, where the plaintiff alleged that, '[t]hrough the mail and wire, [Wells Fargo] provided mortgage invoices, payoff demands, or proofs of claims to borrowers, demanding that borrowers pay fraudulently concealed marked-up fees for default-related services.'").

### ii.    Racketeering Activity is Not Based on a Breach of Contract.

Ocwen again relies on *Vega* for the proposition that it can have no liability under RICO if Plaintiffs might possibly assert a breach of contract.  ECF No. 54 at 10-12.  Ocwen's position has no basis in law. To the extent that a plaintiff satisfies the RICO legal requirements by basing "racketeering activity" on one of the listed offenses, it is immaterial that the plaintiff may also have a separate breach of contract action based upon different legal requirements.  *See, e.g., Weiner*, 2015 WL 4599427, **10-11 (sustaining RICO claims for inflating certain foreclosure fees based on the same conspiracy at issue in this action).

While RICO's list of acts constituting predicate acts of racketeering is "exhaustive" and does not include "contract breaches," once a plaintiff properly bases a RICO claim on a specified racketeering act, it is independent of any other potential contract claims.  Accordingly, courts have routinely recognized the independent nature of RICO claims, despite the potential for breach of contract claims. *See, e.g., In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 118 (2d Cir. 2013); *Klay v. Humana, Inc.*, 382 F.3d 1241, 1260 (11th Cir. 2004) *abrogated on other grounds by Bridge v. Phx. Bond & Indem. Co.,* 553 U.S. 639 (2008);  *Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio*, 900 F.2d 882, 885 (6th Cir. 1990) (finding no ". . . blanket prohibition of RICO claims related to contract disputes."); *In re Nat'l W. Life Ins. Deferred Annuities Litig.*, 2012 WL 440820, at *4 (S.D. Cal. Feb. 10, 2012).

Ocwen, nevertheless, argues that Plaintiffs are asserting predicate acts based upon a breach of contract by pointing to allegations made in *Vega,* rather than the Giotta's allegations here. But as discussed above in subsection III.C, unlike this case, the *Vega* plaintiff based all of her claims, including her RICO claim, on contractual language. Since the *Vega* plaintiff relied on the contractual requirement of "necessary" as the basis for the predicate acts required for the RICO claim, the court found that a failure to conduct property inspections only when "necessary" was tantamount to a breach of contract claim and

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS BY OCWEN FINANCIAL CORPORATION
AND OCWEN LOAN SERVICING, LLC

was not cognizable under any of the predicate acts required by 18 U.S.C. § 1961(1).[8]

In contrast, as demonstrated above, Plaintiffs have not based their RICO claims on any terms of a mortgage contract; the RICO claims are purely based upon the "self-dealing" **conduct** of the Ocwen Enterprise that caused financial harm to Plaintiffs. The measure of civil damages under RICO is the harm caused by the predicate acts constituting the illegal pattern. *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 497 (1985) and *Ticor Title Ins. Co. v. Florida*, 937 F.2d 447, 451 (9th Cir. 1991). *See also In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 122 (2d Cir. 2013) (quoting *Commercial Union Assurance Co., plc v. Milken*, 17 F.3d 608, 612 (2d Cir.1994)) ("damages as compensation under RICO § 1964(c) for injury to property must, . . . place [the injured parties] in the same position they would have been in but for the illegal conduct."). Thus, Plaintiffs seek to recover the amount of "up-charges" or duplicative fees that were assessed by reason of the Ocwen Enterprise's scheme to defraud. Ocwen's argument that Plaintiffs are seeking to recover for contractual damages stemming from assessment of purportedly authorized charges is based entirely on the notion that this is the *Vega* case, and ignores the actual allegations pleaded in the FAC.

Accordingly where, as here, predicate acts identified in § 1961(1) have been properly alleged, "racketeering activity" is found to exist.

### iii.   Plaintiffs Adequately Allege Fraudulent Intent.

Ocwen's contention that Plaintiffs' mail and wire fraud allegations are lacking because no breach of a "duty to disclose" is alleged is another basic mischaracterization of the FAC. Ocwen MTD at 21. Plaintiffs allege a fraudulent scheme based upon misrepresentation, half-truths and omissions. Plaintiffs allege the invoices, statements, or proofs of claims provided by Ocwen Servicing to borrowers, along with the fact that fees were being imposed by a purportedly "independent" companies, disguised the fact that the Distressed Mortgage Fees were up-charged or duplicative, and misrepresented that the fees were for legitimate services, when in fact homeowners were being charged for services that provided no benefit to

---

[8] In granting the first motion to dismiss, the *Vega* court allowed the plaintiff the opportunity to file an amended complaint to assert a breach of contract claim only. 2015 WL 1383241 at *16. Instead, the plaintiffs filed an amended complaint re-alleging claims for UCL, RICO, violation of the RFDCPA, unjust enrichment and fraud, each of which was still based on the contractual language of "reasonable and appropriate." 2015 WL 3441930 at *2. The court dismissed that amended complaint.

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS BY OCWEN FINANCIAL CORPORATION AND OCWEN LOAN SERVICING, LLC

1    either the borrower or lender and were solely imposed to enrich the Ocwen Enterprise. FAC, ¶ 131.

2           The combination of affirmative misstatements and omissions with respect to the true cost of the

3    Distressed Mortgage Fees constitutes fraud as recognized by the courts in *Weiner* and *Bias* which found

4    that the defendants' alleged omissions were interwoven with misrepresentations. *Bias*, 942 F. Supp. 2d at

5    939; *Weiner*, 2015 WL 4599427, **6-7, 10. Deceitful statements of half-truths or the concealment of

6    material facts is actual fraud under the statute. *Lustiger v. United States*, 386 F.2d 132, 138 (9th Cir. 1967);

7    *United States v. Beecroft*, 608 F.2d 753, 757 (9th Cir. 1979); *United States v. Benny*, 786 F.2d 1410, 1418

8    (9th Cir. 1986) *citing United States v. Allen,* 554 F.2d 398, 410 (10th Cir.), *cert. denied*, 434 U.S. 836

9    (1977) ("fraudulent representations, as the term is used in 18 U.S.C.A. s 1341, may be effected by deceitful

10   statements of half-truths or the concealment of material facts and the devising of a scheme for obtaining

11   money or property by such statements or concealments is within the prohibition of the statute."); *see also*

12   *Katzman v. Victoria's Secret Catalogue,* 167 F.R.D. 649, 656 (S.D.N.Y.1996) *aff'd sub nom. Katzman v.*

13   *Victoria's Secret Catalogue, Div. of The Ltd., Inc.,* 113 F.3d 1229 (2d Cir.1997) ("An omission of a material

14   fact can constitute fraud under RICO if either there exists a duty to disclose the information or the defendant

15   makes statements of half-truths or affirmative misrepresentations.") (quotation marks and citation omitted).

16          Ocwen's reliance on "pure omission" cases is, therefore, misplaced. Ocwen MTD at 19-20.

17   Plaintiffs properly alleges fraudulent intent.

18          **3.    Ocwen Has Not Shown Plaintiffs' RICO Conspiracy Claim Fails**

19          Ocwen seeks dismissal of Plaintiffs' RICO section 1962(d) conspiracy claim based solely on

20   Ocwen's argument Plaintiffs "failed to allege a predicate RICO violation."  Ocwen MTD at 21.  But

21   Plaintiffs state predicate RICO violations as explained above.  Accordingly, Ocwen's sole argument

22   against Plaintiffs' RICO Conspiracy claim fails.  The Court should sustain this claim.

23          **F.    Ocwen Financial is Jointly and Severally Liable for Ocwen Servicing's Misconduct**

24          Ocwen Financial argues all of Plaintiffs' claims against it fail, "because the Giottas have not alleged

25   any facts to support direct or independent wrongful conduct by [Ocwen Financial]..."  Yet, the FAC is

26   replete with facts describing Ocwen Financial's role in the conspiratorial conduct at issue in this case.

27          As detailed in the FAC, Ocwen Financial was an indispensable joint participant with Ocwen

28   Servicing, Altisource and Mr. Erbey in a deceptive scheme to defraud Plaintiffs of their money by

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS BY OCWEN FINANCIAL CORPORATION
AND OCWEN LOAN SERVICING, LLC

collecting inflated Distressed Mortgage Fees from them.   Ocwen Financial and Altisource are both controlled by Mr. Erbey by virtue of stock ownership and common officers.   Ocwen MTD at ¶¶ 41-2, 47-9, 122-23.   Ocwen Financial purchased the servicing rights of loans and gave said rights to Ocwen Servicing. *Id*. at ¶ 2.   Ocwen Financial spun off its subsidiary Ocwen Solutions, which became Altisource, and gave it the software that enabled Ocwen Servicing to run its entire mortgage servicing functions, including ordering and charging for inflated and duplicative Distressed Mortgage Fees. *Id*. at ¶¶ 10, 39-41, 45.   Ocwen Financial admits its business is dependent on Altisource and that it and Altisource share administrative and corporate services and personnel, and Ocwen Financial pays Altisource for the inflated and duplicative Distressed Mortgage Fees at issue in this action.     *Id*. at ¶ 8.   Ocwen Financial acknowledged the potential conflict of interests created by its relationships with Altisource and Mr. Erbey, and it and its shareholders financially benefitted from borrowers paying for inflated and duplicative Distressed Mortgage Fees. *Id*. at ¶¶ 47-9.

These facts are sufficient to establish Ocwen Financial's role in the RICO enterprise, and as a co-conspirator and aider and abettor of Plaintiffs' other claims.   Under California law, "liability may ... be imposed on one who aids and abets the commission of an intentional tort if the person ... knows the other's conduct constitutes a breach of a duty and gives substantial assistance or encouragement to the other to so act." *In re First Alliance Mortgage Co*., 471 F.3d 977, 993 (9th Cir. 2006)(citing *Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal.App. 4th 1138, 1144 (2005)); *AngioScore, Inc. v. TriReme Med., Inc*., No. 12-CV-03393-YGR, 2015 WL 4040388, at *20 (N.D. Cal. July 1, 2015)).

Ocwen Financial's substantial assistance to Ocwen Servicing's fraud – purchasing servicing rights to loans, spinning off Altisource and giving it the software Ocwen needed to run its business, leasing back the software Ocwen Financial knew would be used to charge Plaintiffs and other borrowers for inflated and duplicative Distressed Mortgage Fees, and financially benefitting from the conspiratorial scheme – are sufficient to hold Ocwen Financial as a co-conspirator and an aider and abettor of Ocwen Servicing's fraud. *In re First Alliance Mortgage Co*., 471 F.3d at 995 (affirming jury verdict against a defendant for knowingly assisting a company's fraudulent business practices).

## IV.   CONCLUSION

Plaintiffs respectfully request that Ocwen's motion to dismiss be denied.

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS BY OCWEN FINANCIAL CORPORATION
AND OCWEN LOAN SERVICING, LLC

1

Dated:  August 18, 2015                                    FEINSTEIN DOYLE PAYNE & KRAVEC, LLC

2

By:  ___s/Joseph N. Kravec, Jr._____

3                                                                        Joseph N. Kravec, Jr.
Attorneys for Plaintiffs

4                                                                        Email:  jkravec@fdpklaw.com

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS BY OCWEN FINANCIAL CORPORATION
AND OCWEN LOAN SERVICING, LLC

**PROOF OF SERVICE**

STATE OF PENNSYLVANIA         )
                                   )    ss.:
COUNTY OF ALLEGHENY        )

      I am employed in the County of Allegheny, State of Pennsylvania. I am over the age of 18 and not a party to the within action. My business address is 429 Forbes Avenue, Allegheny Building, 17th Floor, Pittsburgh, PA 15219.

      On August 18, 2015, using the Northern District of California's Electronic Case Filing System, with the ECF ID registered to Joseph N. Kravec, Jr., I filed and served the document(s) described as:

**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS BY OCWEN FINANCIAL CORPORATION AND OCWEN LOAN SERVICING, LLC**

**[X]**     **BY ELECTRONIC TRANSMISSION USING THE COURT'S ECF SYSTEM:** I caused the above document(s) to be transmitted by electronic mail to those ECF registered parties listed on the Notice of Electronic Filing (NEF) pursuant to Fed.R.Civ.P. 5(d)(1) and by first class mail to those non-ECF registered parties listed on the Notice of Electronic Filing (NEF). *"A Notice of Electronic Filing (NEF) is generated automatically by the ECF system upon completion of an electronic filing. The NEF, when e-mailed to the e-mail address of record in the case, shall constitute the proof of service as required by Fed.R.Civ.P. 5(d)(1). A copy of the NEF shall be attached to any document served in the traditional manner upon any party appearing pro se."*

      I declare that I am admitted *pro hac vice* in this action.

      I declare, under penalty of perjury under the laws of the United States, that the above is true and correct.

      Executed on August 18, 2015, at Pittsburgh, Pennsylvania.

                                s/Joseph N. Kravec, Jr.
                                 Joseph N. Kravec, Jr.

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS BY OCWEN FINANCIAL CORPORATION AND OCWEN LOAN SERVICING, LLC