| | |
|---|---|
| Stephen F. Yunker (CSB 110159)<br>**YUNKER & SCHNEIDER**<br>655 West Broadway, Suite 1400<br>San Diego, California 92101<br>Tel:  (619) 233-5500<br>Fax:  (619) 233-5535<br>Email:  sfy@yslaw.com | Joseph N. Kravec, Jr. (admitted *pro hac vice*)<br>Wyatt A. Lison (admitted *pro hac vice*)<br>McKean J. Evans (admitted *pro hac vice*)<br>**FEINSTEIN DOYLE<br>   PAYNE & KRAVEC, LLC**<br>Allegheny Building, 17th Floor<br>429 Forbes Avenue<br>Pittsburgh, PA  15219<br>Tel:     (412) 281-8400<br>Fax:    (412) 281-1007<br>Email: jkravec@fdpklaw.com<br>Email: wlison@fdpklaw.com<br>Email: mevans@fdpklaw.com |
| Gretchen Freeman Cappio<br>(admitted *pro hac vice*)<br>Dean N. Kawamoto (CSB 232032)<br>Gretchen S. Obrist (admitted *pro hac vice*)<br>**KELLER ROHRBACK L.L.P.**<br>1201 Third Avenue, Suite 3200<br>Seattle, WA 98101<br>Tel: (206) 623-1900<br>Fax:  (206) 623-3384<br>E-mail: gcappio@kellerrohrback.com<br>         dkawamoto@kellerrohrback.com<br>         gobrist@kellerrohrback.com | James M. Pietz (admitted *pro hac vice*)<br>**PIETZ LAW OFFICE**<br>429 Forbes Avenue, Suite 1710<br>Allegheny Building<br>Pittsburgh, PA  15219<br>Tel:  (412) 288-4333<br>Fax  1-866-633-1820<br>Email: jpietz@pietzlaw.com |

*ATTORNEYS FOR PLAINTIFFS AND
THE PROPOSED CLASS AND SUBCLASSES*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| VICTOR P. GIOTTA and LORALEE GIOTTA, on Behalf of Themselves and All Others Similarly Situated ,<br><br>       Plaintiffs,<br><br>v.<br><br>OCWEN FINANCIAL CORPORATION, et al.,<br><br>       Defendants. | Case No. CV 15-00620 BLF<br><br>**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS BY WILLIAM C. ERBEY**<br><br><u>**CLASS ACTION**</u><br><br>Date:   September 17, 2015<br>Time:  9:00 a.m.<br>Dept:   Courtroom 3, 5th Floor |

**TABLE OF CONTENTS**

I. INTRODUCTION ..........................................................................................................................1

II. BACKGROUND FACTS ............................................................................................................2

III. ARGUMENT ..............................................................................................................................4

    A. Mr. Erbey Misstates the Basis for Personal Jurisdiction in the FAC...................................4

        1. Purported Basis per Mr. Erbey – A Mere Nonresident Corporate Officer ..............4

        2. Actual Basis per FAC – The Conspiracy's Central Figure and Guiding Spirit .......5

        3. Mr. Erbey Does Not Deny the Actual Basis of Jurisdiction per the FAC ...............7

    B. The Uncontroverted Allegations of the FAC Establish Personal Jurisdiction.....................7

        1. Uncontroverted Allegations Are Sufficient to Establish Jurisdiction ......................7

        2. Mr. Erbey Had Individual Control and Direct Participation....................................7

        3. Mr. Erbey Had Purposeful Direction in Multiple States, Including California ......8

    C. If Personal Jurisdiction is In Question, Then Jurisdictional Discovery is Proper ............10

        1. The Court Has Discretion to Allow Jurisdictional Discovery ...............................10

        2. Mr. Erbey's Two Declarations Invite Jurisdictional Discovery .............................10

        3. Should the Court Require, Plaintiffs Will Seek a 90-Day Stay for Discovery ......11

    D. The FAC Properly Alleges Mr. Erbey's Direct and Personal Liability............................11

        1. The FAC Establishes Personal Liability Under RICO ..........................................12

        2. The FAC Establishes Personal Liability Under the UCL and Fraud ....................12

        3. The FAC Establishes Mr. Erbey Conspired With the Rest of the Ocwen Enterprise, and Aided and Abetted the Ocwen Enterprise...................................................................13

        4. The FAC Establishes Personal Liability Under the FDCPA/RFDCPA................14

IV. CONCLUSION.........................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Alonso v. Blackstone Fin. Grp. LLC*,
  962 F. Supp. 2d 1188 (E.D. Cal. 2013)..........................................................................15

*AngioScore, Inc. v. TriReme Med., Inc.*,
  No. 12-CV-03393-YGR, 2015 WL 4040388 (N.D. Cal. July 1, 2015)..............................14

*Baumer v. Pachl*,
  8 F.3d 1341 (9th Cir. 1993) ............................................................................................12

*Beltz Travel Serv., Inc. v. Int'l Air Transp. Ass'n*,
  620 F.2d 1360 (9th Cir. 1980) ........................................................................................13

*Boschetto v. Hansing*,
  539 F.3d 1011 (9th Cir., 2008) ..................................................................................9, 10

*Casey v. U.S. Bank Nat'l Ass'n*,
  127 Cal.App. 4th 1138 (2005) ........................................................................................14

*Chloe SAS v. Sawabeh Info. Svcs. Co.*,
  2012 WL 7679386 (C.D. Cal. May 3, 2012) ..................................................................10

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*,
  173 F.3d 725 (9th Cir. 1999) ..........................................................................................11

*CollegeSource, Inc. v. AcademyOne, Inc.*,
  653 F.3d 1066 (9th Cir., 2011) ........................................................................................7

*Data Disc, Inc. v. Systems Technology Assocs., Inc.*,
  557 F.2d 1280 (9th Cir., 1977) ..................................................................................7, 10

*Davis v. Metro Prods., Inc.*,
  885 F.2d 515 (9th Cir., 1989) ..........................................................................................8

*DISH Network, LLC v. Vicxon Corp.*,
  923 F.Supp.2d 1259 (S.D. Cal. 2013)...............................................................................8

*Fasugbe v. Willms*,
  2011 WL 3667440 (C.D. Cal., Aug. 22, 2011).................................................................8

*Imperial Ice Co. v. Rossier*,
  18 Cal.2d 33 (1941) ........................................................................................................12

*In re First Alliance Mortgage Co.*,
  471 F.3d 977 (9th Cir. 2006) ..........................................................................................14

*Just Film, Inc. v. Merchant Svcs., Inc.*,
  2010 WL 4923146 (N.D. Cal. Nov. 29, 2010) ..................................................................8

*Lawless v. Brotherhood of Painters*,
  143 Cal.App.2d 474 (1956) ............................................................................................12

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS BY WILLIAM C. ERBEY

*Michael v. New Century Fin. Svcs.*,
    2015 WL 1404939 (N.D. Cal. Mar. 30, 2015) ................................................................. 9

*Nat'l Grp. for Communications & Computers, Ltd. v. Lucent Technologies Inc.*,
    2004 WL 2903745 (S.D.N.Y. Dec. 15, 2004) ............................................................... 12

*Orchid Biosciences, Inc. v. St. Louis University*,
    198 FRD 670 (S.D. Cal., 2001) ..................................................................................... 10

*PMC, Inc. v. Kadisha*,
    78 Cal.App.4th 1368, 93 Cal.Rptr.2d 663 (2000) ......................................................... 12

*Rasmussen v. Dublin Rarities*,
    No. C 14-1534 PJH, 2015 WL 1133189 (N.D. Cal. Feb. 27, 2015) .............................. 13

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993) ....................................................................................................... 12

*Schwarm v. Craighead*,
    552 F. Supp. 2d 1056 (E.D. Cal. 2008) ........................................................................ 14

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir., 2004) ................................................................................... 7, 9

*Smith v. Levine Leichtman Capital Partners, Inc.*,
    723 F. Supp. 2d 1205 (N.D. Cal. 2010) ........................................................................ 12

*United States Liab. Ins. Co. v. Haidinger–Hayes, Inc.*,
    1 Cal.3d 586 (1970) ....................................................................................................... 12

*United States v. Fernandez*,
    388 F.3d 1199 (9th Cir. 2004) ....................................................................................... 12

*Wolf Designs, Inc. v. DHR Co.*,
    322 F.Supp.2d 1065 (C.D. Cal. 2004) ............................................................................ 8

**Statutes**

15 U.S.C. § 1692a(6) ............................................................................................................ 14

Cal. Civ. Code § 1788.2(b) .................................................................................................. 14

Cal. Civ. Code § 1788.2(c) .................................................................................................. 14

## I. INTRODUCTION

This is a putative class action seeking to end and recover for years of tortious loan servicing of troubled subprime home mortgages. The four defendants – three affiliated companies and their key founding executive – operated a highly effective conspiracy of hidden self-dealing. The co-conspirators maximized loan servicing fees by contracting with one another to exchange services at inflated, unfair, and unreasonable rates. Those rates were passed on to millions of struggling homeowners nationwide.

There is nothing theoretical or assumed about this fundamentally unlawful scenario. Defendants or their affiliates have entered into three public consent orders to date which were designed to break up this conspiracy, to remove its guiding spirit, and to remove its servicing fees passed on to homeowners. Those orders collectively extracted about $2.28 billion, imposed prolonged compliance monitoring, limited defendants' ability to contract with one another, and forced their key executive to step down and "retire." Also, those orders left defendants exposed to consumer class actions like this one, and their monetary payments under the orders are _not_ an offset here.

The four defendants have now brought three motions to dismiss, none of which even mentions the consent orders, nor the years of investigation and documentation which culminated in them. Instead, the motions offer variations on two common themes, both of which are red herrings.

The first theme is that no one defendant could be liable based just on his or its limited role in the allegations. This theme ignores the fundamental allegation that all the defendants acted _in concert_.

The second theme is that defendants' acts were allowed by contract, namely that the servicing fees in question were authorized under the mortgage loan agreements. This theme ignores the equally fundamental allegation that the _amounts and frequency_ of the fees were inflated, unfair, and unreasonable – and hence tortious and illegal under numerous federal and state laws that protect consumers – even if the _types_ of fees were contractually permissible.

In short, defendants have moved to dismiss a different case than the one framed by the original Complaint, and clarified by the First Amended Complaint. They want to defend a contract case against each defendant individually, rather than a tort case against all defendants collectively as co-conspirators. However, consistent with the consent orders, plaintiffs have alleged a tort case against a conspiracy.

Relying on mischaracterizations of the FAC, Mr. Erbey moves to dismiss Plaintiffs' FAC in its

entirety. First, Mr. Erbey claims this Court lacks jurisdiction over him because (1) Plaintiffs failed to plead Erbey's personal participation in the Ocwen Enterprise's wrongdoing and cannot impute the Ocwen and Altisource Entities' California contacts to Mr. Erbey (Erbey MTD, pp. 9-14) and (2) Mr. Erbey lacks sufficient personal connection to California to be subject to jurisdiction here (Erbey MTD, pp. 14-18). Mr. Erbey's arguments fail because Plaintiffs allege detailed facts, including Ocwen Financial's stipulations as part of a regulatory settlement, showing Mr. Erbey was the Ocwen Enterprise's central figure and guiding spirit (*infra*, pp. 5-10). Even if any question remains as to whether the Court may exercise personal jurisdiction over Mr. Erbey, jurisdictional discovery is appropriate to confirm such (*infra*, pp. 10-12).

Second, Mr. Erbey attacks Plaintiffs' substantive claims, arguing a corporate officer cannot be held liable for the actions of the company. Erbey MTD, pp. 18-20. Mr. Erbey's supposition the he might be only liable as a corporate officer fails because it ignores Plaintiffs' allegations that Mr. Erbey was a direct and active participant in the Ocwen Enterprise's wrongdoing, making him personally liable for Plaintiffs' claims. *Infra*, pp. 12-15.

## II. BACKGROUND FACTS

Plaintiffs Victor and Loralee Giotta are homeowners with a mortgage loan on their home in San Jose – a house they have occupied for over 50 years. They defaulted on mortgage payments due in 2013. Under their mortgage loan agreement, that default allowed their mortgage servicer to charge for certain services "for the purpose of protecting Lender's interest in the Property" – including charging for "property inspection and valuation fees." The Giottas ended up paying at least 12 separate fees totaling over $316 for "Property Valuation Expense" or "Property Inspection Fee" between 2013 and 2014. They may have paid other excessive servicing fees to be identified in discovery. (First Amended Complaint ("FAC"), ¶¶ 6 & 81-85; Ex. 9, § 14).

Those servicing fees were paid to defendant Ocwen Loan Servicing, LLC ("Ocwen Servicing"), which is a wholly-owned subsidiary of defendant Ocwen Financial Corporation ("Ocwen Financial"). Those two Ocwen defendants are closely affiliated with defendant Altisource Solutions, Inc. and – at the material time – all three defendants were either directly or effectively controlled by defendant William Erbey. He was then the CEO of Ocwen Financial, the Executive Chairman of Ocwen Servicing, and Chairman of the Board of both Altisource Solutions and its parent, namely Altisource Portfolio Solutions

S.A. (based in Luxembourg, and a prior named defendant in this case, but now dismissed under a tolling agreement). Those four entities and Mr. Erbey are the co-conspirators in this case. (FAC, ¶¶ 7-11).

Here are the key details on the co-conspirators, and how their conspiracy works:

- Mr. Erbey was a purported innovator in the servicing troubled mortgage loans, of which there was a huge increase starting with the 2008 recession. He designed computer systems and administrative processes which supposedly allowed more efficient, more homeowner-friendly, and more profitable administration of troubled loans than his servicing competitors could provide. In reality, his systems simply charged more and higher servicing fees, and sold foreclosed properties faster, than did other mortgage servicers – all at excessive cost to homeowners. By 2014-15, regulators and public prosecutors had recognized and attempted to stop these practices. Three resulting consent orders led to Mr. Erbey's forced "retirement" from the mortgage servicing business, and he "moved" to the Virgin Islands. (FAC, ¶¶ 1, 7, 16, 23-24 & 59).

- Ocwen Financial – a Georgia corporation based in Atlanta – was Mr. Erbey's main entity for managing the mortgage servicing business. Though neither a lender nor a servicer itself, it acquired the troubled loan portfolios of other lender-servicers, and had those loans serviced by its wholly-owned subsidiary Ocwen Servicing – a Delaware LLC based in Florida. The Ocwen entities' business grew tenfold during the recession, and Ocwen Servicing is now the largest non-lending servicer in America. Under the 2014-2015 consent decrees, the Ocwen entities stipulated to charging excessive servicing fees among many other offenses, and paid $2.28 billion in compensation, penalties, fines, and charges for investigation and monitoring (FAC, ¶¶ 2, 8-9, 26-27, 31-32 & 51-63; Exs. 6-7).

- The Altisource entities began as a division of Ocwen Financial handling its collection and fee processing work, and using its Erbey-designed computer systems. But in 2009, Ocwen Financial spun off Altisource Portfolio Solutions S.A. – a Luxembourg company – which thereafter leased back the same computer systems to Ocwen Financial. Likewise, Altisource Solutions – a Delaware company based in Florida – thereafter sold back the same collection and fee processing work to Ocwen Financial. (FAC, ¶¶ 3, 10-11, 39-46).

- Why all these Ocwen and Altisource entities (and many more not yet named in this case)? Because Ocwen Servicing can charge Ocwen Financial fees for servicing the portfolios of troubled loans, and Altisource in Luxembourg can charge Ocwen Servicing fees for use of the computer systems, and Altisource in Florida can charge Ocwen Servicing fees for the collection and fee processing work, and all those fees – increased to excessive and unreasonable amounts by these purportedly "independent" transactions – can be passed through to homeowners. The end result of this conspiracy of self-dealing is excessive fees, which in turn means higher profits for each of the co-conspirators. (FAC, ¶¶ 2-4, 8-11, 23-24, 31-33, 38-63).

- Once again, those excessive fees include the 12 separate fees totaling over $316 paid by the Giottas for "Property Valuation Expense" or "Property Inspection Fee," and possibly other excessive fees to be identified in discovery. (FAC, ¶¶ 81-85).

This discussion will now turn to the specifics of Mr. Erbey's motion to dismiss.

## III.   ARGUMENT

Mr. Erbey's motion is primarily based on arguing against personal jurisdiction. He then argues he cannot be liable under the FAC based solely on his status as a corporate officer and shareholder. Those arguments will be refuted in that same order.

### A.   Mr. Erbey Misstates the Basis for Personal Jurisdiction in the FAC

#### 1.   Purported Basis per Mr. Erbey – A Mere Nonresident Corporate Officer

In keeping with his co-defendants, Mr. Erbey's motion to dismiss is aimed at the theoretical case that he wants to defend, rather than the actual allegations in the FAC that he must defend. This is shown in general by his mischaracterization of this case as contract-based, and directed at corporate actors only. Consequently, he argues that there can be no personal jurisdiction over a mere nonresident individual and typical former corporate officer like himself.

Mr. Erbey's latest, <u>amended</u> declaration[1] is therefore limited to standard representations about his current off shore residence, and formulaic denials of personal contacts with California.  (Declaration of William C. Erbey, ECF 53-1 ("Erbey Dec."), ¶¶ 3-4).  The declaration admits that Mr. Erbey visited California as an officer and director of the corporate defendants, but it never says what he did there.  (*Id*., ¶4).  Instead, it very carefully says what he did <u>not do</u> there, namely that he conducted no "negotiations" between the corporate defendants "regarding any of the fees or charges at issue in this case."  (*Id*.).

Based on that plain vanilla declaration, Mr. Erbey argues at great length that he is not a California resident, and cannot be made subject to personal jurisdiction based solely on the corporate defendants being subject to that jurisdiction.  That is all true, but immaterial.  That is not the basis of jurisdiction alleged in the FAC.

### 2. Actual Basis per FAC – The Conspiracy's Central Figure and Guiding Spirit

The entire thrust of the FAC is that the defendants operated a highly effective conspiracy of self-dealing, and that Mr. Erbey was that conspiracy's inventor, organizer, central figure, and guiding spirit.  His key, formative, guiding, and motivating role in the conspiracy is repeatedly alleged throughout the FAC.  A representative sampling of those allegations – in the order alleged – is as follows:

- Mr. Erbey "[u]ntil recently, controlled each of the Ocwen and Altisource Entities either directly or functionally," and "orchestrated" their "illegal scheme."  (FAC, ¶¶ 1 & 16(a)).
- Although forced to resign from the Ocwen and Altisource Entities by consent order in 2014, Mr. Erbey "continues to exercise some control over these entities because he was and still remains [their] largest individual shareholder," and they "continue to operate the scheme Erbey set in motion which continues to harm borrowers."  (*Id*., ¶¶ 1, 16(f) & 65).
- Mr. Erbey "directed" the Altisource spin-off, which allowed the self-serving charging of fees between the Ocwen and Altisource entities, thus enabling the conspiracy to charge

---

[1] Mr. Erbey filed a prior declaration (ECF 39-1) supporting his motion to dismiss the original complaint.  His amended declaration supporting this motion has two notable deletions from the original: (i) he took out his denial of any recent service as officer or director of any California entity after two were identified in the FAC (ECF 39-1, ¶ 3); and (ii) he took out his candid admission that his business practice and strategy was not "intentionally or expressly aimed at California any more than the rest of the United States" (*id*. at ¶5).  The resulting legal issues are addressed below in II(B)(3), and the resulting discovery and credibility issues are addressed below in II(C)(2).

"artificially and unfairly high prices for Distressed Mortgage Services, and to charge for Distressed Mortgage Services that were duplicative." (*Id.*, ¶¶ 3 & 16(b)).

- Throughout the material time up to his ouster by consent order in 2014, Mr. Erbey "controlled the Ocwen Enterprise through either direct or effective control of its participants including the Ocwen and Altisource Entities," during which time he was the CEO of Ocwen Financial, the Executive Chairman of Ocwen Servicing, and the Chairman of the Board of both Altisource Entities. (*Id.*, ¶¶ 7 & 16(a)).

- Mr. Erbey's control and influence over the Ocwen Enterprise and its corporate members was not and is not limited to executive power. Even <u>after</u> being forced out by consent order, he still owns over 13% of Ocwen Financial's stock, and over 26% of the Altisource Parent's stock. (*Id.*, ¶¶ 8(g) & 16(f)).

- Mr. Erbey was and is the "mastermind" of the Ocwen Enterprise who "created, oversaw and implemented the Ocwen Enterprise's unlawful practices that were directed at and harmed California residents under the protection of California laws and to the benefit of Erbey and the Ocwen Enterprise's other participants." (*Id.*, ¶ 16).

- Mr. Erbey "personally and directly controlled, directed, authorized, encouraged and participated in, and received a direct financial interest and benefit from, the Ocwen Enterprise." (*Id.*). The New York consent order specifically found – and the Ocwen Entities stipulated – that "**Mr. Erbey . . . has participated in**" a number of the material self-dealing transactions here. (*Id.*, ¶ 16(e), citing Ex. 6, ¶¶ 20-21 (emphasis added).

- The New York regulators and the Ocwen Entities themselves recognized and stipulated that Mr. Erbey's control over all the participants in the Ocwen Enterprise resulted in self-dealing and conflicts of interest, which was a key reason for his removal. (*Id.*, ¶¶ 47-50).

In summary, the FAC alleges not merely that Mr. Erbey was an officer, director, and shareholder of the other defendant entities, but also that he was personally and completely instrumental in setting up, conducting, and profiting from the entire self-dealing conspiracy that is at the heart of this case. Or, in the words of the cases cited below, Mr. Erbey was the conspiracy's "central figure" and "guiding spirit."

### 3. Mr. Erbey Does Not Deny the Actual Basis of Jurisdiction per the FAC

Remarkably, the Erbey declaration <u>does not deny or even address</u> any of these crucial allegations in the FAC.  Mr. Erbey and his declaration are <u>completely silent</u> concerning his formative role in setting up the Ocwen and Altisource entities, arranging their self-dealing transactions, reaping the wealth of their excessive fees, and then serving as their "fall guy" when the consent orders began to bite.

To the contrary, as already explained above, the declaration merely recites many immaterial facts concerning Mr. Erbey's personal residence, his personal and business travel to California, and his one very limited denial of conducting no "negotiations" in California between the corporate defendants "regarding any of the fees or charges at issue in this case." (Erbey Dec., ¶ 4).  Consequently, the material allegations of the FAC concerning the basis for personal jurisdiction over Mr. Erbey are <u>uncontroverted</u>.

### B. The Uncontroverted Allegations of the FAC Establish Personal Jurisdiction

#### 1. Uncontroverted Allegations Are Sufficient to Establish Jurisdiction

Plaintiffs bear the initial burden of proving jurisdiction by pleading the necessary jurisdictional facts to make a prima facie showing.  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir., 2004).  The burden then shifts to the defendant to make "a compelling case" that the exercise of personal jurisdiction "would not be reasonable." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir., 2011).  If a defendant rebuts the allegations in a sworn affidavit worthy of belief, then the burden shifts back to plaintiffs to make their own factual showing.  *Data Disc, Inc. v. Systems Technology Assocs., Inc.*, 557 F.2d 1280, 1289, fn. 5 (9th Cir., 1977).

However, <u>uncontroverted</u> jurisdictional allegations in the FAC are <u>deemed true</u>.  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d at 800.  Mr. Erbey's lawyers argue in their moving papers that those allegations are merely conclusory and not to be believed, but they get no factual help from Mr. Erbey's own declaration.  Indeed, those uncontroverted allegations establish two separate bases for personal jurisdiction here as a matter of law, namely: (i) individual control and direct participation in wrongful corporate acts; and (ii) purposeful direction of those acts at many states, including California.

#### 2. Mr. Erbey Had Individual Control and Direct Participation

Mr. Erbey argues at great length that corporate officers', directors', and shareholders' "mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that

forum to assert jurisdiction" over those individuals. *Davis v. Metro Prods., Inc*., 885 F.2d 515, 520 (9th Cir., 1989)  This is true, but inapplicable here because the uncontroverted allegations of the FAC establish that Mr. Erbey had "individual control of, and direct participation in the alleged activities." *See, e.g., Just Film, Inc. v. Merchant Svcs., Inc*., 2010 WL 4923146 at *6 (N.D. Cal. Nov. 29, 2010); *Wolf Designs, Inc. v. DHR Co*., 322 F.Supp.2d 1065, 1072 (C.D. Cal. 2004).  Such individual control and direct participation are sufficient to establish personal jurisdiction over an individual corporate actor. *Id*.

Moreover, individual control and direct participation can be shown when the individual defendant was the "central figure" or "guiding spirit" behind the unlawful conduct. *See, e.g., Davis v. Metro Prods., Inc*., 885 F.2d at 524; *Wolf Designs, Inc. v. DHR Co*., 322 F.Supp.2d at 1072.  Or, viewed from the other side of the coin, the "central figure" and "guiding spirit" in an unlawful corporate activity is an individual who personally directed the unlawful corporate conduct. *Fasugbe v. Willms*, 2011 WL 3667440, *4 (C.D. Cal., Aug. 22, 2011).  Other similar concepts establishing personal jurisdiction over an individual acting in a corporate capacity apply to a "primary participant" and the "moving force" in wrongdoing. *DISH Network, LLC v. Vicxon Corp*., 923 F.Supp.2d 1259, 1264 (S.D. Cal. 2013).

Obviously the determination as to whether an individual acting in a corporate capacity is a "central figure," "guiding spirit," "primary participant," and "moving force" in wrongdoing is highly fact-specific. But in the case of Mr. Erbey, extensive facts showing his personal involvement in, and direction of, wrongdoing by the Erbey/Ocwen/Altisource conspiracy are alleged in the FAC.  Those facts are <u>uncontroverted</u> by his declaration.  Mr. Erbey is indeed a classic "central figure" and "guiding spirit" for corporate wrongdoing.  That is why the consent orders removed him before, and that is why he is subject to personal jurisdiction as a matter of law now.

        **3.**      **Mr. Erbey Had Purposeful Direction in Multiple States, Including California**

A second reason why Mr. Erbey must face personal jurisdiction now is that the uncontroverted facts in the FAC – with another assist from an Erbey declaration – show that he purposefully directed the conspiracy's wrongdoing at multiple states, <u>including</u> California.

The test for this basis of jurisdiction has three prongs: (i) the defendant must "purposefully direct his activities or consummate some transaction with the forum or resident thereof"; (ii) the claim must arise from or relate to defendant's "forum-related activities"; and (iii) the exercise of jurisdiction must be

"reasonable." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d at 802; *see also Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir., 2008).  Plaintiffs and their FAC bear the burden on the first two prongs, and if they meet their burden, then Mr. Erbey must make a "compelling case" that the exercise of jurisdiction would be unreasonable. *Id*.

As this Court has stated, proof of "purposeful direction" in a tort case like this one requires an intentional act, expressly aimed at the forum state, and causing harm that the defendant knew was likely. *Michael v. New Century Fin. Svcs.*, 2015 WL 1404939, *3 (N.D. Cal. Mar. 30, 2015); *see also Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d at 803.  This is another highly fact-specific determination that turns on "the wrongful conduct at issue." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d at 807.  "Rigid and formalistic" analysis must be avoided. *Boschetto v. Hansing*, 539 F.3d at 1016.

Here, the detailed and uncontroverted allegations of the FAC establish defendants' conspiracy directed by Mr. Erbey.  His <u>amended</u> declaration does not deny any of those allegations, including those describing the Ocwen Enterprise's fee pyramid as a nationwide business model.  His <u>original</u> declaration, however, contained a sentence that obviously was designed to head off the "purposeful direction" test, but then was removed when Mr. Erbey's lawyers realized it had the opposite effect.  It read: "I have never participated in, directed, or controlled any business practice or strategy of [the Ocwen or Altisource Entities] that was specific or unique to California or that was **intentionally or expressly aimed at California any more than the rest of the United States**."  (ECF 39-1, ¶ 5, 1st 3 lines, emphasis added).

The quoted language in the original Erbey declaration says in plain English that Mr. Erbey had the <u>same</u> "purposeful direction" for his "business practice or strategy" in California as he did in <u>every other state</u> in the United States.  In other words, that "business practice or strategy" was "intentionally or expressly aimed at" <u>all</u> of those states – <u>California included</u>.  It would be a bad example of "rigid and formalistic" analysis if Mr. Erbey could avoid personal jurisdiction in one state on the basis that – even though he had "purposeful direction" in that state – he also had it in other states.  That unreasonable outcome would mean that a multi-state or nationwide conspiracy is safer from litigation in an affected state than a single-state conspiracy would be.

Mr. Erbey is potentially subject to personal jurisdiction in any state where he had "purposeful

direction," California included.  That potential jurisdiction becomes actual here because the other two factors of an intentional act (the self-dealing conspiracy to increase fees) and foreseeable harm in the forum state (increased fees paid by the Giottas and thousands of other California homeowners) are givens under the uncontroverted allegations of the FAC.  Moreover, Mr. Erbey has no basis to claim that the exercise of jurisdiction in California would be "unreasonable," any more than in any other state at which his "business practice or strategy" was "intentionally or expressly aimed," and harmed its residents.

### C. If Personal Jurisdiction is In Question, Then Jurisdictional Discovery is Proper

#### 1. The Court Has Discretion to Allow Jurisdictional Discovery

Defendants respectfully submit that the uncontroverted allegations of the FAC establish jurisdiction over Mr. Erbey here.  Both Erbey declarations fail to address – much less controvert – those allegations, and the original Erbey declaration even supports jurisdiction for the reasons just discussed.

However, should the Court wish to have more facts developed concerning these issues, it has the discretion to continue the hearing on this motion, and allow jurisdictional discovery.  *Orchid Biosciences, Inc. v. St. Louis University*, 198 FRD 670, 672-73 (S.D. Cal., 2001).  Such discovery may be limited to jurisdictional facts only.  *Data Disc, Inc. v. Systems Technology Assocs., Inc*., 557 F.2d at 1285, fn. 1.

The showing required to obtain jurisdictional discovery is not demanding.  The Ninth Circuit has held that there is no abuse of discretion if the request for discovery is "based on little more than a hunch that it might yield jurisdictionally relevant facts. *Boschetto v. Hansing*, 539 F3d at 1020.  Likewise, even "conclusory" allegations that corporate officers and executives "directed, participated, authorized, encouraged, and/or aided" the wrongful activity, and gained a "direct financial interest" as a result, will suffice to order jurisdictional discovery. *Chloe SAS v. Sawabeh Info. Svcs. Co*., 2012 WL 7679386, * 20-21 (C.D. Cal. May 3, 2012).

#### 2. Mr. Erbey's Two Declarations Invite Jurisdictional Discovery

As already noted above, the Erbey declarations raise two issues indicating that jurisdictional discovery could be productive.  Both arise out of factual statements under oath in the original declaration (ECF 39-1) that disappeared from the second declaration (ECF 53-1).

First, there is the original declaration's admission that Mr. Erbey's "business practice or strategy" was "intentionally or expressly aimed" at all states equally. (ECF 39-1, ¶ 5).  The legal significance of this

statement has already been addressed in detail. The deletion of this statement raises questions of Mr. Erbey's credibility as well.

Second, there is the original declaration's assertion that Mr. Erbey has "not been a partner, member, shareholder, director, or officer in a partnership, LLC, or corporation that was formed or had a principal place of business in California for over 25 years." (ECF 39-1, ¶ 3). This statement was deleted after the FAC cited two such California entities, in which Mr. Erbey was a director as recently as 2014. (FAC, ¶ 17). The deletion of this statement also raises questions of Mr. Erbey's credibility, and indicates that further investigation into his ties to California could be probative.

### 3. Should the Court Require, Plaintiffs Will Seek a 90-Day Stay for Discovery

Although plaintiffs contend that this Court's jurisdiction over Mr. Erbey has been established as a matter of law based on the uncontroverted allegations of the FAC, plaintiffs will promptly seek a 90-day stay to conduct jurisdiction discovery against Mr. Erbey if the Court so orders. Plaintiffs respectfully submit that 90 days would be appropriate for them to apply for the stay, get an order staying the case and allowing discovery before the Rule 16 exchanges, and obtain discovery – including at least a deposition and a document production – from a party who has "retired" to the Virgin Islands.

### D. The FAC Properly Alleges Mr. Erbey's Direct and Personal Liability

In the final two pages of his motion, Mr. Erbey argues that the FAC fails to state a claim against him based on the general rule that an officer or shareholder is not personally liable for the illegal conduct of the corporation. ECF No. 53 at 19. However, the FAC does not rely on his mere status as an officer or shareholder as a basis for liability.

As more fully explained below, Plaintiffs allege Mr. Erbey is an active participant in the Ocwen Enterprise and therefore is directly responsible as a co-conspirator under RICO (FAC, ¶¶ 117-144), is directly responsible for Plaintiffs' claims for fraud and under California's UCL (FAC, ¶¶ 171, 175-77, 184-87, 194, 205), and is responsible as a co-conspirator and aider and abetter with Ocwen and Altisource in their wrongful activities in violation of California's UCL and common law (FAC, ¶¶ 178, 188, 200, 212), and was a direct participant as a debt collector under the FDCPA and RFDCPA. FAC, ¶¶ 156,166. As a direct participant in the alleged wrongdoing, Mr. Erbey is personally liable for Plaintiffs' claims, and cannot "hide behind the corporation where he is an actual participant" in the wrongdoing. *Coastal Abstract*

*Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 734 (9th Cir. 1999). As already demonstrated above in detail, the FAC provides extensive allegations of Mr. Erbey's personal role in masterminding and executing the undisclosed self-dealing conspiracy central to this case.

### 1. The FAC Establishes Personal Liability Under RICO

Mr. Erbey is subject to personally liability on Plaintiffs' RICO claims (Count I) because the rule requiring individual involvement of a corporate officer applies under RICO. *See, e.g. Nat'l Grp. for Communications & Computers, Ltd. v. Lucent Technologies Inc.*, 2004 WL 2903745, at *3 (S.D.N.Y. Dec. 15, 2004). For personal liability to attach under RICO, "one must participate in the operation or management of the enterprise itself." *Baumer v. Pachl*, 8 F.3d 1341, 1344 (9th Cir. 1993) *citing Reves v. Ernst & Young,* 507 U.S. 170 (1993).

Likewise, allegations that a defendant knowingly agreed to facilitate a scheme which includes the operation or management of a RICO enterprise are sufficient to state a claim under Section 1962(d). *Smith v. Levine Leichtman Capital Partners, Inc.*, 723 F. Supp. 2d 1205, 1216 (N.D. Cal. 2010) *citing United States v. Fernandez,* 388 F.3d 1199, 1230 (9th Cir. 2004). As already shown above, Mr. Erbey is properly alleged to have operated and managed the affairs of the self-dealing conspiracy here, which is further alleged to be a RICO enterprise. He is clearly a material participant and a co-conspirator in this RICO enterprise.

### 2. The FAC Establishes Personal Liability Under the UCL and Fraud

Plaintiffs' UCL claims (Counts 4-6) and the fraud claim (Count 7) of the FAC also sufficiently allege Mr. Erbey's personal liability. Directors and officers of a corporation can be held personally liable for those tort-based claims if they participate in the wrong, or if they authorize or direct that it be done. *United States Liab. Ins. Co. v. Haidinger–Hayes, Inc.,* 1 Cal.3d 586, 595 (1970); *Imperial Ice Co. v. Rossier,* 18 Cal.2d 33, 38 (1941); *Lawless v. Brotherhood of Painters,* 143 Cal.App.2d 474, 478 (1956). An officer or director may be found to have participated in tortious conduct if he "specifically authorized, directed or participated in the allegedly tortious conduct," or if he "knew about and allowed the tortious conduct to occur." *PMC, Inc. v. Kadisha,* 78 Cal.App.4th 1368, 1380, 93 Cal.Rptr.2d 663 (2000).

Once again, as already shown above in detail, the FAC specifically alleges Mr. Erbey's personal authorizing of wrongdoing, and his personal participation in that wrongdoing. Those allegations suffice

for personal liability for violation of the UCL, and for fraud.

### 3. The FAC Establishes Mr. Erbey Conspired With the Rest of the Ocwen Enterprise, and Aided and Abetted the Ocwen Enterprise

In addition to the allegations in the FAC which give rise to Mr. Erbey being directly responsible for his actions, Mr. Erbey was a co-conspirator with, and aided and abetted, the rest of the Ocwen Enterprise. FAC, ¶¶ 96-104; 212 (Fraud Count); 156, 166, 178, 188, 200 (other counts). Until very recently, Mr. Erbey controlled each of the Ocwen and Altisource entities directly or functionally by virtue of his stock ownership and positions as CEO of Ocwen Financial, Executive Chairman of Ocwen Servicing, and Chairman of the Board of Directors of Altisource and its parent company. *Id*. ¶¶ 1, 47. Under Mr. Erbey's control and direction, Ocwen spun off Altisource as its own "independent" company, allowed Altisource to take the servicing software Ocwen needed to run its loan servicing business, and then hired Altisource to provide Distressed Mortgage Services (which Ocwen did in-house previously) at artificially and unfairly high prices. *Id*. at ¶¶ 3, 40. Mr. Erbey directed Ocwen's Chief Risk Officer to act concurrently as Altisource's Chief Risk Officer, had the Chief Risk Officer's salary paid entirely by Ocwen, and had the Chief Risk Officer report directly to Mr. Erbey. *Id*. at ¶¶ 8i, 16. Mr. Erbey conspired with, and provided substantial assistance to, Ocwen and Altisource in increasing the companies' revenue by charging homeowners for Distressed Mortgage Services with inflated fees and that were duplicative of other services charged to borrowers. *Id*. at ¶¶ 38, 40-42. After the various conflicts of interest and overcharging for Distressed Mortgage Services was revealed by the New York Department of Financial Services as part of a Consent Order, Mr. Erbey was forced to step down from his officer and director positions within Altisource and Ocwen effective January 16, 2015. Id. at ¶ 59.

It is axiomatic that, "[a]ll conspirators are jointly liable for the acts of their co-conspirators." *Beltz Travel Serv., Inc. v. Int'l Air Transp. Ass'n*, 620 F.2d 1360, 1367 (9th Cir. 1980); *Rasmussen v. Dublin Rarities*, No. C 14-1534 PJH, 2015 WL 1133189, at *9 (N.D. Cal. Feb. 27, 2015) (same for a fraud count). Moreover, even if Mr. Erbey did not conspire with the rest of the Ocwen Enterprise, which he did, Mr. Erbey at the very least aided and abetted the Ocwen Enterprise in its conduct. Under California law, "liability may ... be imposed on one who aids and abets the commission of an intentional tort if the person ... knows the other's conduct constitutes a breach of a duty and gives substantial assistance or

encouragement to the other to so act." *In re First Alliance Mortgage Co.*, 471 F.3d 977, 993 (9th Cir. 2006)(citing *Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal.App. 4th 1138, 1144 (2005)); *AngioScore, Inc. v. TriReme Med., Inc.*, No. 12-CV-03393-YGR, 2015 WL 4040388, at *20 (N.D. Cal. July 1, 2015)).

Here, Plaintiffs allegations in the FAC summarized above are sufficient to show Mr. Erbey provided substantial assistance to the Ocwen Enterprise's frauds in the day-to-day operations of the fraudulent practices. By conspiring with, and substantially assisting the Ocwen Enterprise in charging borrowers for duplicative and inflated Distressed Mortgage Fees, Mr. Erbey profited by the additional fees unfairly, unlawfully, and fraudulently charged and collected. ECF No. 41, FAC ¶ 46. These allegations are sufficient to hold Mr. Erbey as a co-conspirator and an aider and abettor to Ocwen's and Altisource's fraud. *In re First Alliance Mortgage Co.*, 471 F.3d 977, 995 (9th Cir. 2006) (affirming jury verdict against a defendant for knowingly assisting a company's fraudulent business practices).

### 4. The FAC Establishes Personal Liability Under the FDCPA/RFDCPA

Mr. Erbey is also subject to liability on the FDCPA/RFDCPA claims (Counts 2-3) because he participated in the debt collection activities at issue. To be liable under the FDCPA, a defendant must be a debt collector, which is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The RFDCPA likewise defines "debt collector" as "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection." Cal. Civ. Code § 1788.2(c). The RFDCPA also broadly defines "debt collection" as "any act or practice in connection with the collection of consumer debts." Cal. Civ. Code § 1788.2(b).

The Ninth Circuit district courts have found that an individual can be personally liable as a debt collector under the FDCPA or RFDCPA when he exercises control over the affairs of the debt collection business, or was regularly engaged, directly and indirectly, in the collection of debts. Based on this requirement, these courts have found an individual personally liable if the individual: (i) materially participated in collecting the debt at issue; (ii) "exercise[d] control over the affairs of [the] business; (iii) was "personally involved in the collection of the debt at issue"; or (iv) "was 'regularly engaged, directly and indirectly, in the collection of debts.'" *Schwarm v. Craighead*, 552 F. Supp. 2d 1056, 1073 (E.D. Cal.

2008); *see also, Alonso v. Blackstone Fin. Grp. LLC*, 962 F. Supp. 2d 1188, 1205 (E.D. Cal. 2013).

The FAC alleges at least two of these factors. *First,* Mr. Erbey "exercised control" over the entire conspiracy. (FAC at ¶7). *Second,* Mr. Erbey, the CEO of Ocwen and Altisource, "materially assisted" the creation, spin off, lease back, and use of Ocwen's mortgage servicing software platform. That platform enabled the self-dealing scheme that arranged for, assessed, and communicated with borrowers about Ocwen's fees for inflated or duplicative services. (*Id*. at ¶¶ 40-50).

Mr. Erbey's central role as the mastermind and controlling figure of this self-dealing conspiracy makes him a "debt collector" subject to personal liability under the FDCPA and RFDCPA.

## IV.   CONCLUSION

Plaintiffs respectfully request that Mr. Erbey's motion to dismiss for lack of personal jurisdiction, and for failure to state a claim, be denied.

Dated:  August 18, 2015                              FEINSTEIN DOYLE PAYNE & KRAVEC, LLC

                                              By:    s/Joseph N. Kravec, Jr.
                                                     Joseph N. Kravec, Jr.
                                                     Attorneys for Plaintiffs
                                                     Email:  jkravec@fdpklaw.com

**PROOF OF SERVICE**

STATE OF PENNSYLVANIA        )
                             )  ss.:
COUNTY OF ALLEGHENY          )

I am employed in the County of Allegheny, State of Pennsylvania. I am over the age of 18 and not a party to the within action. My business address is 429 Forbes Avenue, Allegheny Building, 17th Floor, Pittsburgh, PA 15219.

On August 18, 2015, using the Northern District of California's Electronic Case Filing System, with the ECF ID registered to Joseph N. Kravec, Jr., I filed and served the document(s) described as:

**PLAINTIFFS' OPPOSITION TO MOTION
TO DISMISS BY WILLIAM ERBEY**

**[X]   BY ELECTRONIC TRANSMISSION USING THE COURT'S ECF SYSTEM:** I caused the above document(s) to be transmitted by electronic mail to those ECF registered parties listed on the Notice of Electronic Filing (NEF) pursuant to Fed.R.Civ.P. 5(d)(1) and by first class mail to those non-ECF registered parties listed on the Notice of Electronic Filing (NEF). *"A Notice of Electronic Filing (NEF) is generated automatically by the ECF system upon completion of an electronic filing. The NEF, when e-mailed to the e-mail address of record in the case, shall constitute the proof of service as required by Fed.R.Civ.P. 5(d)(1). A copy of the NEF shall be attached to any document served in the traditional manner upon any party appearing pro se."*

I declare that I am admitted *pro hac vice* in this action.

I declare, under penalty of perjury under the laws of the United States, that the above is true and correct.

Executed on August 18, 2015, at Pittsburgh, Pennsylvania.

                                          s/Joseph N. Kravec, Jr.
                                              Joseph N. Kravec, Jr.