Stephen F. Yunker (CSB 110159)
**YUNKER & SCHNEIDER**
655 West Broadway, Suite 1400
San Diego, California 92101
Tel: (619) 233-5500
Fax: (619) 233-5535
Email: sfy@yslaw.com

Gretchen Freeman Cappio
(admitted *pro hac vice*)
Dean N. Kawamoto (CSB 232032)
Gretchen S. Obrist (admitted *pro hac vice*)
**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel: (206) 623-1900
Fax: (206) 623-3384
E-mail: gcappio@kellerrohrback.com
        dkawamoto@kellerrohrback.com
        gobrist@kellerrohrback.com

Joseph N. Kravec, Jr. (admitted *pro hac vice*)
Wyatt A. Lison (admitted *pro hac vice*)
McKean J. Evans (admitted *pro hac vice*)
**FEINSTEIN DOYLE
   PAYNE & KRAVEC, LLC**
Allegheny Building, 17th Floor
429 Forbes Avenue
Pittsburgh, PA 15219
Tel:   (412) 281-8400
Fax:   (412) 281-1007
Email: jkravec@fdpklaw.com
Email: wlison@fdpklaw.com
Email: mevans@fdpklaw.com

James M. Pietz (admitted *pro hac vice*)
**PIETZ LAW OFFICE**
429 Forbes Avenue, Suite 1710
Allegheny Building
Pittsburgh, PA 15219
Tel: (412) 288-4333
Fax 1-866-633-1820
Email: jpietz@pietzlaw.com

***ATTORNEYS FOR PLAINTIFFS AND
THE PROPOSED CLASS AND SUBCLASSES***

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| VICTOR P. GIOTTA and LORALEE GIOTTA, on Behalf of Themselves and All Others Similarly Situated , <br><br>     Plaintiffs, <br><br> v. <br><br> OCWEN FINANCIAL CORPORATION, et al., <br><br>     Defendants. | Case No. CV 15-00620 BLF <br><br> **PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS BY ALTISOURCE SOLUTIONS, INC.** <br><br> <u>**CLASS ACTION**</u> <br><br> Date:   September 17, 2015 <br> Time:   9:00 a.m. <br> Dept:   Courtroom 3, 5th Floor |

# TABLE OF CONTENTS

I.   INTRODUCTION .................................................................................................1

II.  SUMMARY OF THE OCWEN ENTERPRISE.................................................3

III. ARGUMENT .....................................................................................................4

   A.  Plaintiffs State Valid RICO Claims Against Altisource ............................4

      1.  Plaintiffs State A RICO Section 1962(c) Claim ................................5

         i.   The FAC Properly Alleges The "Conduct Of An Enterprise"............5

         ii.  The FAC Alleges A "Pattern Of Racketeering Activity" ...................8

         iii. The Mortgage Contract Does Not Preclude Racketeering Activity..................10

      2.  Altisource Has Not Shown Plaintiffs' RICO Conspiracy Claim Fails .....................13

   B.  Plaintiffs State Valid FDCPA And RFDCPA Claims Against Altisource ...................13

   C.  Altisource Offers No Basis to Dismiss Plaintiffs' Fraud Claim ........................14

      1.  Plaintiffs Pled All Elements of Fraud With the Requisite Specificity.....................14

      2.  Altisource's "No Duty" Defense Fails Because Altisource Conspired With the Rest of the Ocwen Enterprise and Aided and Abetted the Enterprise's Fraud ..........................17

      3.  California's Economic Loss Rule Does Not Bar Plaintiffs' Claims........................18

   D.  Plaintiffs State UCL "Unlawful," "Unfair" and "Fraudulent" Claims ..........................19

      1.  Plaintiffs State A Proper UCL "Unlawful" Claim................................................19

         i.   Plaintiffs' Properly Pled RICO, FDCPA, RFDCPA and Fraud Claims Give Rise to a UCL "Unlawful" Claim ..............................................................20

         ii.  Plaintiffs Pled an Independent UCL "Unlawful" Claim Based on The Ocwen Enterprise's Ongoing Violations of the Dodd-Frank Act ("DFA")..................................20

      2.  Plaintiffs Pled a UCL "Unfair" Claim Under All Three Tests ...............................21

         i.   Altisource's Conduct is "Unfair" Under the Balancing Test........................22

         ii.  Altisource's Conduct is "Unfair" Under the FTC Test..............................23

         iii. Altisource's Conduct is "Unfair" Under The "Tethering" Test.....................24

      3.  Altisource Fails to Show Plaintiffs Did Not Plead A Valid UCL "Fraudulent" Claim..........25

IV. CONCLUSION...................................................................................................25

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS BY ALTISOURCE SOLUTIONS, INC.

# TABLE OF AUTHORITIES

## Cases

*AngioScore, Inc. v. TriReme Med., Inc.*,
  2015 WL 4040388 (N.D. Cal. July 1, 2015) ........................................................................18

*Annulli v. Panikkar*,
  200 F.3d 189 (3d Cir. 1999) .......................................................................................10, 11

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
  459 U.S. 519 (1983) .....................................................................................................17, 19

*Backhaut v. Apple, Inc.*,
  74 F. Supp. 3d 1033 (N.D. Cal. 2014) .................................................................................19

*Beltz Travel Serv., Inc. v. Int'l Air Transp. Ass'n*,
  620 F.2d 1360 (9th Cir. 1980) .............................................................................................17

*Bias v. Wells Fargo & Co.*,
  942 F. Supp. 2d 915 (N.D. Cal. 2013) .......................................................................... *passim*

*Bridge v. Phx. Bond & Indem. Co.*,
  553 U.S. 639 (2008) ............................................................................................................11

*Casey v. U.S. Bank Nat'l Ass'n*,
  127 Cal.App. 4th 1138 (2005) .............................................................................................18

*Cedric Kushner Promotions, Ltd. v. King*,
  533 U.S. 158 (2001) ..............................................................................................................5

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
  973 P.2d 527 (Cal. 1999) .................................................................................20, 21, 24, 25

*Cirino v. Bank of Am., N.A.*,
  2014 WL 9894432 (C.D. Cal. Oct. 1, 2014) .......................................................................24

*Clark v. Prudential Ins. Co. of Am.*,
  736 F. Supp. 2d 902 (D.N.J. 2010) .....................................................................................24

*Cox v. Sherman Capital LLC*,
  2014 WL 1328147 (S.D. Ind. Mar. 31, 2014) .....................................................................13

*Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio*,
  900 F.2d 882 (6th Cir. 1990) ..............................................................................................11

*Davis v. Ford Motor Credit Co.*,
  179 Cal. App. 4th 581 (Cal. Ct. App. 2009) .......................................................................23

*Davis v. HSBC Bank Nevada, N.A.*,
  691 F.3d 1152 (9th Cir. 2012) ............................................................................................23

*Del Campo v. Am. Corrective Counseling Servs., Inc.*,
  254 F.R.D. 585 (N.D.Cal.2008) .........................................................................................20

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS BY ALTISOURCE SOLUTIONS, INC.

*Ellis v. J.P. Morgan Chase & Co.*,
    950 F. Supp. 2d 1062 (N.D. Cal. 2013) ..................................................................................17

*Ellis v. J.P.Morgan Chase & Co.*,
    2015 WL 78190 (N.D. Cal. Jan. 6, 2015) ..........................................................................4, 5, 7

*Ellsworth v. U.S. Bank, N.A.*,
    908 F. Supp. 2d 1063 (N.D. Cal. 2012) .......................................................................21, 22, 23, 24

*Garcia v. Sony Computer Entm't Am., LLC*,
    859 F. Supp. 2d 1056 (N.D. Cal. 2012) ..................................................................................25

*Gold v. Midland Credit Mgmt., Inc.*,
    2015 WL 1037700 (N.D. Cal. Mar. 10, 2015) ........................................................................13

*Gomez v. Nationstar Mortgage, LLC*,
    2015 WL 966224 (E.D. Cal. 2015) ..................................................................................24

*H.J. Inc. v. Northwestern Bell Tel. Co.*,
    492 U.S. 229 (1989) ..................................................................................13

*Harrison v. NBD, Inc.*,
    968 F. Supp. 837 (E.D.N.Y.1997) ..................................................................................13

*Hulse v. Ocwen Fed. Bank, FSB*,
    195 F. Supp. 2d 1188 (D. Or. 2002) ..................................................................................14

*In re Adobe Sys., Inc. Privacy Litig.*,
    66 F. Supp. 3d 1197 (N.D. Cal. 2014) ..................................................................................24

*In re First Alliance Mortgage Co.*,
    471 F.3d 977 (9th Cir. 2006) ..................................................................................18, 19

*In re GlenFed, Inc. Sec. Litig.*,
    42 F.3d 1541 (9th Cir. 1994) ..................................................................................16

*In re Nat'l W. Life Ins. Deferred Annuities Litig.*,
    2012 WL 440820 (S.D. Cal. Feb. 10, 2012) ........................................................................11

*In re U.S. Foodservice Inc. Pricing Litig.*,
    729 F.3d 108 (2d Cir. 2013) ..................................................................................10, 11

*Jenkins v. Union Corp.*,
    999 F. Supp. 1120 (N.D. Ill. 1998) ..................................................................................13

*Johnson v. Wachovia Bank FSB*,
    2012 WL 4092426 (E.D. Cal. Sept. 17, 2012) ........................................................................12

*Jordan v. Paul Fin., LLC*,
    745 F. Supp. 2d 1084 (N.D. Cal. 2010) .......................................................................21, 24

*Klay v. Humana, Inc.*,
    382 F.3d 1241 (11th Cir. 2004) ..................................................................................11

*Lazar v. Superior Court*,
    909 P.2d 981 (Cal. 1996) ..................................................................................15

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS BY ALTISOURCE SOLUTIONS, INC.

*Lustiger v. United States,*
    386 F.2d 132 (9th Cir. 1967) ..................................................................................10

*Martinez v. Quality Loan Serv. Corp.,*
    2009 WL 586725 (C.D. Cal. Feb. 10, 2009)............................................................12

*Martinez v. Wells Fargo Home Mortgage, Inc.,*
    598 F.3d 549 (9th Cir. 2010) ..................................................................................20

*Mass. Mut. Life Ins. Co. v. Superior Court,*
    97 Cal.App.4th 1282, 119 Cal.Rptr.2d 190 (2002).................................................25

*McKell v. Washington Mut. Inc.,*
    142 Cal.App.4th 1457 (Cal. Ct. App. 2006) ...........................................................25

*Miller v. Yokohama Tire Corp.,*
    358 F.3d 616 (9th Cir.2004) ......................................................................................8

*Monterey Bay Military Hous., LLC v. Pinnacle Monterey LLC,*
    2015 WL 4498812 (N.D. Cal. July 10, 2015)...........................................................7

*Monterey Bay Military Hous., LLC v. Pinnacle Monterey LLC,*
    2015 WL 4624678 (N.D. Cal. Aug. 3, 2015) ............................................................7

*Newton v. Am. Debt Servs., Inc.,*
    2014 WL 7183930 (N.D. Cal. Dec. 16, 2014)...................................................20, 21

*Odom v. Microsoft Corp.,*
    486 F.3d 541 (9th Cir. 2007) ................................................................................5, 6

*Orkin Exterminating Co., Inc. v. FTC,*
    849 F.2d 1354 (11th Cir. 1988) ..............................................................................23

*Phipps v. Wells Fargo,*
    2011 WL 302803 (E.D.Cal. Jan 27, 2011) .............................................................21

*Rasmussen v. Dublin Rarities,*
    No. C 14-1534 PJH, 2015 WL 1133189 (N.D. Cal. Feb. 27, 2015)........................18

*Rezner v. HVB Am., Inc.,*
    2015 WL 2344994 (N.D. Cal. Apr. 6, 2015) ..........................................................20

*Robinson Helicopter Co. v. Dana Corp.,*
    102 P.3d 268 (2004).................................................................................................18

*Robinson v. Managed Accounts Receivables Corp.,*
    654 F. Supp. 2d 1051 (C.D. Cal. 2009) ..................................................................20

*Schreiber Distrib. Co. v. Serv–Well Furniture Co., Inc.,*
    806 F.2d 1393 (9th Cir.1986) ....................................................................................8

*Sedima, S.P.R.L. v. Imrex Co.,*
    473 U.S. 479 (1985).................................................................................................12

*Sepehry-Fard v. MB Fin. Servs.,*
    2015 WL 903364 (N.D. Cal. Mar. 2, 2015)............................................................12

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS BY ALTISOURCE SOLUTIONS, INC.

*Small v. Fritz Companies, Inc.*,
   65 P.3d 1255 (Cal. 2003) ..................................................................................15

*Smith v. Jackson*,
   84 F.3d 1213 (9th Cir. 1996) ............................................................................10

*Sosa v. DIRECTV, Inc.*,
   437 F.3d 923 (9th Cir. 2006) ..............................................................................8

*Stitt v. Citibank, N.A.*,
   2015 WL 75237 (N.D. Cal. Jan. 6, 2015) ....................................................4, 5, 7

*Ticor Title Ins. Co. v. Florida*,
   937 F.2d 447 (9th Cir. 1991) ............................................................................12

*U.S. v. Ali*,
   620 F.3d 1062 (9th Cir. 2010) ..........................................................................19

*United Guar. Mortgage Indem. Co. v. Countrywide Fin. Corp.*,
   660 F. Supp. 2d 1163 (C.D. Cal. 2009) ............................................................18

*United States v. ACB Sales & Serv., Inc.*,
   590 F.Supp. 561 (D.Ariz.1984) ........................................................................13

*United States v. Allen*,
   554 F.2d 398 (10th Cir.), cert. denied, 434 U.S. 836 (1977) ............................10

*United States v. Beecroft*,
   608 F.2d 753 (9th Cir. 1979) ............................................................................10

*United States v. Benny*,
   786 F.2d 1410 (9th Cir. 1986) ..........................................................................10

*United States v. Cloud*,
   872 F.2d 846, (9th Cir.1989) ..............................................................................9

*Vega v. Ocwen Fin. Corp.*,
   2014 WL 6775898 (C.D. Cal. Dec. 1, 2014) ....................................................11

*Vega v. Ocwen Fin. Corp.*,
   2015 WL 1383241 (C.D. Cal. Mar. 24, 2015) ............................................. *passim*

*Vega v. Ocwen Fin. Corp.*,
   2015 WL 3441930 (C.D. Cal. May 28, 2015) ..................................................12

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ....................................................................15, 16

*Wahl v. Am. Sec. Ins. Co.*,
   2010 WL 1881126 (N.D. Cal. May 10, 2010) ..................................................21

*Wahl v. Am. Sec. Ins. Co.*,
   No. 5:08 CV 0555 RS, 2009 WL 1766620 (N.D. Cal. June 18, 2009)..........19, 21

*Walker v. Countrywide Home Loans, Inc.*,
   98 Cal. App. 4th 1158 (Cal. Ct. App. 2002) ...............................................22, 23

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS BY ALTISOURCE SOLUTIONS, INC.

*Weiner v. Ocwen Financial*,
    2015 WL 4599427 (E.D. Cal. July 29, 2015) ................................................................ *passim*

*Young v. Wells Fargo*,
    671 F. Supp. 2d 1006 (S.D. Iowa 2009) ...............................................................17, 19, 23

*Zhang v. Superior Court*,
    304 P.3d 163 (Cal. 2013) .................................................................................................20

**Statutes**

12 U.S.C. §§ 5301, *et seq.* ......................................................................................................20

15 U.S.C. § 45, subd. (n) .........................................................................................................23

15 U.S.C. §§ 1692, *et seq* ................................................................................................ *passim*

18 U.S.C. § 1341 ......................................................................................................................10

18 U.S.C. § 1961(1) .......................................................................................................8, 10, 12

18 U.S.C. § 1961(3) ...................................................................................................................6

18 U.S.C. § 1962(c) ...............................................................................................................5, 6

18 U.S.C. § 1341 .......................................................................................................................8

18 U.S.C. § 1343 .......................................................................................................................8

Cal. Bus. & Prof.Code § 17200 ..............................................................................................19

Cal. Civ. Code §§ 1788, *et seq* ....................................................................................... *passim*

**Rules**

Fed.R.Civ.P. 9(b) .................................................................................................................14, 25

Case No. CV 15-00620 BLF

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS BY ALTISOURCE SOLUTIONS, INC.

## I.   INTRODUCTION

This is a putative class action seeking to end and recover damages for years of tortious loan servicing of troubled subprime home mortgages.  The four Defendants – three affiliated companies and their key founding executive – set in motion a highly effective conspiracy of hidden self-dealing that continues to operate (the "Ocwen Enterprise").  The conspiracy started when, in 2009, Ocwen Financial spun off the Altisource Parent, which thereafter leased back the computer system Ocwen Financial developed to run its servicing business to Ocwen Financial.  Through the Ocwen Enterprise, Defendants maximized loan servicing fees by contracting with one another to exchange services at inflated and unfair rates.  Those rates were passed on to millions of struggling homeowners nationwide.

There is nothing theoretical or assumed about this fundamentally unlawful scenario.  To date, Defendants or their affiliates have entered into three public consent orders which were designed to break up this conspiracy, and to beat down its servicing fees passed on to homeowners.  Those orders collectively required payment of about $2.28 billion, imposed prolonged compliance monitoring, limited Defendants' ability to contract with one another, and forced their key executive to step down and "retire."  The orders also left Defendants exposed to consumer class actions like this one because the monies paid under those orders were largely penalties and fines that did not compensate consumers for their losses on the claims at issue.

The four Defendants have now brought three motions to dismiss, none of which explains away the consent orders, nor the years of investigation and documentation which culminated in them.  Instead, the motions offer variations on two common themes, both of which are red herrings.

The first theme is that no one Defendant could be liable based just on his or its limited role in the allegations.  This theme ignores the fundamental allegation that all the Defendants acted *in concert*.

The second theme is that Defendants' acts were allowed by contract, namely that the servicing fees in question were authorized under the mortgage loan agreements.  This theme ignores the equally fundamental allegation that the *amounts* and *frequency* of the fees were inflated were inflated and unfair – and hence tortious and illegal under numerous federal and state laws that protect consumers – even if the *types* of fees were contractually permissible.

In short, Defendants have moved to dismiss a different case than the one framed by the original

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS BY ALTISOURCE SOLUTIONS, INC.

Complaint, and clarified by the First Amended Complaint. Dkt. No. 41 ("FAC"). They want to defend a contract case against each Defendant individually, rather than a tort case against all Defendants collectively as co-conspirators. However, consistent with the consent orders, Plaintiffs have alleged a tort case against a conspiracy.

Relying on these inapplicable themes and mischaracterizations of the FAC, Altisource first claims Plaintiffs' RICO claim must be dismissed because, purportedly: (1) foreclosure proceedings are not subject to RICO; (2) Plaintiffs inadequately allege RICO predicate acts; (3) Plaintiffs failed to plead a RICO enterprise; and (4) Plaintiffs failed to plead a RICO conspiracy. Altisource's Motion to Dismiss ("Altisource MTD"), Dkt. No. 54, pp. 8-14. Contrary to Altisource's arguments, Plaintiffs pleaded, in detail, all elements of a RICO claim, including predicate acts, enterprise and conspiracy. (*infra*, pp. 4-13). Moreover, Altisource's supposition that foreclosure proceedings are not subject to RICO is unsupported by the law (*infra*, pp. 12-13).

Second, Altisource contends it cannot be liable under the FDCPA and RFDCPA because it is not a "debt collector" under either statute and never communicated directly with Plaintiffs. Altisource MTD pp. 15-16. Not so. Altisource is liable under both statutes because the statutes cover persons, like Altisource, who "indirectly" engage in deceptive debt collection practices as part of a "single economic enterprise" that constitutes concerted action to collect excessive fees from borrowers (*infra*, pp. 13-14).

Third, Altisource seeks to dismiss Plaintiffs fraud claim, contending: (1) Altisource owed Plaintiffs no duty to disclose the Ocwen Enterprise's existence and conduct; (2) the economic loss rule bars Plaintiffs' claim; and (3) Plaintiffs' fraud claim is not pleaded with sufficient particularity. Altisource MTD, pp. 16-20. To the contrary, Altisource's "no duty" argument fails because Altisource is liable for the Ocwen Enterprise's conduct as a conspirator and aider/abettor (*infra*, pp. 17-18), the economic loss rule does not apply because Altisource violated non-contractual duties (*infra*, pp. 18-19), and Plaintiffs pleaded all elements of fraud with particularity (*infra*, pp. 15-16).

Finally, Altisource contends Plaintiffs fail to state a claim under either the "unfair," "unlawful" or "fraudulent" prong of the UCL. Altisource MTD, pp. 21-24. Plaintiffs, however, properly state claims under each prong of the UCL for Altisource's participation in the RICO enterprise and related violations of law (*infra*, pp. 19-25).

1          For these and the reasons discussed below, Altisource's motion to dismiss should be denied.

2     **II.      SUMMARY OF THE OCWEN ENTERPRISE**

3          Plaintiffs Victor and Loralee Giotta are homeowners with a mortgage loan on their home in San

4     Jose – a house they have occupied for over 50 years.  They defaulted on the full amount of mortgage

5     payments due in 2013, although they have continued to make payments.  Under their mortgage loan

6     agreement, that default allowed their mortgage servicer to charge for certain services "for the purpose of

7     protecting Lender's interest in the Property" – including charging for "property inspection and valuation

8     fees."   Plaintiffs have paid at least 12 separate fees totaling over $316 for a "Property Valuation

9     Expense" or "Property Inspection Fee" between 2013 and 2014.  FAC, ¶¶ 6 & 81-85; Ex. 9, § 14.

10         Those servicing fees were paid to Defendant Ocwen Loan Servicing, LLC ("Ocwen Servicing"),

11    which is a wholly-owned subsidiary of Defendant Ocwen Financial Corporation ("Ocwen Financial").

12    Those two Ocwen Defendants are closely affiliated with defendant Altisource Solutions, Inc. and – at the

13    material time – all three Defendants were either directly or effectively controlled by defendant William

14    Erbey.  He was then the CEO of Ocwen Financial, the Executive Chairman of Ocwen Servicing, and

15    Chairman of the Board of both Altisource Solutions and its parent, namely Altisource Portfolio Solutions

16    S.A. (based in Luxembourg, and a prior named defendant in this case, but now dismissed under a tolling

17    agreement).  The four entities and Mr. Erbey are the co-conspirators in this case.  FAC, ¶¶ 7-11.

18         Here are the key details on the co-conspirators, and how their conspiracy works:

19    •      Mr. Erbey was a purported innovator in the servicing of troubled mortgage loans, of

20    which there was a huge increase starting with the 2008 recession.  Despite holding himself out as a

21    homeowner-friendly innovator, in reality, Mr. Erbey's operations simply charged more and higher

22    servicing fees, and sold foreclosed properties faster, than did other mortgage servicers – all at excessive

23    cost to homeowners.  By 2014-15, regulators and public prosecutors recognized and attempted to stop

24    these practices.  Three resulting consent orders led to Mr. Erbey's forced "retirement" from the mortgage

25    servicing business.  FAC, ¶¶ 1, 7, 16, 23-24 & 59.

26    •      Ocwen Financial was Mr. Erbey's main entity for managing the mortgage servicing

27    business.  Though neither a lender nor a servicer itself, it acquired the troubled loan portfolios of other

28    lender-servicers, and had those loans serviced by its wholly-owned subsidiary Ocwen Servicing.  The

Ocwen Entities' business grew tenfold during the recession, and Ocwen Servicing is now the largest non-lending servicer in the United States.  Under the 2014-2015 consent decrees, the Ocwen Entities stipulated to charging excessive servicing fees (among many other offenses), and paid $2.28 billion in compensation, penalties, charges and fines for investigation and monitoring (although these payments did not compensate borrowers for the FAC's allegations).  FAC, ¶¶ 2, 8-9, 26-27, 31-32 & 51-63; Exs. 6-7.

- •   The Altisource Entities began as a division of Ocwen Financial handling its collection and fee processing work, and using its Erbey-designed computer systems.  In 2009, Ocwen Financial spun off the Altisource Parent, which thereafter leased back the same computer systems to Ocwen Financial.  Likewise, Altisource thereafter sold back the same collection and fee processing work to Ocwen Financial.  FAC, ¶¶ 3, 10-11, 39-46.

The purpose of these machinations was to orchestrate a system of undisclosed self-dealing in order to charge borrowers more and increased distressed mortgage fees.  All these fees – increased to excessive and unreasonable amounts by these purportedly "independent" transactions – are passed through to homeowners.  The end result of this conspiracy of self-dealing is excessive fees, which in turn means higher profits for each co-conspirator.  FAC, ¶¶ 2-4, 8-11, 23-24, 31-33, 38-63.

## III.    ARGUMENT

### A.    Plaintiffs State Valid RICO Claims Against Altisource

The FAC provides detailed facts about Altisource's central role in the Ocwen Enterprise's undisclosed self-dealing scheme to defraud homeowners of their money.  Rather than "face the music" about its participation in the well-documented scheme to defraud in violation of RICO,[1] Altisource attempts to divert the Court's attention by arguing that Plaintiffs' cannot assert a RICO claim and their only remedy is a contractual one under the Giotta's mortgage loan agreement. Altisource cites and relies on *Vega v. Ocwen,* 2015 WL 1383241, (C.D. Cal. March 24, 2015) ("*Vega I*"); *Ellis v. J.P.Morgan Chase & Co.*, 2015 WL 78190, at *4 (N.D. Cal. Jan. 6, 2015) and *Stitt v. Citibank, N.A.*, 2015 WL 75237, at *5 (N.D. Cal. Jan. 6, 2015).

However, *Vega I, Ellis* and *Stitt* are readily distinguishable.  Instead, the roadmap for rejection of

---

[1] The Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961, *et seq.*

Altisource's arguments is provided in *Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 937 (N.D. Cal. 2013) ("*Bias*") and *Weiner v. Ocwen Financial,* 2015 WL 4599427 (E.D. Cal. July 29, 2015) ("*Weiner*"), two substantially similar cases alleging virtually identical RICO claims based a lender's conduct in assessing up-charged Distressed Mortgage Service Fees.[2]

As *Bias* and *Weiner* illustrate, there is no rule that bars a RICO claim because a plaintiff may also bring a breach of contract action against someone else. This is a proposition plucked from thin-air by Altisource. A RICO claim is wholly distinct from a breach of contract action, having much different pleading requirements. The required focus here is whether Plaintiffs have met these distinct requirements. Plaintiffs have done so, as fully demonstrated below.

### 1.    Plaintiffs State A RICO Section 1962(c) Claim

The elements of a valid 18 U.S.C. § 1962(c) RICO claim include (1) conduct, (2) of an enterprise (3) through a pattern (4) of racketeering activity. *See Odom v. Microsoft Corp.,* 486 F.3d 541, 547 (9th Cir. 2007) (*en banc*). Altisource contends Plaintiffs have not sufficiently alleged these requirements by focusing on claims made in other dissimilar cases; not by focusing on the actual factual allegations in the FAC. Analysis of the FAC demonstrates Plaintiffs pled all requisite RICO elements.

### i.    The FAC Properly Alleges The "Conduct Of An Enterprise"

Altisource reasons that since "enterprise" allegations were found lacking in *Ellis*, 2015 WL 78190, at *4 and *Stitt*, 2015 WL 75237, at *5, they, therefore, are lacking here. Altisource MTD, p. 9. To the contrary, the allegations in the FAC are unlike those made in *Ellis* and *Stitt,* but very similar to those in *Bias* and *Weiner*.

The elements of a RICO enterprise include: (1) a "person;" (2) who is employed by or associated with an "enterprise"; and (3) the "enterprise" must be "distinct" from the "person." 18 U.S.C. § 1962(c). *Cedric Kushner Promotions, Ltd. v. King,* 533 U.S. 158, 162–63 (2001). *First,* the FAC properly identifies and describes with specificity the "persons" associated with the "enterprise: "'[P]erson'

---

[2] *Weiner* involves nearly identical allegations that Ocwen inflated fees for broker price opinions ("BPOs") and title search and report fees resulting from the same conspiratorial conduct among Ocwen, Altisource and Erbey that is alleged in Plaintiffs' action. *Weiner*, 2015 WL 4599427 at *2. The difference between Plaintiffs' claims and those raised in *Weiner* are that Plaintiffs allege Ocwen overcharged for more than just BPOs and title search and report fees, and Plaintiffs added the other co-conspirators, Altisource and Erbey, as additional defendants. Compare *id.* with FAC, ¶¶ 38-50.

includes any individual or entity capable of holding a legal or beneficial interest in property[.]" 18 U.S.C. § 1961(3).  Here, each of the Defendants are alleged "persons" (FAC, ¶ 118), including Mr. Erbey (*Id.*, ¶ 7), Ocwen Financial (*Id.*, ¶ 8), Ocwen Servicing and Altisource (*Id.*, ¶ 11).

*Second,* the FAC specifically identifies the composition of the "enterprise."  The term "'[E]nterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).  Here, Plaintiffs allege an "association in fact" enterprise consisting of the following individual and entities:  Mr. Erbey, Ocwen Financial, Ocwen Servicing, Altisource Servicing and the Altisource Parent[3] (FAC, ¶10).  Together these make up the "Ocwen Enterprise."  Each member of the Ocwen Enterprise is alleged to have distinct and crucial roles in the operation of the illegal self-dealing scheme.  Erbey controlled and orchestrated the scheme to defraud by being either the CEO or Chairman of the Board of each member and by being the largest shareholder of the parent, publically traded companies, Ocwen Financial and Altisource Parent. (*Id*, ¶11).  Ocwen Financial's main role is to secure mortgage servicing rights for its subsidiary, Ocwen Servicing. (*Id.*, ¶ 8).  Ocwen Financial's relationship to the Ocwen Enterprise is one of mutual benefit and dependence. (*Id*, ¶ 8a to 8m).  Ocwen Servicing's main role in the Ocwen Enterprise, is to contract with the Altisource Entities for Distressed Mortgage Services at artificially high prices and charge borrowers for the inflated fees and duplicative services. *Id*, ¶ 9.  The Altisource Parent's main role is to lease back to Ocwen Financial the mortgage servicing software Ocwen Servicing developed then sold to the Altisource Parent. *Id*, ¶ 10. Altisource Servicing's main role is to provide the inflated and/or duplicative Distressed Mortgage Services to Ocwen Servicing, charges for which are passed on to Plaintiffs.  *Id*, ¶ 11.   The same, or very similar enterprise, was found to be properly alleged in *Weiner*. 2015 WL 4599427, at *9-10.

*Third,* the FAC alleges the requirements for an "association in fact" enterprise.  To do so, a plaintiff must allege: (1) "a group of persons associated together for a common purpose of engaging in a course of conduct," (2) "an ongoing organization, either formal or informal," and (3) "the various associates function as a continuing unit." *Odom v. Microsoft Corp.,* 486 F.3d 541, 552–53 (9th Cir.

---

[3] The Altisource Parent is not a named Defendant but is a key part of the Ocwen Enterprise.  FAC, ¶ 10.

2007). *See also Monterey Bay Military Hous., LLC v. Pinnacle Monterey LLC*, 2015 WL 4498812, at *24 (N.D. Cal. July 10, 2015) (Labson Freeman, J.) *reconsideration granted on unrelated grounds Monterey Bay Military Hous., LLC v. Pinnacle Monterey LLC*, 2015 WL 4624678, at *1 (N.D. Cal. Aug. 3, 2015) and *Bias*, 942 F. Supp. 2d at 940.  Here the "common purpose" requirement is satisfied by Plaintiffs' allegation that the shared purpose of the Ocwen Enterprise was to increase its participants' financial revenue and profits by overcharging homeowners for Distressed Mortgage Services by using a scheme of affiliated companies to create the marked-up or duplicative fees.  FAC, ¶ 38 and ¶¶ 38-50.  *See Weiner*, 2015 WL 4599427, at *9-10 (finding virtually identical allegations to meet the common purpose requirement and citing with approval the decision in *Bias*, 942 F. Supp.2d. at 940 (finding common purpose to mark-up mortgage default service fees)).  Here, unlike in *Ellis*, 2015 WL 78190, at *4-5 and *Stitt*, 2015 WL 75237, at *5, the FAC alleges that each member of the Ocwen Enterprise knew about the scheme to defraud and each played a specific and integral role in furthering the "common purpose" of overcharging borrowers as explained above.

The FAC also demonstrates the Ocwen Enterprise is an ongoing, formal organization. The Ocwen Enterprise has existed since at least August 2009 and has operated the alleged scheme to defraud since then. FAC ¶ 38 and ¶¶ 38-50; 124-138. Likewise, the members of the Ocwen Enterprise are alleged to have functioned as a continuing unit. FAC, ¶¶ 38-50 and 124-138.

*Fourth,* the FAC alleges the requirement of "distinctiveness."  This essentially means that "liability 'depends on showing that the defendants conducted or participated in the conduct of the *enterprise's* affairs, not just their *own* affairs.'"  *Monterey Bay Military Hous.*, 2015 WL 4498812, at *25.  The Ocwen Enterprise is distinct from the named Defendants.  The Ocwen Enterprise consists of Mr. Erbey and two separate corporate organizations: the Ocwen Entities and the Altisource Entities. FAC, ¶¶7-11.  As the FAC specifically explains, the Altisource Entities were created at Erbey's direction as seemingly independent spinoffs from Ocwen Financial for the express purpose of furthering Defendants' scheme to charge borrowers marked-up and duplicative Distressed Mortgage Fees.  *Id*. ¶ 38. These allegations are virtually identical to those concerning Ocwen in *Weiner* (2015 WL 4599427, at *10), as well as in *Bias* (942 F. Supp.2d at 924, 940) where the court found that the creation of a third party independent company called Premiere Asset Services provided the element of distinctiveness.

1    ii.    **The FAC Alleges A "Pattern Of Racketeering Activity"**

2    Altisource falsely contends that the FAC does not sufficiently allege a "pattern of racketeering

3    activity" because the alleged predicate acts are based upon a breach of contract. Altisource MTD, pp.

4    10-12. To the contrary, no breach of contract is alleged in the FAC. FAC ¶86 ("Plaintiffs are not

5    asserting breach of contract claims . . . Plaintiffs allege that Defendants breach various statutory and

6    common law duties, and that these duties exist independently of Defendants' contractual obligations").

7    The FAC alleges that Altisource participated in an undisclosed self-dealing scheme in violation of the

8    wire and mail fraud statutes to charge inflated fees, and "[w]hether or not they are contractually

9    authorized to assess any or all of the fees at issue in this action, they cannot charge or collect fees that are

10   unlawful, unfair or the product of a self-dealing fraudulent conspiracy under federal or state laws." FAC,

11   ¶ 124 (RICO Count). *See also id.*, ¶¶ 29, 154, 164, 177, 187, 198 and 213. As explained above and

12   demonstrated by *Bias* and *Weiner,* these allegations give rise to a "pattern of racketeering activity," not

13   premised on any breach of contract.

14   Racketeering activity is defined to include "a number of generically specified criminal acts as

15   well as the commission of one of a number of listed predicate offenses." *Sosa v. DIRECTV, Inc.*, 437

16   F.3d 923, 939 (9th Cir. 2006) (citing 18 U.S.C. § 1961(1)). One of the predicate acts explicitly defined is

17   "any act which is indictable" under 18 U.S.C. §§ 1341 and 1343, which prohibit mail and wire fraud,

18   respectively. 18 U.S.C. § 1961(1). *Bias*, 942 F. Supp. 2d at 937. The elements of mail and wire fraud

19   include (1) the formation of a scheme or artifice to defraud; (2) use of the mails in furtherance of the

20   scheme; and (3) with the specific intent to deceive or defraud." *Schreiber Distrib. Co. v. Serv–Well*

21   *Furniture Co., Inc.,* 806 F.2d 1393, 1399–1400 (9th Cir.1986); *Miller v. Yokohama Tire Corp.,* 358 F.3d

22   616, 620 (9th Cir.2004) (quoting *Schreiber* ). The requirement of specific intent under these statutes is

23   satisfied by "the existence of a scheme which was 'reasonably calculated to deceive persons of ordinary

24   prudence and comprehension,' and this intention is shown by examining the scheme itself." *Schreiber*

25   *Distrib. Co.*, 806 F.2d at 1400.

26   Here, the elements of mail and wire fraud are alleged with particularity. *First,* the FAC alleges a

27   secret, pre-conceived, "undisclosed self-dealing scheme" to charge inflated or duplicative fees for

28   Distressed Mortgage Services. FAC ¶¶ 38-50. In this scheme, Ocwen Financial spun off one of its

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS BY ALTISOURCE SOLUTIONS, INC.

subsidiaries to create a "purported" independent company called the Altisource Parent.  *Id*., ¶¶ 40-41.

Altisource then was designated to act as an intermediary between service providers who provide

Distressed Mortgage Services and Ocwen Servicing by finding and negotiating the cost of Distressed

Mortgage Services then charging Ocwen Servicing for the provision of those services. *Id*., ¶¶ 40-45.   In

the process of passing the Distressed Mortgage Fees onto Ocwen, Altisource added "upcharges" or

duplicated fees that were paid by Ocwen Servicing to Altisource. *Id*., ¶¶ 46-47.   Ocwen Servicing, in

turn, then passed on these upcharges to borrowers via their monthly bills. *Id*., ¶ 46.   However,

unbeknownst to the borrowers, Altisource was not independent, but was "conflicted" by Ocwen

Financial's officers having controlling stakes and positions in the company.  *Id*., ¶¶ 47-48.   In sum,

Ocwen Enterprise enabled itself to be on both sides of the Distressed Mortgage Services in order to

garner and profit from up-charged and duplicative services.   Altisource was created to be a captive

intermediary company so that the Ocwen enterprise could reap distressed services up-charges at the

expense of mortgagors. *Id*., ¶¶ 47-48.   These allegations are more than plausible, they are the facts found

by federal and state regulators.  *Id*., ¶¶51-65.

Second, the FAC alleges use of the mail and wires in furtherance of the scheme. FAC, ¶¶ 128-29.

The invoices, statements, or proofs of claims provided by Ocwen Servicing to borrowers disguised the

fact that the Distressed Mortgage Fees were inflated or duplicative, and misrepresented that the fees were

for legitimate services, when in fact homeowners being charged for services that provided no benefit to

either the borrower or lender and were solely imposed to enrich the Ocwen Enterprise. *Id*., ¶ 131.

Third, the formation and commission of the scheme as alleged in the FAC clearly demonstrates

specific intent to defraud or deceive. FAC, ¶¶ 38-50.  Here, Altisource and the other Defendants targeted

mortgagors to reap the upcharges all the while concealing the true cost of the Distressed Mortgage

Services.  *Id*.  These allegations demonstrate an intent to defraud. *United States v. Cloud,* 872 F.2d 846,

852, n. 6 (9th Cir.1989) ("intent to defraud" means "to act willfully, and with the specific intent to

deceive or cheat for the purpose of either causing some financial loss to another, or bringing about some

financial gain to oneself").   These allegations meet the requirements for particularized pleading as

demonstrated by *Weiner* and *Bias. Weiner*, 2015 WL 4599427, at *10 ("These allegations square with

assertions deemed sufficient by the Court in *Bias*, where the plaintiff alleged that, "[t]hrough the mail

and wire, [Wells Fargo] provided mortgage invoices, payoff demands, or proofs of claims to borrowers, demanding that borrowers pay fraudulently concealed marked-up fees for default-related services") (quoting *Bias*, 942 F. Supp. 2d at 938-39).

Here, the concealment of the true cost of the Distressed Mortgage Services constitutes fraud. *See Bias*, 942 F. Supp. 2d at 939 (finding that "Defendants' alleged omissions are interwoven with misrepresentations"). Deceitful statements of half-truths or the concealment of material facts is actual fraud under the statute. *Lustiger v. United States*, 386 F.2d 132, 138 (9th Cir. 1967); *United States v. Beecroft*, 608 F.2d 753, 757 (9th Cir. 1979); *United States v. Benny*, 786 F.2d 1410, 1418 (9th Cir. 1986) (*citing United States v. Allen,* 554 F.2d 398, 410 (10th Cir.), cert. denied, 434 U.S. 836 (1977)) ("fraudulent representations, as the term is used in 18 U.S.C. § 1341, may be effected by deceitful statements of half-truths or the concealment of material facts and the devising of a scheme for obtaining money or property by such statements or concealments is within the prohibition of the statute.")

### iii.    The Mortgage Contract Does Not Preclude Racketeering Activity

Altisource relies on the Honorable Judge Otis Wright's recent decisions in *Vega*, as well as other inapposite decisions, for the proposition that it can have no liability under RICO if Plaintiffs might possibly assert a breach of contract. Altisource MTD, p. 10-12.

Altisource's position has no basis in the law. To the extent that a plaintiff satisfies the RICO legal requirements by basing "racketeering activity" on one of the listed offenses, it is immaterial that the plaintiff may also have a separate breach of contract action based upon different legal requirements. The applicable legal principle is that RICO's list of acts constituting predicate acts of racketeering is "exhaustive" and does not include "contract breaches." *Annulli v. Panikkar*, 200 F.3d 189, 200 (3d Cir. 1999). In other words, a RICO claim must arise from one of the specifically defined acts that constitute "racketeering activity" in 18 U.S.C. § 1961(1). As such, a RICO claim cannot be based upon a breach of contract since that is not one of the listed "predicate acts." *See e.g. Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996)(RICO claim could not be based upon copyright infringement that was not a defined predicate act). However, once a plaintiff properly bases a RICO claim on a specified racketeering activity, it is independent of any other potential contract claims. Accordingly, courts routinely recognize the independent nature of RICO claims, despite the potential for breach of contract claims. *See In re U.S.*

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS BY ALTISOURCE SOLUTIONS, INC.

*Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 118 (2d Cir. 2013); *Klay v. Humana, Inc.*, 382 F.3d 1241, 1260 (11th Cir. 2004) *abrogated on other grounds by Bridge v. Phx. Bond & Indem. Co.,* 553 U.S. 639 (2008); *Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio*, 900 F.2d 882, 885 (6th Cir. 1990) (finding no "blanket prohibition of RICO claims related to contract disputes."); *In re Nat'l W. Life Ins. Deferred Annuities Litig.*, 2012 WL 440820, at *4 (S.D. Cal. Feb. 10, 2012).

Not to be deterred, however, Altisource argues that Plaintiffs are asserting predicate acts based upon a breach of contract by pointing to allegations made in *Vega I,* rather than the allegations in the FAC.  Altisource MTD, pp. 10-12.  Yet, unlike this case, the plaintiffs in *Vega I* were actually basing their RICO claims on contractual language.   In *Vega I,* the plaintiff claimed that certain property inspection fees were "unnecessary" because Ocwen used a computerized program to automatically order and manage monthly property inspections without regard to any determination that the inspections were necessary. *Vega v. Ocwen Fin. Corp.*, 2014 WL 6775898, at *1 (C.D. Cal. Dec. 1, 2014), *order withdrawn see Vega I.*  The "unnecessary" standard advanced by Ms. Vega was purportedly based upon her mortgage contract that required such fees to be assessed when "necessary." Initially, Judge Wright over-ruled Ocwen's motion to dismiss Ms. Vega's UCL, RICO, and other claims, except for a claim for unjust enrichment.  *Id.* at *10.  However, two months later Judge Wright *sua sponte* vacated this ruling and undertook reconsideration.  Upon reconsidering, Judge Wright granted the motion to dismiss.   *Vega I*, 2015 WL 1383241, at *1. The apparent basis for reconsideration was because the plaintiff had mistakenly alleged the wrong mortgage contract. *Vega I* at *2-3.  According to the court, Ms. Vega's actual mortgage contract authorized property inspection fees that were "reasonable and appropriate," it did not use the term "necessary." *Id.*  Because Ms. Vega was relying on a contract term that did not exist, the court rejected the entire legal theory underpinning the complaint. *Id.*  at *3.  With respect to the RICO claim, citing and relying on the Third Circuit decision in *Annulli, supra,* Judge Wright set forth the basic legal proposition that state law crimes, torts and breaches of contract do not constitute predicate acts under RICO.  *Id.*  at *12.  Since the *Vega*  plaintiff was relying on the contract term "necessary" as the basis for the predicate acts required for the RICO claims, Judge Wright found that a failure to conduct property inspections only when "necessary" was tantamount to a breach of contract claim and was not

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS BY ALTISOURCE SOLUTIONS, INC.

1  cognizable under any of the predicate acts required by 18 U.S.C.A. § 1961(1).[4]

2          By contrast, as demonstrated above, Plaintiffs have not based their RICO claims or any other

3  claim on any terms of a mortgage contract; Plaintiffs' claims are purely based upon the "self-dealing"

4  **conduct** of the Ocwen Enterprise, including Altisource, which caused financial harm to Plaintiffs.  The

5  measure of civil damages under RICO is the harm caused by the predicate acts constituting the illegal

6  pattern. *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 497 (1985) and *Ticor Title Ins. Co. v. Florida*, 937

7  F.2d 447, 451 (9th Cir. 1991).  *See also In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 122 (2d

8  Cir. 2013) ("damages as compensation under RICO § 1964(c) for injury to property must . . . place [the

9  injured parties] in the same position they would have been in but for the illegal conduct.").  Thus,

10  Plaintiffs seek to recover the amount of "up-charges" or duplicative fees that were assessed by reason of

11  the Ocwen Enterprise's scheme to defraud.  Altisource's argument that Plaintiffs are seeking to recover

12  for contractual damages stemming from a purported assessment of "unnecessary" charges is completely

13  made up by erroneously shifting the focus to the claims in *Vega,* rather than the FAC.

14          In a variation on its theme that a possible breach of contract precludes RICO, Altisource also

15  argues that RICO does not apply to foreclosure or debt collection services performed in connection with

16  a mortgage loan default.  Altisource MTD, pp. 9-10.  Here again, the cases relied upon by Altisource

17  never held or even suggested that a potential contract claim bars a RICO claim.  Altisource is over-

18  reaching in suggesting that this Court in *Sepehry-Fard v. MB Fin. Servs.*, 2015 WL 903364, at *5 (N.D.

19  Cal. Mar. 2, 2015) held that RICO never applies to services incident to mortgage loan defaults.

20  Altisource MTD, pp. 9.  Instead, this Court applied the legal maxim stated above that "racketeering

21  activity" must be based upon one of the predicate acts identified in 18 U.S.C. § 1961(1).  *Sepehry-Fard*,

22  2015 WL 903364, at *5.  This Court held that the *pro-se* plaintiff had not sufficiently alleged any of the

23  predicate acts under § 1961(1).  *Id. See also Martinez v. Quality Loan Serv. Corp.*, 2009 WL 586725, at

24  *7 (C.D. Cal. Feb. 10, 2009)("attempts to collect unlawful debts" and "interference with commerce "

25  found not to be predicate acts within meaning of § 1961(1)); *Johnson v. Wachovia Bank FSB*, 2012 WL

26

27  ─────────────────
   [4] In granting the motion to dismiss, the *Vega I* court allowed plaintiffs the opportunity to file an amended
28  complaint to assert a breach of contract claim only.  *Vega I* at * 16.  Instead, the plaintiffs filed an
   amended complaint re-alleging claims based upon the UCL, RICO, the Rosenthal Act, unjust enrichment
   and fraud. *Vega v. Ocwen Fin. Corp.*, 2015 WL 3441930, at *2 (C.D. Cal. May 28, 2015) (*Vega II*).
   Judge Wright dismissed this amended complaint.

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS BY ALTISOURCE SOLUTIONS, INC.

1    4092426, at *1, n. 2 (E.D. Cal. Sept. 17, 2012)(failure to identify any predicate acts under § 1961(1)).

2        Accordingly, where, as here, predicate acts identified in § 1961(1) have been properly alleged,

3    "racketeering activity" is found to exist.[5]  Thus, Plaintiffs have pleaded all elements of a RICO claim and

4    the Court should deny Altisource's motion to dismiss this claim.

5    ### 2.    Altisource Has Not Shown Plaintiffs' RICO Conspiracy Claim Fails

6        Altisource seeks dismissal of Plaintiffs' RICO section 1962(d) conspiracy claim based solely on

7    Altisource's argument "Plaintiffs fail to allege the requisite substantive elements of RICO."  Altisource

8    MTD, p. 14.  Plaintiffs properly allege all elements of RICO as stated above.  Accordingly, Altisource's

9    sole argument against Plaintiffs' RICO conspiracy claim fails.  The Court should sustain this claim.

10   ### B.    Plaintiffs State Valid FDCPA And RFDCPA Claims Against Altisource

11       Altisource erroneously contends it cannot be liable for FDCPA and RFDCPA[6] claims in Counts 2

12   and 3 because the FAC does not allege that it had any *direct* contact with Plaintiffs.  Altisource MTD, p.

13   15.  As this Court has observed, under the FDCPA and RFDCPA, ". . . a debt collector is one who

14   directly or *indirectly* engages in collection activity." *Gold v. Midland Credit Mgmt., Inc.*, 2015 WL

15   1037700, at *4 (N.D. Cal. Mar. 10, 2015).  An indirect debt collector exists where interdependence

16   between it and the direct debt collector renders them a "single economic enterprise." *Gold*, 2015 WL

17   1037700, at *4; *Jenkins v. Union Corp.*, 999 F. Supp. 1120, 1142-43 (N.D. Ill. 1998); *Cox v. Sherman*

18   *Capital LLC*, 2014 WL 1328147, at *9 (S.D. Ind. Mar. 31, 2014); *Harrison v. NBD, Inc.,* 968 F. Supp.

19   837, 845 (E.D.N.Y.1997); *United States v. ACB Sales & Serv., Inc.,* 590 F.Supp. 561, 574 (D.Ariz.1984).

20       Here, Altisource is subject to liability as an indirect debt collector.  While separate entities by

21   their corporate forms and filings, Altisource's interdependency with Ocwen is manifest in the self-

22   dealing RICO enterprise conspiracy described above and in the FAC, rendering them a "single economic

23   enterprise" for FDCPA and RFDCPA purposes.  As detailed above, the FAC alleges that Altisource was

24

25   [5] In a footnote, Altisource contends the FAC has not demonstrated a "pattern" of racketeering activity
     because of insufficient wire and mail fraud allegations. Altisource MTD, p.10, n.7. Plaintiffs sufficiently
26   alleged wire and mail fraud as explained above.  The FAC also alleges a "pattern" because numerous,
     repeated and related acts of mail and fraud affecting numerous victims extending over a substantial point
27   of time. *See H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 239 (1989)(explaining "pattern").

28   [6] The federal Fair Debt Collection Practices Act ("FDCPA")(15 U.S.C. §§ 1692, *et seq.*) and California's
     Rosenthal Fair Debt Collection Practices Act ("RFDCPA")(Cal. Civ. Code §§ 1788, *et seq.*).

an indispensable joint participant with the Ocwen Enterprise in a deceptive scheme to defraud Plaintiffs of their money by collecting inflated and duplicative Distressed Mortgage Fees.  Moreover, Altisource is controlled by Ocwen and Mr. Erbey by virtue of stock ownership and common officers. FAC, ¶ 47-49; 123. Altisource's continued existence is dependent on Ocwen and likewise Ocwen is dependent on Altisource. *Id*., ¶ 8. Ocwen and Altisource share administrative and corporate services as well as access to borrower data.  *Id*., ¶ 8b.  Altisource acts in the interest of Ocwen by providing the inflated or duplicative Distressed Mortgage Services that are then assessed to borrowers so that Ocwen may generate higher revenue and profits.  *Id*., ¶ 8.  Numerous other examples Ocwen's and Altisource's interdependence are pled at ¶¶ 41-65 of the FAC.

Accordingly, each of Altisource's arguments contesting FDCPA and RFDCPA liability are unavailing. *First,* Altisource is a "debt collector" subject to the FDCPA and RFDCPA as demonstrated above. *Second,* the FAC alleges that Altisource, in conjunction with Ocwen, was seeking to collect fees arising from purported Distressed Mortgage Services.  Plaintiffs' claims do not arise from foreclosure on a deed of trust.  *Cf. Hulse v. Ocwen Fed. Bank, FSB*, 195 F. Supp. 2d 1188, 1204 (D. Or. 2002) ("Foreclosing on a trust deed is distinct from the collection of the obligation to pay money. The FDCPA is intended to curtail objectionable acts occurring in the process of collecting funds from a debtor."). *Third,* Altisource's argument that Plaintiffs must allege a direct communication from Altisource to Plaintiffs for purposes of FDCPA or RFDCPA liability is in error since it is counter to the recognition of "indirect" debt collector liability under each of the acts.  *Fourth,* Plaintiffs are not, and will not be relying on aider and abettor or conspiracy theories of liability for purposes of their FDCPA or RFDCPA claims.

## C.   Altisource Offers No Valid Basis to Dismiss Plaintiffs' Fraud Claim

Altisource offers three reasons to dismiss Plaintiffs' fraud claim: (1) that Plaintiffs fail to plead their fraud claim with sufficient detail; (2) that Altisource owed Plaintiffs no duty to disclose; and (3) the economic loss rule bars Plaintiffs' claims.  As discussed below, Plaintiffs properly stated a fraud claim and Altisource's arguments are simply wrong.  The Court should sustain Plaintiffs' fraud claim.

### 1.   Plaintiffs Pleaded All Elements of Fraud with the Requisite Specificity

Altisource first argues Plaintiffs fail to adequately detail the Ocwen Enterprise's fraudulent misrepresentations and omissions (Altisource MTD, pp. 16-17) and fail to meet the Fed.R.Civ.P. 9(b)

1   requirement their claims be pleaded with particularity (Altisource MTD, pp. 20-21).  This is wrong.

2   Under California law, "[t]he elements of fraud, which gives rise to the tort action for deceit, are (a)

3   misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or

4   'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting

5   damage." *Small v. Fritz Companies, Inc.*, 65 P.3d 1255, 1258 (Cal. 2003) (quoting *Lazar v. Superior

6   Court*, 909 P.2d 981, 984 (Cal. 1996)).  The FAC alleged facts with the requisite degree of particularity

7   which, if proved, establish these elements.

8       Plaintiffs allege: (a) Ocwen Servicing failed to disclose the existence of the Ocwen Enterprise and

9   the fact the Enterprise charged for duplicative Distressed Mortgage Services and inflated Distressed

10   Mortgage Fees, while falsely representing on Plaintiffs' billing statements that these charges were lawful

11   (FAC, ¶¶ 205-06); (b) Ocwen Servicing knew the material facts of the Ocwen Enterprise's existence and

12   its charges for duplicative services and inflated fees were not disclosed, and knew that the

13   misrepresentations on the billing statements that such charges were lawful were in fact false (FAC, ¶

14   209); (c) Ocwen Servicing intended that Plaintiffs rely on these material omissions and

15   misrepresentations in paying for inflated Distressed Mortgage Fees and Duplicative Distressed Mortgage

16   Services (FAC, ¶ 205-210); (d) Plaintiffs justifiably relied on Ocwen Servicing's omissions and

17   representations (FAC, ¶¶ 206-07); and (e) Plaintiffs were damaged by paying for inflated Distressed

18   Mortgage Fees and Duplicative Distressed Mortgage Services (FAC, ¶ 214); and (f) Altisource and other

19   members of the Ocwen Enterprise conspired with Ocwen Servicing and aided and abetted Ocwen

20   Servicing's conduct (FAC, ¶ 212).

21       These allegations state a fraud claim and easily clear the Rule 9(b) hurdle because they describe

22   the "who, what, when, where, and how" of the Ocwen Enterprise's fraud (*See Weiner*, 2015 WL

23   4599427, at *4 (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)) as follows:

24       **Who:** The Ocwen Enterprise's participants: Ocwen Servicing, Ocwen Financial, the Altisource

25   Parent, Altisource Servicing, their executives and Erbey.  FAC ¶¶ 7-12.

26       **What:** The Ocwen Enterprise's self-dealing conspiracy, the resultant inflated Distressed

27   Mortgage Fees and duplicative Distressed Mortgage Services, and Defendants' concealment thereof from

28   borrowers.  FAC, ¶¶ 2-4, 47, 65, 77, 88-95.

**When:** Beginning on August 10, 2009, when Ocwen Financial, under the direction of Erbey and other Ocwen officers, spun off Ocwen Solutions to create a new, "independent" company called Altisource.  FAC, ¶ 39.  More specifically, on August 26, 2013, September 24, 2013, June 27, 2014, November 28, 2014 and December 4, 2014 and other dates when Ocwen Servicing charged Plaintiffs fees for Distressed Mortgage Services procured through Altisource Servicing or through the Altisource Parent's software.  *Id.* ¶¶ 81-83.

**Where:** At 3649 Westview Drive, San Jose, California, where Defendants sent Plaintiffs statements reflecting the fraudulent charges at issue and falsely portraying them as lawful.  FAC, Exhibits 10-13.

These allegations satisfy Rule 9(b) because they are "specific enough to give defendants notice of the particular misconduct. . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks and citation omitted).  They "set forth what is false or misleading about [Ocwen Servicing's] statement[s], and why [they are] false." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994).

Importantly, Chief Judge England of the Eastern District of California recently held virtually identical allegations[7] supported a fraud claim with the requisite particularity in a closely similar action concerning the Ocwen Enterprise.  *Weiner*, 2015 WL 4599427, at *12 ("Given the above-summarized description of Plaintiff's accusations of fraudulent behavior against Ocwen, which describe the structure of Ocwen's scheme to charge marked-up default services through use of a spin-off company with shared management and ownership, as well as the specifics of how those marked up fees were charged against Plaintiff..., the Court squarely rejects Ocwen's claim that Plaintiff's complaint utterly fails to state any specific evidence to supports its claims of misrepresentation and/or omission").  Thus,  contrary  to Altisource's arguments, the FAC properly alleges fraud, and did so with the requisite particularity.

Citing *Vega*, Altisource also suggests misrepresentations made in loan billing statements cannot be the basis for fraud based on Judge Wright's decisions in *Vega*.  Altisource MTD, p. 7 (citing *Vega*).

---

[7] *See Weiner*, 2015 WL 4599427, **10-11 (summarizing allegations).

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS BY ALTISOURCE SOLUTIONS, INC.

As explained above, *Vega* is inapposite because Vega's claims were based on her contract, unlike Plaintiffs' claim. *Supra*, pp. 11-12. In fact, Plaintiffs expressly stated in the FAC that whether the conduct at issue violated the contract is irrelevant. FAC, ¶ 213. It is the separate, non-contractual fraudulent conduct that forms the basis for Plaintiffs' claims. *Id*., ¶¶ 205-10.

In *Weiner*, the Court upheld parallel fraud claims based upon Ocwen's concealed scheme of up-charging for BPOs through the use of Altisource that were not based on the contract, but which relied on misrepresentations in billing statements like those here. *Weiner*, 2015 WL 4599427, at *6. Courts in other similar cases routinely uphold fraud claims on a motion to dismiss. *Ellis v. J.P. Morgan Chase & Co.,* 950 F. Supp. 2d 1062, 1091 (N.D. Cal. 2013) (sustaining fraud count for omissions of marked-up servicing fees by a mortgage servicer); *Bias*, 942 F. Supp. 2d at 944 (N.D. Cal. 2013) (same); *Young v. Wells Fargo*, 671 F. Supp. 2d 1006, 1034-35 (S.D. Iowa 2009) ("it is well settled that allegations that a defendant engaged in deceptive business practices can support a claim for breach of contract or fraud, even when the defendant's actions are also contrary to the terms of a valid contract") (citing *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526–27 (1983) (additional citations omitted)). This belies Altisource's argument that *Vega* precludes Plaintiffs' fraud claims based on misleading billing statements.

### 2. Altisource's "No Duty" Defense Fails Because Altisource Conspired with the Rest of the Ocwen Enterprise and Aided and Abetted the Enterprise's Fraud

Altisource argues Plaintiffs' fraud count against it must fail because it owed no duty to the Plaintiffs to disclose anything. Altisource MTD at 17-18 ("absent a duty to disclose, Altisource could not have fraudulently concealed information from Plaintiffs"). Altisource's argument that it can evade liability because, despite participating in and profiting from the Enterprise, it was not the Enterprise's "front man," is unavailing. Altisource ignores Plaintiffs' allegations that Altisource acted as a co-conspirator with and aided and abetted the Ocwen Enterprise, including Ocwen Servicing, in the fraudulent misrepresentations and omissions made by Ocwen. FAC, ¶ 212. Altisource did so by up-charging for distressed mortgage services and performing duplicative services for Ocwen at its direction after Altisource was spun off of Ocwen. FAC, ¶¶ 39-48, 66-73, 75-79. It is axiomatic that, "[a]ll conspirators are jointly liable for the acts of their co-conspirators." *Beltz Travel Serv., Inc. v. Int'l Air*

*Transp. Ass'n*, 620 F.2d 1360, 1367 (9th Cir. 1980); *Rasmussen v. Dublin Rarities,* No. C 14-1534 PJH, 2015 WL 1133189, at *9 (N.D. Cal. Feb. 27, 2015) (same for a fraud count).

Even if Altisource did not conspire with the Ocwen Enterprise, which it did, Altisource aided and abetted Ocwen Servicing in its fraudulent conduct.  FAC, ¶ 212.  Under California law, "liability may ... be imposed on one who aids and abets the commission of an intentional tort if the person ... knows the other's conduct constitutes a breach of a duty and gives substantial assistance or encouragement to the other to so act."  *In re First Alliance Mortgage Co*., 471 F.3d 977, 993 (9th Cir. 2006)(citing *Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal.App. 4th 1138, 1144 (2005)); *AngioScore, Inc. v. TriReme Med., Inc*., 2015 WL 4040388, at *20 (N.D. Cal. July 1, 2015)).

Here, Plaintiffs allege Altisource, spun-off by Ocwen Financial to provide (and provided) substantial assistance to Ocwen Servicing's fraud by charging borrowers for duplicative Distressed Mortgage Services and inflated Distressed Mortgage Fees.  FAC, ¶¶ 41-46.  Altisource and its parent's shareholders – including its largest individual shareholder Erbey – profited by the additional fees collected.  FAC, ¶ 46.  These allegations are sufficient to hold Altisource liable as an aider and abettor of Ocwen's fraud.  *In re First Alliance Mortgage Co*., 471 F.3d 977, 995 (9th Cir. 2006) (affirming jury verdict against a defendant for knowingly assisting a company's fraudulent business practices).

### 3.   California's Economic Loss Rule Does Not Bar Plaintiffs' Claims

Again asserting a straw-man argument that Plaintiffs' claims are premised upon the mortgage agreement, Altisource claims the economic loss rule bars Plaintiffs' fraud claim.  Altisource MTD at 19. To the contrary, Plaintiffs' claims are ***not*** premised on the mortgage agreement or any breach thereof as explained throughout this brief, and the economic loss doctrine is inapplicable to breaches of non-contractual duties.  *See Robinson Helicopter Co. v. Dana Corp*., 102 P.3d 268, 273 (2004); *United Guar. Mortgage Indem. Co. v. Countrywide Fin. Corp*., 660 F. Supp. 2d 1163, 1181 (C.D. Cal. 2009).  *See also Weiner*, 2015 WL 4599427, at *7 ("the economic-loss doctrine prevents those bound by contract from suing in tort, unless they allege harm distinct from that that stemming from the breached contract").

Where, as here, Plaintiffs allege the defendant breached non-contractual duties (*see* FAC, ¶¶ 205-12), the economic loss doctrine does not prevent common law claims.  *See Bias*, 942 F.Supp.2d at 938 n.18 (rejecting a mortgage servicer's argument that fraud allegations for allegedly unlawful marked up

fees amounted to a breach of contract action) *citing U.S. v. Ali*, 620 F.3d 1062, 1071 (9th Cir. 2010)). Based on the reasoning in *Bias*, Chief Judge England specifically rejected this defense in *Weiner*. 2015 WL 4599427, at *7 ("while Ocwen was clearly entitled under the terms of the Deed of Trust to be reimbursed for fees it paid to protect its security interest in defaulted property, according to Plaintiff's Complaint it went well beyond any contractual right in that regard by failing to disclose that the fees for which it sought reimbursement had been significantly marked-up"); *see also Young*, 671 F. Supp. 2d at 1034-35 (S.D. Iowa 2009) ("it is well settled that allegations that a defendant engaged in deceptive business practices can support a claim for breach of contract or fraud, even when the defendant's actions are also contrary to the terms of a valid contract.")(*citing Associated Gen. Contractors of Cal., Inc.*, 459 U.S. at 526–27 (1983) (additional citations omitted)). Indeed, activities permitted by a contract can give rise to a tort-based claim under California law. *See, e.g., Wahl v. Am. Sec. Ins. Co.*, 2009 WL 1766620, at *7 (N.D. Cal. June 18, 2009) (upholding unfair claim under California's UCL despite the conduct at issue not breaching the terms of a mortgage agreement).

The cases Altisource cites in support of its economic loss rule argument stand for unremarkable proposition that a party cannot recover in tort for a contractual breach. Altisource MTD, p. 19-20 (citing cases). Altisource primarily relies on *Vega*, which is inapposite. *Supra*, pp. 11-12. This Court should follow the on-point cases rejecting Altisource's misreading of the economic loss rule.

### D.   Plaintiffs State UCL "Unlawful," "Unfair" and "Fraudulent" Claims

Altisource contends Plaintiffs' allegations fail to state a claim under the UCL. Altisource MTD, pp. 21-25. Altisource is wrong.

The UCL prohibits three types of conduct: "unlawful," "unfair" and "fraudulent" conduct. *Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033 (N.D. Cal. 2014) (citing Cal. Bus. & Prof. Code § 17200; quoting *In re First Alliance Mortg.*, 471 F.3d at 995 (explaining "[t]he UCL's coverage is 'sweeping,' and its standard for wrongful business conduct 'intentionally broad'"). As explained below, Plaintiffs' allegations, taken as true, state claims under each prong of the UCL.

### 1.   Plaintiffs State a Proper UCL "Unlawful" Claim

Plaintiffs allege a UCL "unlawful" claim for two independent reasons: (1) because Plaintiffs have pleaded colorable RICO, FDCPA, RFDCPA and fraud claims and the UCL makes such claims

1  independently actionable as unlawful business practices; and (2) because the Ocwen Enterprise's

2  ongoing conduct violates the Dodd-Frank Act's (12 U.S.C. §§ 5301, *et seq.*; "DFA") prohibition on

3  "unfair" or "abusive" acts (*see* FAC ¶¶ 35 and 175).

### i.       Plaintiffs Allege a UCL "Unlawful" Claim

5          Plaintiffs state a colorable UCL "unlawful" claim by alleging facts that, taken as true, establish

6  the conduct of the Ocwen Enterprise violated RICO, the FDCPA and the RFDCPA and liability for

7  common law fraud.  *See Supra*, pp. 4-13 (Plaintiffs state a RICO claim), pp. 13-14 (Plaintiffs state

8  FDCPA and RFDCPA claims) and pp. 14-19 (Plaintiffs state a fraud claim).  *See Martinez v. Wells*

9  *Fargo Home Mortgage, Inc.*, 598 F.3d 549, 557 (9th Cir. 2010) (citing *Cel-Tech Commc'ns, Inc. v. Los*

10 *Angeles Cellular Tel. Co.*, 973 P.2d 527, 539-40 (Cal. 1999)) (virtually any law may be a predicate for a

11 UCL "unlawful" claim). *See, e.g., Rezner v. HVB Am., Inc.,* 2015 WL 2344994, at *3 (N.D. Cal. Apr. 6,

12 2015)(RICO is a UCL "unlawful" predicate); *Robinson v. Managed Accounts Receivables Corp.*, 654 F.

13 Supp. 2d 1051, 1064 (C.D. Cal. 2009) (quoting *Del Campo v. Am. Corrective Counseling Servs., Inc.,*

14 254 F.R.D. 585, 595 n. 8 (N.D.Cal.2008) (FDCPA is a UCL "unlawful" predicate); *Newton v. Am. Debt*

15 *Servs., Inc.*, 2014 WL 7183930, at *6 (N.D. Cal. Dec. 16, 2014) (citing *Zhang v. Superior Court*, 304

16 P.3d 163, 177 (Cal. 2013) (common law claims may be UCL "unlawful" predicates). Thus, Plaintiffs

17 have pleaded a colorable UCL "unlawful" claim against the Ocwen Enterprise (including Altisource) by

18 alleging colorable RICO, FDCPA, RFDCPA and common law fraud claims.

### ii.       Plaintiffs Pleaded an Independent UCL "Unlawful" Claim Based on the Ocwen Enterprise's Ongoing Violations of the Dodd-Frank Act ("DFA")

21         Plaintiffs properly allege a UCL "unlawful" claim predicated on the Ocwen Enterprise's ongoing

22 violation of the DFA's prohibition on unfair, deceptive or abusive practices.  FAC, ¶¶ 172-75.  Altisource

23 makes three contrary arguments, all of which are misplaced. Altisource MTD, pp. 21-22.

24         First, Altisource argues Plaintiffs' UCL "unlawful" claim based on its violations of the DFA

25 should be dismissed because the DFA is not retroactive.   Altisource's argument misses the point.

26 Plaintiffs alleged Defendants' violations of the DFA are ongoing.  Indeed, Defendants charged Plaintiffs

27 for Distressed Mortgage Services in 2013 and 2014, well after DFA's effective date of July 21, 2011.

28 *See* FAC, ¶¶ 81-84.  Second, Altisource's argument (Altisource MTD, p. 22) that the DFA lacks a private

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS BY ALTISOURCE SOLUTIONS, INC.

1    right of action and its prohibition on unfair, deceptive and abusive acts appears only in a DFA

2    enforcement provision, is misplaced.  By omitting a private right of action, the DFA does not actually bar

3    private enforcement of this provision, so there is no bar on using this DFA violation as a predicate act for

4    a UCL "unlawful" claim.  *See Newton*, 2014 WL 7183930, at *7 n.9 (quoting *Cel–Tech*, 20 Cal.4th at

5    184) ( "It is important to note that in order to defeat borrowing under the UCL, the putative predicate law

6    must 'actually bar' enforcement, 'not merely fail to allow it'").  Third, Altisource argues Plaintiffs cannot

7    predicate a UCL "unlawful" claim based on the Ocwen Enterprise's ongoing violations of the DFA

8    because, it contends, *Vega* establishes the Enterprise's actions are permitted under Plaintiffs' deed of

9    trust.  Plaintiffs already debunked Defendants' *Vega* argument.  *See supra*, pp.11-12.  *See also Wahl v.*

10   *Am. Sec. Ins. Co*., 2009 WL 1766620, at *6-7 (N.D. Cal. June 18, 2009) (upholding a UCL unfair claim

11   despite the conduct at issue not breaching the terms of a mortgage agreement).

12                    **2.    Plaintiffs State a UCL "Unfair" Claim Under All Three Tests**

13           There are three alternative tests for whether conduct is "unfair" in violation of the UCL.  There is

14   some confusion among courts as to which test applies.[8]  Plaintiffs allege facts which, taken as true, show

15   the Ocwen Enterprise's conduct is "unfair" under all three tests.

16           As a threshold matter, the Altisource's conduct is still unfair even if it does not violate Plaintiffs'

17   and Class Members' contracts with Ocwen Servicing because even conduct that is contractually

18   permitted or otherwise lawful can still be "unfair" in violation of the UCL.  *See Jordan v. Paul Fin.,*

19   *LLC*, 745 F. Supp. 2d 1084, 1099 (N.D. Cal. 2010) (citing *Cel–Tech*, 973 P.2d at 540) ("A business

20   practice which is neither unlawful nor fraudulent may nevertheless be unfair under the UCL"); *Wahl v.*

21   *Am. Sec. Ins. Co.*, 2009 WL 1766620, at *6-7 (N.D. Cal. 2009) (deciding, on summary judgment, that

22   conduct which could not have violated contractual agreements could be "unfair" under the UCL), 2010

23   WL 1881126, at *7 (N.D. Cal. May 10, 2010) (explaining, on motion for judgment on the pleadings, that

24   "practice which, although within the bounds of the Deed of Trust, was singularly disadvantageous to

25   Wahl and unsupported by any apparent reason other than the fact that [defendant] stood to benefit

26

27   ─────────────
     [8] *Ellsworth v. U.S. Bank, N.A.*, 908 F. Supp. 2d 1063, 1088 (N.D. Cal. 2012) (citing *Phipps v. Wells
     Fargo*, 2011 WL 302803, at *16 (E.D.Cal. Jan 27, 2011).

28

financially" could be "unfair" under the UCL).

####    i.    Altisource's Conduct is "Unfair" Under the Balancing Test

The first test for "unfair" conduct under the UCL is "whether the alleged business practice 'is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim.'"   *Ellsworth*, 908 F. Supp. 2d at 1088-89 (citations omitted).   Plaintiffs' FAC pled facts which, taken as true, show Altisource's participation in the Ocwen Enterprise's conduct is "unfair" in violation of the UCL under this standard.   Altisource participates directly in Defendants' scheme to acquire money they did not earn at borrowers' expense by charging borrowers inflated and duplicative fees through an enterprise of undisclosed self-dealing.   FAC, ¶¶ 2-3, 23-33, 38, 41, and 46-47.   This conduct is "unfair" under this test because it is immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers, and any utility of the Enterprise's undisclosed self-dealing does not outweigh the harm the scheme inflicts on struggling borrowers.   FAC, ¶¶ 184-187 and 189.   Altisource's argument otherwise is wrong because it relies on two inapposite cases.

First, *Walker v. Countrywide Home Loans, Inc.*, 98 Cal. App. 4th 1158 (Cal. Ct. App. 2002) addressed different claims than Plaintiffs' and involved a summary judgment motion.   Unlike Plaintiffs, who challenge Defendants' inflation and duplication of Distressed Mortgage Fees through an Enterprise of undisclosed self-dealing, the Walkers challenged Countrywide's right to charge them default-related fees at all.   *Id*. at 1164.   There, "Countrywide charged these costs, ***without markup***, to the delinquent borrower.   *Id*., at 1167 (emphasis added).   The Walkers challenged Countrywide's default-related fees as a "'disguised' late fee" and relied on expert testimony that the fees should have been borne by the loan servicer or mortgager in the first instance.   *Id*. at 1167-68.   The California Court of Appeals held that "Countrywide's practice of charging delinquent borrowers with ***the actual cost*** of performing [default-related services] does not violate the unfair competition law."   *Id*. at 1175 (emphasis added).   The Walkers alleged no self-dealing scheme, inflated fees or duplicative services, nor did the *Walker* court bless such conduct.   Numerous federal courts have already rejected Altisource's misreading of *Walker*. *See Weiner*, 2015 WL 4599427, at *12 ("Walker's recognition that a loan servicer can charge a delinquent borrower a property inspection fee for this purpose, however, does not mean that Defendants

1  can charge marked-up default-related service fees, an issue not addressed in Walker"); *Bias*, 942 F. Supp.

2  2d at 933 n.12 (distinguishing *Walker* because it "did not involve the level of fraud and concealment

3  alleged [by plaintiff]"); *Cirino v. Bank of Am., N.A.*, 2014 WL 9894432 at *8 (C.D. Cal. Oct. 1, 2014)

4  (distinguishing *Walker*); *Young v. Wells Fargo & Co.*, 671 F. Supp. 2d 1006, 1024–25 (S.D. Iowa Oct.

5  27, 2009) (denying a motion to dismiss the plaintiff's California UCL claim by distinguishing *Walker* as

6  only addressing "the imposition of property inspection fees in general").

7  　　　　Second, Altisource cites to *Vega's* holding that the plaintiff's claims in that case were simply "the

8  failure to admit a breach of contract."  Altisource MTD, p. 23 (citing *Vega I*, 2015 WL 1383241, at *8).

9  Plaintiffs already explained *Vega's* holding with respect to "disguised" contract claims does not apply

10  here because the Ocwen Enterprise's undisclosed self-dealing is actionable even if the Distressed

11  Mortgage Services at issue are contractually permitted.  *See supra*, pp. 11-12, 18.

12  　　　　　　　**ii.   Altisource's Conduct is "Unfair" Under the FTC Test**

13  　　　　The second test for "unfair" conduct under the UCL arises from the Federal Trade Commission's

14  ("FTC") definition of "unfair" (15 U.S.C. § 45, subd. (n)), and requires that "(1) the consumer injury

15  must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers

16  or competition; and (3) it must be an injury that consumers themselves could not reasonably have

17  avoided."  *Ellsworth*, 908 F. Supp. 2d at 1088-89 (citations omitted)).

18  　　　　Altisource cites *Davis v. Ford Motor Credit Co.*, 179 Cal. App. 4th 581, 597 (Cal. Ct. App. 2009)

19  for the proposition borrowers' injury resulting from the Ocwen Enterprise's undisclosed self-dealing was

20  avoidable.  Altisource MTD, p. 23.  But *Davis* is inapposite because the injury the court found Davis

21  could have reasonably avoided was a different injury than the one Plaintiffs complain of here.  Davis'

22  alleged injury was "the imposition of successive late fees for successive months" which "reasonably

23  could have been avoided had Davis made his monthly payments timely[.]"  *Id.* at 598.  The injury of

24  which Plaintiffs complain, caused to Class Members by Defendants' undisclosed self-dealing, is not the

25  fees themselves as in *Davis* but the up-charged fees and duplicative services the Ocwen Enterprise

26  foisted on borrowers without their knowledge.  *Supra*, p. 4.  Plaintiffs could not have reasonably avoided

27  charges that were unreasonable by virtue of an enterprise whose existence was concealed from them.

28  *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1168-69 (9th Cir. 2012) (citing *Orkin Exterminating*

*Co., Inc. v. FTC*, 849 F.2d 1354, 1365–66 (11th Cir. 1988) ("An injury is reasonably avoidable if consumers "**have reason to anticipate the impending harm** and the means to avoid it") (emphasis added); *Jordan v. Paul Fin., LLC*, 745 F. Supp. 2d 1084, 1100 (N.D. Cal. 2010) ("[A]t issue is whether plaintiffs' allegations establish that they could have **reasonably avoided** the injury, not whether it was merely possible to avoid the injury") (emphasis in original).  Indeed, a court in this District specifically rejected a similar argument to Altisource's, distinguishing *Davis* in a case where the allegedly unlawfully kickbacks were not disclosed.  *Ellsworth*, 908 F. Supp. 2d at 1090 (N.D. Cal. 2012).  Other federal courts have similarly rejected Altisource's misreading of *Davis*.  *See Bias*, 942 F.Supp.2d at 933 n.12 (distinguishing *Davis* because it "did not involve the level of fraud and concealment alleged here"); *Clark v. Prudential Ins. Co. of Am.*, 736 F. Supp. 2d 902, 932 (D.N.J. 2010) (explaining *Davis* is inapposite where the plaintiff challenges the defendant's nondisclosure about the basis for its fees).  Altisource's misreading of *Davis* thus fails to show Plaintiffs' UCL "unfair" claim does not meet this test.

### iii.    Altisource's Conduct is "Unfair" Under The "Tethering" Test

The third test for whether a practice is "unfair" in violation of the UCL requires "'that the public policy which is a predicate to a consumer unfair competition action under the 'unfair' prong of the UCL must be tethered to specific constitutional, statutory, or regulatory provisions.'"  *Ellsworth*, 908 F. Supp. 2d at 1088 (citations omitted).  Plaintiffs allege the Ocwen Enterprise's (including Altisource's) conduct is "unfair" under this test because it violates the DFA's specific statutory prohibition on unfair or abusive conduct.  FAC, ¶¶ 35 and 184.  *See, e.g., In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197, 1227 (N.D. Cal. 2014) (quoting *Cel–Tech*, 20 Cal.4th at 187, 83).  (finding plaintiffs pled a UCL "unfair" claim under the "tethering" test based on Adobe's violation of California's general public policy of protecting consumer data); *Ellsworth v. U.S. Bank, N.A.*, 908 F. Supp. 2d 1063, 1089 (N.D. Cal. 2012) (finding "tethering" test satisfied by allegations the defendants' practices were "inconsistent" with federal statutory policies).

The Ocwen Enterprise's conduct is still "unfair" under this test even when it occurred prior to enactment of the DFA.  The recent case of *Gomez v. Nationstar Mortgage, LLC*, 2015 WL 966224 (E.D. Cal. 2015) is instructive.  There, the plaintiffs contended Nationstar's conduct violated the DFA's

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS BY ALTISOURCE SOLUTIONS, INC.

1    prohibition on unreasonable force placed insurance, for which a private right of action exists as part of

2    the Real Estate Settlement Procedures Act ("RESPA").  *Id*. at *3.  The plaintiffs also argued Nationstar's

3    conduct was "unfair" under the UCL under the "tethering" test because it violated the DFA's prohibition

4    on unreasonable force placed insurance.  *Id*. at *9.  The court dismissed the RESPA claim based on the

5    DFA prohibition because the conduct occurred prior to the DFA's enactment.  *Id*. at *3.  However, the

6    Court sustained the UCL "unfair" claim tethered to that same DFA prohibition.  The court explained

7           Plaintiffs are not barred from tethering their unfair UCL claim to the non-retroactive
            provisions of RESPA. Instead, Plaintiffs need merely to show that the effects of
8           Nationstar's conduct is "comparable to or the same as a violation" of an established law,"
            not that Plaintiffs meet all of the procedural requirements of that law.
9

10   *Id*. (quoting *Cel-Tech,* 20 Cal.4th at 187).  Under the same logic, Plaintiffs' claim is appropriately

11   tethered to the DFA's prohibition on unfair, deceptive or abusive acts.

12                          **3.      Plaintiffs Allege a Valid UCL "Fraudulent" Claim**

13          Altisource contends Plaintiffs' UCL "fraudulent" claim should be dismissed, contending

14   Plaintiffs failed to plead the fraud with particularity.  Altisource MTD, p. 24 (citing Fed.R.Civ.P. 9(b)).

15   But Altisource does not contend Plaintiffs failed to plead the actual elements of their claim with

16   particularity.  *Id*.  Rather, Altisource's Rule 9(b) argument recycles two arguments Plaintiffs already

17   debunked, namely, that Altisource owed Plaintiffs no duty and that Plaintiffs' arguments amount to

18   merely a breach of contract.  *See supra*, pp. 17-18 (explaining Altisource aided and abetted the Ocwen

19   Enterprise's fraud) and pp. 10-12 (debunking Altisource's contract argument).   Plaintiffs already

20   explained that they state a valid fraud claim with specificity under Rule 9(b).  *See supra*, pp. 15-17.  This

21   shows Plaintiffs have also stated a valid UCL "fraudulent" claim.  *Garcia v. Sony Computer Entm't Am.,*

22   *LLC*, 859 F. Supp. 2d 1056, 1062 (N.D. Cal. 2012) (quoting *McKell v. Washington Mut. Inc.,* 142

23   Cal.App.4th 1457, 1471 (Cal. Ct. App. 2006); *Mass. Mut. Life Ins. Co. v. Superior Court,* 97 Cal.App.4th

24   1282, 1298–90, 119 Cal.Rptr.2d 190 (2002)) (explaining a UCL "fraudulent" claim arises from a "false

25   statement, or one which, though strictly accurate, nonetheless has the likely effect of misleading or

26   deceiving the public").  Altisource's tired contract and duty arguments fail to show otherwise.

27   **IV.    CONCLUSION**

28          Based on the foregoing, the Court should deny Altisource's motion to dismiss in its entirety.

Dated:  August 18, 2015

FEINSTEIN DOYLE PAYNE & KRAVEC, LLC

By:     s/Joseph N. Kravec, Jr.
        Joseph N. Kravec, Jr.
        Attorneys for Plaintiffs
        Email:  jkravec@fdpklaw.com

**PROOF OF SERVICE**

STATE OF PENNSYLVANIA          )
                               )   ss.:
COUNTY OF ALLEGHENY            )

I am employed in the County of Allegheny, State of Pennsylvania.  I am over the age of 18 and not a party to the within action.  My business address is 429 Forbes Avenue, Allegheny Building, 17th Floor, Pittsburgh, PA 15219.

On August 18, 2015, using the Northern District of California's Electronic Case Filing System, with the ECF ID registered to Joseph N. Kravec, Jr., I filed and served the document(s) described as:

**PLAINTIFFS' OPPOSITION TO MOTION
TO DISMISS BY ALTISOURCE SOLUTIONS, INC.**

**[X]      BY ELECTRONIC TRANSMISSION USING THE COURT'S ECF SYSTEM:**  I caused the above document(s) to be transmitted by electronic mail to those ECF registered parties listed on the Notice of Electronic Filing (NEF) pursuant to Fed.R.Civ.P. 5(d)(1) and by first class mail to those non-ECF registered parties listed on the Notice of Electronic      Filing (NEF).  *"A Notice of Electronic Filing (NEF) is generated automatically by the ECF system upon completion of an electronic filing.  The NEF, when e-mailed to the e-mail address of record in the case, shall constitute the proof of service as required by Fed.R.Civ.P. 5(d)(1).  A copy of the NEF shall be attached to any document served in the traditional manner upon any party appearing pro se."*

I declare that I am admitted *pro hac vice* in this action.

I declare, under penalty of perjury under the laws of the United States, that the above is true and correct.

Executed on August 18, 2015, at Pittsburgh, Pennsylvania.


  s/Joseph N. Kravec, Jr.
     Joseph N. Kravec, Jr.

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS BY ALTISOURCE SOLUTIONS, INC.