1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| VICTOR P GIOTTA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> OCWEN FINANCIAL CORPORATION, et al., <br><br> Defendants. | Case No.  15-cv-00620-BLF <br><br> **ORDER (1) DENYING DEFENDANT ERBEY'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION; (2) GRANTING IN PART AND DENYING IN PART DEFENDANT ERBEY'S ALTERNATIVE MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM; (3) GRANTING IN PART AND DENYING IN PART OCWEN DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM; AND (4) GRANTING DEFENDANT ALTISOURCE'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM** <br><br> **[RE:  ECF 52, 53, 54]** |

Before the Court are three motions to dismiss the operative first amended complaint ("FAC"):  (1) a motion to dismiss for lack of personal jurisdiction or, in the alternative, for failure to state a claim brought by Defendant William C. Erbey ("Erbey"); (2) a motion to dismiss for failure to state a claim brought by Defendants Ocwen Financial Corporation ("Ocwen Financial") and Ocwen Loan Servicing ("Ocwen Servicing"); and (3) a motion to dismiss for failure to state a claim brought by Defendant Altisource Solutions, Inc. ("Altisource").  The Court has considered the briefing, the oral arguments of counsel presented at the hearing, and the relevant legal authorities.  For the reasons discussed below, Erbey's motion to dismiss for lack of personal jurisdiction is DENIED; Erbey's alternative motion to dismiss for failure to state a claim is GRANTED IN PART AND DENIED IN PART; the Ocwen Defendants' motion to dismiss for failure to state a claim is GRANTED IN PART AND DENIED IN PART; and Altisource's motion to dismiss for failure to state a claim is GRANTED.  Leave to amend is GRANTED as to all dismissed claims.

I.       BACKGROUND

In this putative class action, Plaintiffs Victor and Loralee Giotta ("Plaintiffs") allege that Defendants Ocwen Financial, Ocwen Servicing, and Altisource, along with their key executive, Defendant Erbey, engaged in a conspiracy to defraud homeowners in default on their mortgage loans by charging them excessive and duplicative fees relating to the servicing of those loans. According to Plaintiffs, Erbey was the "mastermind" of the conspiracy.  FAC ¶ 16.  Under the alleged scheme, Ocwen Servicing acquired the servicing rights to mortgages at risk for, or already in, default.  FAC ¶¶ 2, 27.  Those servicing rights included the right to charge defaulting borrowers for property inspections, broker price opinions ("BPOs"), and similar services, which Plaintiffs refer to collectively as "Distressed Mortgage Services."  FAC ¶ 2 and n.5.  Thus Ocwen Servicing collected borrowers' loan payments on behalf of the lender but kept for itself the "Distressed Mortgage Fees" that it charged borrowers for Distressed Mortgage Services.  FAC ¶¶ 2, 23.  According to Plaintiffs, this arrangement gave Ocwen Servicing incentive to maximize servicing fees.  FAC ¶¶ 23-24.

Plaintiffs allege that under Erbey's direction, Ocwen Financial spun off its mortgage servicing software division, which became an independent company known as Altisource Portfolio Solutions S.A. ("Altisource Parent").  FAC ¶¶ 3, 10, 40.  Ocwen Financial then leased back from Altisource Parent the mortgage servicing software that Ocwen Financial previously had owned.  FAC ¶¶ 10, 41.  Ocwen Financial also hired Altisource Parent's subsidiary, Defendant Altisource, to provide Distressed Mortgage Services which were charged through to defaulting homeowners.  FAC ¶ 11.  Plaintiffs allege that by hiring Altisource Parent and Altisource to provide services that previously had been provided in-house, Ocwen Servicing was able to charge borrowers artificially and unfairly high prices for the Distressed Mortgage Services.  FAC ¶¶ 3, 38, 73.  Plaintiffs also allege that Ocwen Servicing charged borrowers for duplicate services.  FAC ¶ 75.

Plaintiffs allege that pursuant to this scheme Ocwen Servicing acquired the right to service their defaulted mortgage loan in February 2013.  FAC ¶ 6.  The loan is secured by Plaintiffs' San Jose residence of more than fifty years.  *Id.*  Ocwen Servicing charged Plaintiffs for eight separate

United States District Court
Northern District of California

1   property inspections, procured through Altisource or through Altisource Parent's software, each

2   inspection costing either $10.50 or $15.00.  SAC ¶ 81.  Plaintiffs allege that those fees "were

3   unnecessarily and unreasonably inflated due to Ocwen's use of Altisource Servicing or the

4   Altisource Parent's software to procure property inspection services."  *Id.*  Also, on more than one

5   occasion Ocwen Servicing charged Plaintiffs for both a property inspection and a BPO.  FAC ¶¶

6   82-83.  Plaintiffs assert that obtaining both a property inspection and a BPO was duplicative

7   because a BPO includes "a determination of the condition of the home, which is what Ocwen

8   Servicing defines a property inspection to be."  FAC ¶ 82.

9          Plaintiffs filed this action on February 9, 2015.  Shortly thereafter, Defendants Erbey,

10   Ocwen Financial, Ocwen Servicing, and Altisource filed motions to dismiss.  Plaintiffs responded

11   by amending their complaint.  The operative FAC asserts claims for:  (1) violation of the

12   Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*;

13   (2) violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*;

14   (3) violation of the California Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), Cal.

15   Civ. Code §§ 1788 *et seq.*; (4) violation of the "unlawful" prong of California's Unfair

16   Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*; (5) violation of the "unfair"

17   prong of California's UCL; (6) violation of the "fraudulent" prong of California's UCL; and

18   (7) fraud.

19          Defendants Erbey, Ocwen Financial, Ocwen Servicing, and Altisource again move to

20   dismiss.  As noted above, Erbey seek dismissal for lack of personal jurisdiction or, alternatively,

21   for failure to state a claim, while Ocwen Financial, Ocwen Servicing, and Altisource seek

22   dismissal solely for failure to state a claim.

23   **II.    DEFENDANT ERBEY'S MOTION**

24          **A.    Personal Jurisdiction**

25          Defendant Erbey, a resident of the United States Virgin Islands, seeks dismissal of the

26   action on the ground that this Court lacks personal jurisdiction over him.

27                  **1.    Legal Standard**

28          Federal Rule of Civil Procedure 12(b)(2) authorizes a defendant to seek dismissal of an

United States District Court
Northern District of California

3

United States District Court
Northern District of California

1    action for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2).  When a defendant challenges a

2    court's personal jurisdiction over it, the plaintiff bears the burden of establishing that jurisdiction

3    is proper.  *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015).  The plaintiff may meet that

4    burden by submitting affidavits and discovery materials.  *Doe v. Unocal Corp.*, 248 F.3d 915, 922

5    (9th Cir. 2001).  "Where, as here, the defendant's motion is based on written materials rather than

6    an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to

7    withstand the motion to dismiss."  *Ranza*, 793 F.3d at 1068 (internal quotation marks and citation

8    omitted).  "[T]he plaintiff cannot simply rest on the bare allegations of its complaint."

9    *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (internal quotation

10   marks and citation omitted).  However, uncontroverted allegations in the complaint are accepted

11   as true, and factual disputes created by conflicting affidavits are resolved in the plaintiff's favor.

12   *Id.*

13          Where no applicable federal statute governs personal jurisdiction, "the law of the state in

14   which the district court sits applies."  *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements*

15   *Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003).  "California's long-arm statute allows courts to exercise

16   personal jurisdiction over defendants to the extent permitted by the Due Process Clause of the

17   United States Constitution."  *Id.*  "[D]ue process requires that the defendant 'have certain

18   minimum contacts' with the forum state 'such that the maintenance of the suit does not offend

19   traditional notions of fair play and substantial justice.'"  *Ranza*, 793 F.3d at 1068 (quoting *Int'l*

20   *Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (internal quotation marks and citation

21   omitted).  "The strength of contacts required depends on which of the two categories of personal

22   jurisdiction a litigant invokes:  specific jurisdiction or general jurisdiction."  *Id.* at 1068.  "General

23   jurisdiction exists when the defendant's contacts "are so continuous and systematic as to render

24   [it] essentially at home in the forum State."  *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014)

25   (internal quotation marks and citation omitted).  A nonresident that is subject to the court's general

26   jurisdiction may be sued for claims "arising from dealings entirely distinct" from the forum-

27   related activities.  *Id.* (internal quotation marks and citation omitted) (emphasis omitted).  In

28   contrast, specific jurisdiction exists when the defendant's contacts with the forum state are more

limited but the plaintiff's claims arise out of or relate to those contacts.  *Id.* at 754.  General

jurisdiction is referred to as "all-purpose" jurisdiction whereas specific jurisdiction is referred to as

"case-specific" or "case-linked" jurisdiction.  *Ranza*, 793 F.3d at 1069 n.2 (citations omitted).

### 2.  Discussion

Plaintiffs assert that Erbey is subject to this Court's specific jurisdiction.  Courts in the

Ninth Circuit employ a three-prong test when determining whether a nonresident defendant may

be subject to specific personal jurisdiction in a forum:

> (1) The non-resident defendant must purposefully direct his activities or
> consummate some transaction with the forum or resident thereof; or perform some
> act by which he purposefully avails himself of the privilege of conducting activities
> in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-
> related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice,
> i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802.  "The plaintiff bears the burden of satisfying the first two

prongs of the test."  *Id.*  If the plaintiff succeeds in doing so, the burden shifts to the defendant to

"set forth a 'compelling case' that the exercise of jurisdiction would not be reasonable."

*CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011) (quoting *Burger

King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)).

### a.  Purposeful Direction

Plaintiffs assert that Erbey controlled the activities of Ocwen Financial, Ocwen Servicing,

and Altisource, and that those activities were directed at a number of states, including California.

Erbey argues that he cannot be subjected to this Court's jurisdiction based solely upon his

association with the Ocwen and Altisource entities and that in any event the alleged scheme to

charge inflated and/or duplicate Distressed Mortgage Fees was not sufficiently directed toward

California to satisfy the purposeful direction requirement.

With respect to the latter point, Erbey relies primarily upon *Click*, a products liability case

holding that the "untargeted negligence" of an employee who re-drew equipment details was

insufficient to support the exercise of personal jurisdiction over him.   *Click v. Dorman Long Tech.*

*Ltd.*, No. C 06-1936 PJH, 2006 WL 2644889, at *5 (N.D. Cal. Sept. 14, 2006).  The fact that the product was sold in California, among other places, was insufficient to establish personal jurisdiction.  *Id.  Click* is distinguishable from the present case, because although here the FAC alleges that the loan servicing scheme was nationwide, *see* FAC ¶ 45, it also alleges that "California has Ocwen Servicing's largest concentration of loans," FAC ¶ 26, and that Ocwen Servicing actually consummated transactions in California, including the loan servicing transactions that form the basis for Plaintiffs' claims, FAC ¶¶ 73-75, 81-83.  Plaintiffs' uncontroverted allegation regarding the concentration of Ocwen Servicing's loans in California alone might be sufficient to establish that the scheme was purposely directed toward California. The actual brick-and-mortar loan services provided with respect to Plaintiffs' California home – allegedly pursuant to the scheme – certainly are.

The more difficult question is whether Plaintiffs have made out a prima facie case with respect to *Erbey's* participation in the scheme.  "Under the fiduciary shield doctrine, a person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over the person."  *Davis v. Metro Productions, Inc.*, 885 F.2d 515, 520 (9th Cir. 1989).  "The corporate form shielding an individual associated with the corporation from personal jurisdiction may be ignored in two circumstances:  (1) where the corporation is the agent or alter ego of the individual defendant; or (2) by virtue of the individual's control of and direct participation in the alleged activities."  *Fasugbe v. Willms*, No. CIV. 2:10–2320 WBS KJN, 2011 WL 3667440, at *3 (E.D. Cal. Aug. 22, 2011).  Plaintiffs do not assert alter ego here, but they do allege that Erbey participated directly in the alleged scheme by controlling and directing the activities of Ocwen Financial, Ocwen Servicing, and Altisource.  "A corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf."  *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 734 (9th Cir. 1999).  Cases in which a corporate officer's control and participation provided a sufficient basis for personal liability "have typically involved instances where the defendant was the 'guiding spirit' behind the wrongful conduct, . . . or the 'central figure' in the challenged corporate

6

1     activity." *Wolf Designs, Inc. v. DHR Co.*, 322 F. Supp. 2d 1065, 1072 (C.D. Cal. 2004) (internal

2     quotation marks and citation omitted).

3              Conclusory allegations that use the buzz words "guiding spirit" or "central figure" are

4     insufficient to establish an exception to the corporate shield doctrine. *Fasugbe*, 2011 WL

5     3667440, at *4. Defendants argue that Plaintiffs do no more than argue such buzz words and

6     make conclusory allegations that Erbey "directed" or "controlled" the activities of the entity

7     defendants. The Court agrees that many of Plaintiffs' allegations regarding Erbey's participation

8     in the scheme are conclusory. *See, e.g.,* FAC ¶ 16 (alleging that "Erbey created, oversaw and

9     implemented" the scheme). However, Plaintiffs do make specific allegations regarding the

10    corporate positions that Erbey held, and his stock ownership, which provide a factual basis for the

11    allegations regarding Erbey's control of the entity defendants. *See, e.g.*, FAC ¶ 1. Plaintiffs also

12    describe how Erbey was forced out of his executive positions by the New York Department of

13    Financial Services, which investigated Erbey and the Ocwen and Altisource entities for self-

14    dealing and other misconduct. *See* FAC ¶¶ 1-2, 16; Consent Order, FAC Exh. 6. A Consent

15    Order was entered under which Erbey was required to resign from his positions with the Ocwen

16    and Altisource entities as well as other entities. *Id.* ¶ 57. The Court concludes that Plaintiffs'

17    allegations regarding Erbey's participation in the scheme, combined with evidence that the New

18    York Department of Financial Services found Erbey to be a sufficiently central figure in the

19    entities' operations to require his removal, are sufficient to establish the requisite *prima facie*

20    showing of jurisdictional facts with respect to the first *Schwarzenegger* prong.

21                            **b.      Arising Out Of**

22              The Ninth Circuit has dubbed the second prong of *Schwarzenegger's* specific jurisdiction

23    inquiry as the "but for test." *In re Western States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d

24    716, 742 (9th Cir. 2013). "Under the 'but for' test, a lawsuit arises out of a defendant's contacts

25    with the forum state if a direct nexus exists between those contacts and the cause of action." *Id.*

26    (internal quotation marks and citation omitted). Plaintiffs allege that pursuant to a scheme that

27    Erbey masterminded and at Erbey's direction, Ocwen Servicing acquired their mortgage loan and

28    charged them excessive and duplicative fees. *See* FAC ¶¶ 1-2, 16, 81-85. Those allegations are

United States District Court
Northern District of California

7

United States District Court
Northern District of California

sufficient to establish that Plaintiffs' claims arise out of Erbey's forum-related activities.

### c.   Reasonableness

Because Plaintiffs have made out a prima facie case with respect to the first two prongs of the *Schwarzenegger* test, the burden shifts to Erbey to "set forth a 'compelling case' that the exercise of jurisdiction would not be reasonable." *CollegeSource*, 653 F.3d at 1076 (quoting *Burger King*, 471 U.S. at 476-78).  Courts in the Ninth Circuit consider a seven-factor balancing test when addressing the question of reasonableness:

> (1) the extent of the defendant's purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of the conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Id.* at 1079 (citation omitted).

Erbey does not address this test at all, relying exclusively upon his arguments that Plaintiffs have not demonstrated contacts sufficient to make out a prima facie case of personal jurisdiction.  Accordingly, Erbey has failed to meet his burden of setting forth a "compelling case" that exercise of jurisdiction would not be reasonable here.

### d.   Conclusion

Plaintiffs have made a prima facie showing of specific personal jurisdiction and Erbey has not met his burden of demonstrating that exercise of jurisdiction would not be reasonable. Accordingly, Erbey's motion to dismiss for lack of personal jurisdiction is DENIED.

### B.   Failure to State a Claim

Defendant Erbey alternatively seeks dismissal of the action under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.

#### 1.   Legal Standard

When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff.  *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).  However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or

8

United States District Court
Northern District of California

1    "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

2    inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation

3    marks and citations omitted).  While a complaint need not contain detailed factual allegations, it

4    "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

5    on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*,

6    550 U.S. 544, 570 (2007)).  A claim is facially plausible when it "allows the court to draw the

7    reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

                    **2.      Discussion**

9         Defendant Erbey contends that Plaintiffs have not alleged facts sufficient to show his

10   personal participation in the alleged scheme.  The Ninth Circuit has made clear that when a

11   corporate officer personally authorizes, directs, or participates in wrongdoing, the officer "cannot

12   hide behind the corporation" to avoid liability.  *Coastal Abstract Service*, 173 F.3d at 734 (internal

13   quotation marks and citation omitted).  Courts in this district have held that corporate officers who

14   direct and manage a fraudulent scheme giving rise to RICO liability may be held personally liable

15   under RICO.  *See Smith v. Levine Leichtman Capital Partners, Inc.*, 723 F. Supp. 2d 1205, 1216

16   (N.D. Cal. 2010).  As discussed above in the context of Erbey's motion to dismiss for lack of

17   personal jurisdiction, Plaintiffs have alleged that Erbey was the mastermind behind the alleged

18   scheme; that Erbey controlled and directed the conduct of the Ocwen and Altisource entities; that

19   Erbey held specified key corporate positions that gave him that control; and that Erbey was

20   required to step down from those positions under a Consent Order entered after an investigation

21   into alleged self-dealing similar to that alleged here.  *See* FAC ¶¶ 1-2, 16, 57.  Those allegations,

22   accepted as true, state plausible claims against Erbey based upon his personal participation in the

23   alleged scheme.  Thus Erbey's motion to dismiss for failure to plead sufficient facts regarding his

24   personal participation in the scheme is DENIED.

25        Erbey also seeks to join the Rule 12(b)(6) motions brought by the Ocwen and Altisource

26   entities, discussed below.  *See* Erbey's Mot. at 20 n.5, ECF 53.  Erbey's request for joinder is

27   GRANTED.  The motions brought by the Ocwen and Altisource Defendants are deemed to be

28   brought by Erbey as well.

**III.   OCWEN AND ALTISOURCE DEFENDANTS' MOTIONS (JOINED BY ERBEY)**

The Ocwen and Altisource Defendants seek dismissal of the action under Rule 12(b)(6) for failure to state a claim upon which relief may be granted.  As discussed above, Erbey joins those motions.  The applicable legal standard is set forth in section II.B.1. above, and need not be repeated here.

**A.   Notice-and-Cure (Ocwen)**

Plaintiffs' deed of trust, which is attached to their FAC, contains the following notice-and-cure provision:

> Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.

Deed of Trust ¶ 20, FAC Exh. 9.  The Ocwen Defendants assert that Plaintiffs were required to comply with this notice-and-cure provision before filing the present action and that their failure to do so bars their suit.  Plaintiffs respond that the plain contract language limits the notice-and-cure requirement to judicial actions brought by the borrower against the *lender* or vice versa.  Here, Plaintiffs – the borrowers – sue the loan *servicer* and related entities, none of which is the lender.

The Ocwen Defendants argue that the notice-and-cure provision extends to loan servicers, citing to paragraph 13 of the deed of trust, which states that "[t]he covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender."  Deed of Trust ¶ 13.  The parties dispute whether Ocwen Servicing qualifies as an "assign" under the contract.  That dispute presents an issue of contract interpretation.  The deed of trust provides that it "shall be governed by federal law and the law of the jurisdiction in which the Property is located."  Deed of Trust ¶ 16.  Federal law provides that contracts are to be interpreted according to their plain language "with the understanding that the common or normal meaning of language will be given to the words of a contract unless circumstances show that in a particular case a special meaning should be attached to it."  *Simonoff*

United States District Court
Northern District of California

United States District Court
Northern District of California

1    *v. Expedia, Inc.*, 643 F.3d 1202, 1205 (9th Cir. 2011) (internal quotation marks and citations

2    omitted).  Similarly, under California law, "[i]f contractual language is clear and explicit, it

3    governs."  *Bank of the West v. Sup. Ct.*, 2 Cal. 4th 1254, 1264 (1992).

4         The deed of trust does not define "assign."  Thus the ordinary meaning of the word applies.

5    Black's Law Dictionary defines an "assign" or "assignee" as "[s]omeone to whom property rights

6    or powers are transferred by another."  Black's Law Dictionary, 10th ed. (2014).  Nothing on the

7    face of the complaint or in the deed of trust itself suggests that the lender has transferred property

8    rights to Ocwen Servicing or the other defendants.  Arguably the lender has transferred "powers"

9    to Ocwen Servicing, since Ocwen Servicing has the authority to collect loan payments on the

10   lender's behalf and to provide and charge for certain services such as property inspections and

11   BPOs.  Even if Ocwen Servicing could be considered the lender's "assign" for purposes of

12   paragraph 13, however, that paragraph states that the deed of trust shall bind and benefit assigns of

13   the Lender "except as provided in Section 20."  Section 20 is the paragraph that contains the

14   notice-and-cure provision.  Thus under the plain language of the contract it does not appear that

15   the notice-and-cure provision in paragraph 20 may be extended to loan servicers via paragraph 13.

16   The Ocwen Defendants argue that the "except as provided in Section 20" language relates only to

17   paragraph 20's reference to sale of the Note.  However, Defendants provide no legal or factual

18   support for that argument, which appears as a single-sentence footnote in their reply brief.

19        The Ocwen Defendants cite two decisions from this district which they assert applied

20   identical notice-and-cure provisions to claims against entities other than the lender.  *See Jackson v.*

21   *Atl. Savings of America*, No. C 13-05755 CW, 2014 WL 4802879 (N.D. Cal. Sept. 26, 2014);

22   *Hollowell v. Alliance Bancorp, Inc.*, No. 3:10-cv-01658-MMC, 2011 WL 2884801 (N.D. Cal. July

23   19, 2011).  In *Jackson*, the notice-and-cure argument was asserted by Wells Fargo Bank, N.A.  It

24   is not clear from the decision what Wells Fargo's role was, but even assuming that Wells Fargo

25   was the loan servicer, the court did not analyze whether the notice-and-cure provision properly

26   could be applied to a loan servicer as distinct from a lender.  In fact, the court granted dismissal as

27   to all defendants, including the lender.  In *Hollowell*, the court relied upon the notice-and-cure

28   provision to dismiss the plaintiff's contract claims against U.S. Bank National Association, which

United States District Court
Northern District of California

had purchased plaintiff's loan.  *Hollowell*, 2011 WL 2884801, at *1-2.  As was the case in

*Jackson*, the court did not discuss whether the notice-and-cure provision could be extended

beyond claims between the borrower and the lender to claims between the borrower and the loan

servicer.

Plaintiffs cite decisions in which the courts addressed that issue expressly and declined to

apply notice-and-cure provisions similar to the one at issue here to suits brought against entities

other than the lender.  *See Patrick v. Teays Valley Trustees, LLC*, No. 3:12-CV-39, 2012 WL

5993163, at *9 (N.D.W.Va. Nov. 30, 2012) ("[T]he Notice-and-Cure Provision in the Plaintiffs'

Deed of Trust expressly bind the borrower and the lender – not the borrower and a loan service

provider or substitute trustee."); *Schmidt v. Wells Fargo Home Mort.*, No. 3:11-CV-059, 2011 WL

1597658, at *3 (E.D. Va. Apr. 26, 2011) ("The notice-and-cure provisions in the deeds of trust

bind the borrower and the lender, not the borrower and the loan servicer.").  Defendants urge this

Court to follow the cases from this district rather than cases from other jurisdictions.  As noted

above, it appears that Defendants have read the decisions upon which they rely too broadly.  The

cases cited by Plaintiffs comport with this Court's reading of the plain language of the deed of

trust.

Accordingly, the Ocwen Defendants' motion to dismiss the FAC for failure to comply with

the notice-and-cure provision is DENIED.

### B.    Claim 1 – RICO (Ocwen and Altisource)

Ocwen Financial, Ocwen Servicing, and Altisource move to dismiss Claim 1, which

alleges both a substantive RICO claim and a RICO conspiracy claim.

#### 1.    Substantive RICO Claim

The elements of a substantive civil RICO claim are:  "(1) conduct (2) of an enterprise

(3) through a pattern (4) of racketeering activity (known as predicate acts) (5) causing injury to the

plaintiff's business or property."  *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996) (internal

quotation marks and citation omitted).

Plaintiffs allege predicate acts of mail and wire fraud.  Where a civil RICO claim is based

upon mail or wire fraud, those fraudulent acts must be alleged with the particularity required by

12

1   Federal Rule of Civil Procedure 9(b). *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940

2   F.2d 397, 405 (9th Cir. 1991); *Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d

3   1393, 1400-01 (9th Cir. 1986). "Federal Rule of Civil Procedure 9(b) requires a pleader of fraud

4   to detail with particularity the time, place, and manner of each act of fraud, plus the role of each

5   defendant in each scheme." *Lancaster Cmty. Hosp.*, 940 F.2d at 405 (citing Fed. R. Civ. P. 9(b)).

6       "Mail and wire fraud can be premised on either a non-disclosure or an affirmative

7   misrepresentation." *Eller v. EquiTrust Life Ins. Co.*, 778 F.3d 1089, 1092 (9th Cir. 2015). Here,

8   Plaintiffs allege that "Defendants used the mail and wires on numerous occasions to exchange

9   fraudulent communications facilitating the ordering of, the charging and payment for, and the

10  ultimate billing to borrowers for the Distressed Mortgage Fees that were inflated and/or

11  duplicative by virtue of Defendants' *undisclosed*, unlawful and fraudulent self-dealing." FAC ¶

12  117 (emphasis added). Plaintiffs also allege that Defendants provided "statements to borrowers

13  that *conceal* the nature of the Inflated and Duplicative Distressed Mortgage Fees or the true cost

14  thereof," FAC ¶ 123 (emphasis added), and that the invoices, statements, and proofs of claims that

15  were transmitted to borrowers via the Internet, telephone, facsimile, and United States Mail "*failed

16  to disclose* the Ocwen Enterprise's unlawful conspiracy, or that the Distressed Mortgage Fees

17  were inflated or duplicative of other services," FAC ¶ 131 (emphasis added). Thus the alleged

18  acts of mail and wire fraud in this case are premised upon non-disclosure. Plaintiffs' counsel

19  confirmed at the hearing that "[t]his is really a concealment case" rather than a case based on

20  affirmative misrepresentations. Hrg. Tr. 66:18-24, ECF 71.

21      "A non-disclosure, however, can support a fraud charge only when there exists an

22  independent duty that has been breached by the person so charged." *Eller*, 778 F.3d at 1092

23  (internal quotation marks and citation omitted); *see also Brissett v. Entrust Group, Inc.*, No. 13-

24  16393, 2015 WL 6500972, at *1 (9th Cir. Oct. 28, 2015) (Under California law, "[a] fraud claim

25  based upon the suppression or concealment of a material fact must involve a defendant who had a

26  legal duty to disclose the fact.") (internal quotation marks and citation omitted). "Absent an

27  independent duty, such as a fiduciary duty or an explicit statutory duty, failure to disclose cannot

28  be the basis of a [RICO] fraudulent scheme." *Eller* at 1092 (internal quotation marks and citation

United States District Court
Northern District of California

13

omitted).  In general, no fiduciary relationship exists between a mortgagee and the loan servicer.  *See Monreal v. GMAC Mortg., LLC*, 948 F. Supp. 2d 1069, 1078 (S.D. Cal. 2013).  Plaintiffs have not identified a fiduciary duty or any other duty that would give rise to a disclosure obligation on the part of Defendants.  Plaintiffs' failure to allege a duty to disclose is fatal to their RICO claim based upon mail and wire fraud.

Moreover, although Plaintiffs' RICO claim is premised upon Defendants' participation in a scheme to charge borrowers inflated and duplicative fees, Plaintiffs have not alleged facts showing that they were charged fees that were unlawful or unfair.  With respect to the asserted inflation of fees, Plaintiffs allege that Ocwen Servicing outsourced certain services to Altisource and that "the costs passed onto Ocwen's borrowers included revenue and profits built in for the Ocwen Entities as well as the Altisource Entities."  FAC ¶ 71.  Plaintiffs allege that after the Altisource spin-off, Ocwen Servicing charged homeowners approximately $100 for each BPO.  FAC ¶ 73.  However, Plaintiffs do not allege how much Ocwen Servicing charged for a BPO prior to the Altisource spin-off or that $100 exceeded the market rate for a BPO.[1]  Moreover, Plaintiffs have not explained why it is unlawful or unfair for Ocwen Servicing and/or Altisource to realize a profit on the subject transactions.

The Court pressed Plaintiff's counsel on that point at the hearing, asking what regulation or law makes the alleged up-charges illegal or unfair and what standard is to be used to distinguish between reasonable profit versus an unlawful level of profit.  Hrg. Tr. 53:23-54:1, 59:8-12, ECF 71.  Counsel conceded that Ocwen Servicing legitimately could add a charge for itself when passing through costs of services performed by an unrelated third party.  Hrg. Tr. 57:9-18, ECF 71.  However, counsel argued that the same practice was unlawful or unfair in this case because Altisource is a spin-off company.  Hrg. Tr. 52:18-55:1, ECF 71.  Plaintiffs have not cited, and the Court has not discovered, any case supporting that position.  To the contrary, at least one California appellate court has held expressly that the performance of property inspections by an

---

[1] Plaintiffs allege that prior to the Altisource spin-off Ocwen Servicing "paid real estate agencies $45-$50 to perform a BPO," FAC ¶ 73, but they do not allege whether Ocwen Servicing charged homeowners that amount or some other amount for the BPO.

United States District Court
Northern District of California

affiliated company "does not render the practice of charging property inspection fees to the borrower unfair." *Walker v. Countrywide Home Loans, Inc.*, 98 Cal. App. 4th 1158, 1177 (2002). In *Walker*, the court noted the absence of "evidence showing that Countrywide's use of an affiliated company to perform inspections is unfair or unethical." *Id.* at 1178. The court went on to observe that "[t]he record does not show that Countrywide disregarded separate corporate identities or charged fees for inspections not performed," and concluded its analysis by stating that "[u]sing an affiliated company conceivably could reduce transaction costs and increase efficiency, to the consumer's benefit." *Id.*

Plaintiffs rely upon *Weiner v. Ocwen Financial*, No. 2:14-cv-02597-MCE-DAD, 2015 WL 4599427 (E.D. Cal. July 29, 2015), in which the district court denied a motion to dismiss brought by Ocwen Financial and Ocwen Servicing to challenge contract, fraud, RFDCPA, RICO, and unjust enrichment claims based upon the same Ocwen-Altisource scheme alleged in the present action. *Weiner* is distinguishable in that the plaintiff there alleged specific facts showing that he had been charged BPO and title search fees in excess of prevailing market rates. *See id.* at *6. For example, the plaintiff in *Weiner* alleged that he had paid more than $800 for title search fees that should have run him between $150 and $450. *Id.* In the present case, Plaintiffs allege conclusorily that Ocwen Servicing charges borrowers "more than what is reasonable in the marketplace," FAC ¶ 123, ECF 41, but they do not allege any facts to support that conclusory allegation.

Moreover, the *Weiner* court noted that the deed of trust before it "permit[ted] Ocwen to be reimbursed for reasonable and appropriate fees but not marked up fees designed to make a profit." *Weiner*, 2015 WL 4599427, at * 7. Plaintiffs have not pointed to similar language in their deed of trust. In fact, Plaintiffs' deed of trust provides that if Plaintiffs fail to perform the covenants and agreements contained therein, "then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property. . . . Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument." Deed of Trust ¶ 9, FAC Exh. 9. The deed of trust also provides that in the event

United States District Court
Northern District of California

1   Plaintiffs default on the loan they may be charged fees for services performed "for the purpose of

2   protecting Lender's interest in the Property and rights under this Security Instrument, including,

3   but not limited to, attorneys' fees, property inspection and valuation fees."  Deed of Trust ¶ 14.  In

4   light of the factual differences between *Weiner* and the present case, Plaintiffs' reliance upon

5   *Weiner* is misplaced.

6        Plaintiffs also rely upon *Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 937 (N.D. Cal.

7   2013), in which the district court denied a motion to dismiss UCL, RICO, unjust enrichment, and

8   fraud claims based upon an alleged scheme similar to that alleged in the present case.  In *Bias*, the

9   plaintiffs alleged that the third party that provided the BPOs provided phony invoices to the loan

10  servicer that were never actually paid.  *Id.* at 924.  The invoices were doctored up to trick the

11  plaintiffs into thinking that significant third-party costs were being incurred in obtaining the

12  BPOs, but really the loan servicer paid a lesser amount directly to the local real estate brokers

13  while assessing the borrowers' accounts for the marked-up amount on the falsified invoices.  *Id.*

14  Plaintiffs do not allege that Altisource or any other entity generated falsified invoices in this case.

15       In addition to inflated fees, Plaintiffs allege that they were charged duplicative fees.

16  Plaintiffs do not allege that Defendants charged them twice for the same service.  Instead,

17  Plaintiffs assert that "any charge to a borrower for an inspection done around the same time they

18  [sic] as a BPO or appraisal would be duplicative."  FAC ¶ 79, ECF 41.  According to Plaintiff, a

19  BPO includes the equivalent of a property inspection, so the property inspection is rendered

20  superfluous when done close in time to a BPO.  FAC ¶¶ 78-79.  Plaintiffs' counsel argued at the

21  hearing that while the lender and loan servicer may be contractually entitled to obtain both an

22  inspection and BPO if "they like belts and suspenders," "it still may be unfair to charge the

23  borrower the full amount of what is duplicated."  Hrg. Tr. 65:1-10, ECF 71.  However, Plaintiffs

24  have not identified a factual or legal basis for concluding that the "belt and suspenders" approach

25  was unlawful or unfair in this case.

26       In light of the foregoing analysis, the Court concludes that Plaintiffs have failed to allege

27  predicate acts of mail or wire fraud with the specificity required by Rule 9(b).  In particular,

28  Plaintiffs have not alleged that Defendants owed a duty to disclose, which is fatal to Plaintiffs'

RICO claims based upon fraudulent concealment.  Moreover, Plaintiffs have not alleged facts

showing that the fees they were charged for property inspections and BPOs were unlawful or

unfair.  Thus Plaintiffs have not alleged with adequate specificity *what* Defendants would have

been required to disclose even if they had a disclosure duty.  Accordingly, the Ocwen and

Altisource motions are GRANTED as to the substantive RICO claim.

### 2.    RICO Conspiracy Claim

A failure to plead a substantive RICO violation is fatal to a RICO conspiracy claim.

*Howard v. America Online, Inc.*, 208 F.3d 741, 751 (9th Cir. 2000).  Thus the Ocwen and

Altisource motions are GRANTED as to the RICO conspiracy claim as well.

### C.    Claim 2 - FDCPA and Claim 3 -  RFDCPA (Altisource)

Altisource moves to dismiss Claims 2 and 3, alleging violations of the FDCPA and

RFDCPA, on the basis that Plaintiffs have not alleged facts showing that Altisource is a debt

collector.

To establish liability under either the FDCPA or the RFDCPA, a plaintiff must show that

the defendant was a debt collector or engaged in debt collection activity.  *Hunt v. Wells Fargo

Bank, N.A.*, No. 2:13-cv-02435-MCE-KJN, 2014 WL 1028391, at *4-5 (E.D. Cal. Mar. 17, 2014).

Altisource moves to dismiss Claims 2 and 3 on the basis that Plaintiffs have not alleged facts

showing that it is a debt collector or engaged in debt collection activity.  *See* FAC ¶ 149 (alleging

that Ocwen Servicing is a debt collector but making no such allegation as to Altisource).

Altisource also points out that Plaintiffs have not alleged that they received any communications

from Altisource.  Finally, to the extent that Plaintiffs allege that Altisource may be held liable for

aiding and abetting Ocwen Servicing's alleged debt collection activities, a number of courts have

declined to extend the FDCPA in that manner.  *See, e.g., Rich v. BAC Home Loans Servicing LP*,

No. CV-11-00511-PHX-SRB, 2013 WL 10104612, at *5 (D. Ariz. Dec. 13, 2013) ("There is no

support in the FDCPA for extending its coverage to secondary liability for aiding and abetting.").

Plaintiffs cite this Court's decision in *Gold v. Midland Credit Mgmt., Inc.*, 82 F. Supp. 3d

1064 (N.D. Cal. 2015), for the proposition that a defendant may be liable under the FDCPA and

RFDCPA as an "indirect" debt collector.  In order to establish such liability, the plaintiff must

17

1   show that the "indirect" debt collector and the "direct" debt collector are an "interdependent single

2   economic enterprise." *Id.* at 1072.  Plaintiffs have not alleged facts showing that Altisource and

3   Ocwen Servicing are a "single economic enterprise."

4         Altisource's motion is GRANTED as to the FDCPA and RFDCPA claims.

5         **D.**     **Claims 4, 5 and 6 - UCL Unlawful, Unfair, and Fraud Prongs (Altisource)**

6         Altisource moves to dismiss Claims 4, 5, and 6, asserting violations of the unlawful, unfair,

7   and fraud prongs of California Business & Professions Code § 17200 (prohibiting an individual or

8   entity from engaging in an "unlawful, unfair or fraudulent business act or practice").  "Because the

9   statute is written in the disjunctive, it is violated where a defendant's act or practice violates any of

10  the foregoing prongs." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012).

11        **1.**     **Unlawful**

12        "By proscribing any unlawful business practice, section 17200 borrows violations of other

13  laws and treats them as unlawful practices that the unfair competition law makes independently

14  actionable." *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000)

15  (internal quotation marks and citation omitted).  Plaintiffs base their UCL claim under the

16  unlawful prong on asserted violations of the FDCPA, the RFDCPA, RICO, and the Dodd-Frank

17  Wall Street Reform and Consumer Protection Act.  FAC ¶¶ 171-75.  For the reasons discussed

18  herein, Plaintiffs have failed to alleged violations of the FDCPA, RFDCPA, or RICO against

19  Altisource.  The Dodd-Frank Act prohibits "a covered person or service provider from committing

20  or engaging in an unfair, deceptive, or abusive act or practice under Federal law in connection

21  with any transaction with a consumer for a consumer financial product or service, or the offering

22  of a consumer financial product or service."  12 U.S.C. § 5531(a).  As discussed above, Plaintiffs

23  have not alleged facts showing that the fees charged in this case were unfair, deceptive, or abusive.

24        **2.**     **Unfair**

25        In Claim 5, Plaintiffs allege that Defendants' conduct in charging inflated and duplicative

26  fees was unfair.  FAC ¶ 185.  However, Plaintiffs have not alleged facts or presented legal

27  authority showing that the alleged up-charging was wrongful or that Defendants were not entitled

28  to obtain both property inspections and BPOs within a short period of time.

United States District Court
Northern District of California

18

### 3.    Fraud

"A business practice is fraudulent under the UCL if members of the public are likely to be deceived." *Davis*, 691 F.3d at 1169.  Allegations of fraud under § 17200 must satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b).  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).  Rule 9(b) requires that "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).  "'Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged.'"  *Kearns*, 567 F.3d at 1124 (quoting *Yess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)).  As discussed at length above in the context of the RICO claim, Plaintiffs assert fraudulent concealment in this case but they do not allege facts showing that Defendants had a duty to disclose or that the fees charged to Plaintiffs were unlawful or unfair.

### 4.    Conclusion

In light of the foregoing, Altisource's motion is GRANTED as to all three of Plaintiffs' UCL claims.

### E.    Claim 7 - Fraud (Ocwen and Altisource)

The Ocwen and Altisource entities move to dismiss Claim 7, asserting fraudulent concealment.  As discussed in the context of the RICO claim, Plaintiffs do not allege facts showing that Defendants had a duty to disclose or that the fees charged to Plaintiffs were unlawful or unfair.  Accordingly, the Ocwen and Altisource motions are GRANTED as to the fraud claim.

### F.    Leave to Amend

In deciding whether to grant leave to amend, the Court must consider the factors set forth by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), and discussed at length by the Ninth Circuit in *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2009).  A district court ordinarily must grant leave to amend unless one or more of the *Foman* factors is present: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, and (5) futility of amendment.  *Eminence Capital*, 316 F.3d at 1052.  "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight."  *Id.*  However a strong showing with respect to one of the other factors may

1  warrant denial of leave to amend.  *Id.*

2       The record does not suggest undue delay or bad faith.  Nor have Plaintiffs repeatedly

3  failed to cure deficiencies in their pleading.  Although Plaintiffs previously amended their

4  complaint in response to motions to dismiss filed by Defendants, Plaintiffs have not to date had

5  the benefit of the Court's analysis regarding the adequacy of their pleadings.  The case is at an

6  early stage, so granting leave to amend would not prejudice Defendants.  Finally, it is not clear

7  that amendment would be futile.

8       Accordingly, leave to amend is GRANTED as to all dismissed claims.

9  **IV.   ORDER**

10      For the foregoing reasons, IT IS HEREBY ORDERED that:

11      (1)   Defendant Erbey's motion to dismiss for lack of personal jurisdiction is DENIED;

12      (2)   Defendant Erbey's alternative motion to dismiss for failure to state a claim is

13            DENIED with respect to his argument that Plaintiffs have not alleged his personal

14            participation in the alleged misconduct and GRANTED to the extent that the

15            Ocwen and Altisource motions, in which Erbey joins, are granted;

16      (3)   The Ocwen Defendants' motion to dismiss for failure to state a claim is

17            GRANTED IN PART AND DENIED IN PART as set forth herein;

18      (4)   Defendant Altisource's motion to dismiss for failure to state a claim is GRANTED;

19      (5)   Leave to amend is GRANTED as to all dismissed claims;

20      (6)   Any amended pleading shall be filed on or before January 15, 2016; and

21      (7)   Leave to amend is granted only to cure the deficiencies discussed in this order;

22            Plaintiffs shall not add new claims or parties without express leave of the Court.

23

24  Dated:  December 11, 2015

25

26  BETH LABSON FREEMAN
    United States District Judge

27

28

United States District Court
Northern District of California