# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| VICTOR P. GIOTTA, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>OCWEN FINANCIAL CORPORATION, et al.,<br><br>    Defendants. | Case No. 15-cv-00620-BLF<br><br>**ORDER GRANTING DEFENDANTS' JOINT MOTION TO DISMISS SECOND AMENDED COMPLAINT WITHOUT LEAVE TO AMEND; AND DISMISSING ACTION WITH PREJUDICE**<br><br>[RE: ECF 84] |

Plaintiffs Victor and Loralee Giotta allege that Defendants, a group of companies in the mortgage industry and one of their key executives, participated in a scheme to prey on homeowners who were in actual or imminent default on their mortgages. According to Plaintiffs, one of the companies acquired distressed mortgages and assigned the loan servicing rights on those mortgages to another company. The second company hired a third company to obtain property inspections and broker price opinions ("BPOs") at inflated fees which were billed through to the homeowners. In some cases multiple inspections and BPOs were performed in order to run up unnecessary fees. The homeowners were not informed that the fees for the inspections and BPOs were inflated or, in some cases, unnecessary. Plaintiffs sue on their own behalf and as representatives of a putative class of homeowners.

The scheme described by Plaintiffs is extremely troubling, particularly as Plaintiffs' allegations are bolstered by prior consent orders entered against Defendants in other jurisdictions. However, Plaintiffs in *this* case have failed to allege facts that are sufficient to make out a viable claim for relief. Having previously identified numerous pleading defects which have not been cured by amendment, and having received no indication that Plaintiffs could cure those defects if

1  granted further leave to amend, the Court GRANTS Defendants' joint motion to dismiss the
2  second amended complaint ("SAC") without leave to amend and DISMISSES the action with
3  prejudice.

### I. BACKGROUND

The underlying facts of this case are well-known to the parties and need not be repeated in full here. In brief, Plaintiffs claim that Defendant William C. Erbey orchestrated an "abusive, predatory and illegal home mortgage loan servicing business" by means of his control over Defendant Ocwen Financial Corporation ("Ocwen Financial"), Defendant Ocwen Loan Servicing, LLC ("Ocwen Servicing"), Defendant Altisource Solutions, Inc. ("Altisource"), and Altisource's parent, nonparty Altisource Portfolio Solutions, S.A. ("Altisource Parent"). SAC ¶ 1. According to Plaintiffs, Ocwen Financial purchased the servicing rights to subprime mortgages that were in default or likely to enter default status. *Id.* ¶ 2. Ocwen Financial then gave Ocwen Servicing the right to service the mortgages. *Id.* As the mortgage servicer, Ocwen Servicing charged homeowners fees for property inspections and broker price opinions ("BPOs"). *Id.* ¶¶ 2, 9-10. Ocwen Financial "spun off" Altisource Parent and Altisource, and then Ocwen Servicing hired Altisource to provide BPOs on serviced loans. *Id.* ¶ 3. Altisource Parent paid "kickbacks" to Ocwen Financial, and Altisource "upcharged" Ocwen Servicing for BPOs, which upcharges were passed through to the homeowners. *Id.* ¶¶ 3, 10. It appears that Plaintiffs use the term "upcharge" to indicate circumstances in which Altisource charged Ocwen Servicing more than Altisource's own cost to obtain the BPO. *Id.* ¶ 10. Plaintiffs do not allege that Ocwen Servicing charged homeowners more than it paid Altisource, but rather that Ocwen Servicing passed Altisource's upcharges through to homeowners. *Id.*; *see also* Hrg. Trans. 53:6-16, ECF 102 (clarifying that Plaintiffs do not allege a markup by Ocwen Servicing).

Plaintiffs assert that under the above arrangement, Ocwen Servicing overcharged Plaintiffs and putative class members for mortgage services in three ways: (1) Ocwen Servicing sent form letters to homeowners which were accompanied by a schedule of fees indicating that property inspections would be performed at no charge ("no charge letters"), but later Ocwen Servicing charged for property inspections; (2) Ocwen Servicing passed through to homeowners the

2

1  upcharged fees that Ocwen Servicing paid Altisource for BPOs; and (3) Ocwen Servicing
2  "double-dipped" by charging homeowners for contemporaneous property inspections and BPOs
3  even though a BPO renders a property inspection redundant and unnecessary.  SAC ¶¶ 9-13.
4      Based upon these alleged overcharges, Plaintiffs assert the following claims:  (1) violation
5  of the "unlawful" prong of California's Unfair Competition Law ("UCL"), (2) violation of the
6  "fraudulent" prong of California's UCL; (3) violation of the "unfair" prong of California's UCL;
7  (4) fraud; (5) violation of the federal Fair Debt Collection Practices Act ("FDCPA"); (6) violation
8  of California's Rosenthal Fair Debt Collection Practices Act ("RFDCPA"); and (7) violation of the
9  Racketeer Influenced and Corrupt Organizations Act ("RICO").
10     Defendants have filed a joint motion to dismiss the SAC under Federal Rule of Civil
11 procedure 12(b)(6) for failure to state a claim upon which relief may be granted.  The Court has
12 considered the motion, opposition, reply, documents of which the Court may take judicial notice
13 or that may be considered under the incorporation by reference doctrine, and the oral argument
14 presented at the hearing on June 9, 2016.

## II.   LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).  When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff.  *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).  However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted).  While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  A claim is facially plausible when it "allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

**III.   DISCUSSION**

The SAC alleges the same claims that were alleged in the first amended complaint ("FAC") but in a completely different sequence. Defendants' current motion to dismiss addresses the claims in yet another sequence that matches neither the SAC nor the earlier FAC. Because one of the Court's tasks in evaluating Defendants' current motion is to determine whether Plaintiffs have cured the defects noted in the Court's prior order dismissing the FAC, the Court finds it most convenient to address the claims in the same sequence that they were addressed in the prior order and FAC.

**A.   Notice-and-Cure Provision**

As it did in its prior order, the Court first addresses Defendants' argument that all claims are barred by Plaintiffs' failure to comply with the notice-and-cure provision contained in their Deed of Trust, which was recorded by the Santa Clara County Recorder on January 31, 2007, and is attached as Exhibit 2 to the SAC.

The notice-and-cure provision provides as follows:

> Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.

Deed of Trust ¶ 20, SAC Exh. 2, ECF 78-2.

Plaintiffs have not alleged compliance with this provision, nor have they represented that they complied. In the last round of motions, the Ocwen Defendants argued that Plaintiffs' failure to comply constituted a bar to all of the claims alleged in the FAC. The Court rejected that argument, noting that on its face the provision is limited to actions between the borrower and the *lender* and concluding that Defendants had not shown that the provision should be extended to the loan *servicer*. Order issued 12/11/15 at 10-12, ECF 74. Defendants now reassert the argument based upon a written loan modification that was recorded by the Santa Clara County Recorder on

4

April 4, 2012 but was not presented to the Court in the last round of motions. *See* Loan Modification, MTD Exh. 3, ECF 84-3.[1] The loan modification provides that "Borrower acknowledges that 'Lender' is the legal holder and the owner, *or agent/servicer* for the legal holder and owner, of the Note and Security Instrument." Loan Modification at p.1 (emphasis added). The Loan Modification also provides that:

> As amended hereby, the provisions of the Note and Security Instrument shall continue in full force and effect, and the Borrower acknowledges and reaffirms Borrower's liability to "Lender" thereunder. *In the event of any inconsistency between this Agreement and the terms of the Note and Security Instrument, this Agreement shall govern.*

Loan Modification ¶ 9 (emphasis added). Defendants argue that the language expressly defining "Lender" to include the servicer suggests that the parties always understood the term "Lender" to include servicer, both when they executed the referenced Security Instrument – here, the Deed of Trust – and later when they executed the Loan Modification. Defendants also argue that even if there were a conflict between the way the term "Lender" is used in the Deed of Trust and the way the term is used in the Loan Modification, the above language makes clear that the Loan Modification controls.

The Court finds Defendants' position to be consistent with the applicable principles of contract interpretation. The Deed of Trust provides that it "shall be governed by federal law and the law of the jurisdiction in which the Property is located." Deed of Trust ¶ 16. The Loan Modification does not specify what contract law applies, but no party suggests that it would be anything other than federal law or the law of the forum state, California.[2] Federal law provides that contracts are to be interpreted according to their plain language "with the understanding that

---

[1] The Court takes judicial notice of the Loan Modification as a matter of public record. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record.").

[2] Plaintiffs assert both federal question jurisdiction and diversity jurisdiction in this case. SAC ¶ 23. A federal court sitting in diversity applies the forum state's choice-of-law principles to determine the substantive law applicable to interpretation of a contract. *Welles v. Turner Entm't Co.*, 503 F.3d 728, 738 (9th Cir. 2007). In California, absent a choice of law by the parties, a contract is interpreted under the law of the place of performance or, if it does not indicate the place of performance, under the law of the place of creation. *Id.* Applying this test, California law governs interpretation of the Loan Modification.

the common or normal meaning of language will be given to the words of a contract unless circumstances show that in a particular case a special meaning should be attached to it." *Simonoff v. Expedia, Inc.*, 643 F.3d 1202, 1205 (9th Cir. 2011) (internal quotation marks and citations omitted). Similarly, under California law, "[i]f contractual language is clear and explicit, it governs." *Bank of the West v. Sup. Ct.*, 2 Cal. 4th 1254, 1264 (1992). The Loan Modification could not be clearer that the term "Lender" includes the "servicer" and that the Loan Modification controls in the event of any conflict between the Loan Modification and the Deed of Trust.

Plaintiffs argue that the Loan Modification cannot be read in this manner because it is expressly limited to extending Plaintiffs' repayment term. Plaintiffs claim that their interpretation is supported by the following language of the Loan Modification:

> It is the intention of the parties that all liens and security interests described in the Security Instrument are hereby renewed and extended (if the Maturity Date of the original Note has been extended) until the indebtedness evidenced by the Note and this Agreement has been paid-in-full. "Lender" and Borrower acknowledge and agree that such renewal, amendment, modification, rearrangement or extension (if applicable) shall in no manner affect or impair the Note or liens and security interests security same, *the purpose of this Agreement being simply to modify, amend rearrange or extend (if applicable) the time and the manner of payment of the Note and indebtedness evidenced thereby*, and to carry forward all liens and security interests securing the Note, which are expressly acknowledged by Borrower to be valid and subsisting, and in full force and effect so as to fully secure the payment of the Note.

Loan Modification ¶ 7 (emphasis added).

In the Court's view, Plaintiffs read this language too broadly. While the cited paragraph does state that the purpose of the Loan Modification is to modify the terms of Plaintiffs' payment on the Note, nothing in the paragraph suggests that the term "Lender," which appears in quotation marks throughout the Loan Modification and thus clearly is a term of art, is intended to have a different meaning in the Loan Modification than in the Note and Deed of Trust. Plaintiffs have not cited, and the Court has not discovered, any cases holding that the same contract term may have different meanings in a loan modification agreement and in the original loan documents.

Because the term "lender" as used in the notice-and-cure provision includes the "servicer," the notice-and-cure provision applies to Defendant Ocwen Servicing. Next, the Court must determine which claims, if any, are barred by Plaintiffs' failure to give Ocwen Servicing notice of

their claims against it and an opportunity to cure. The Ninth Circuit has not addressed whether a notice-and-cure provision such as this one applies only to contract claims or also to statutory and common law tort claims such as those alleged by Plaintiffs. District courts have gone both ways on the issue.

This Court concludes that all of Plaintiffs' claims fall squarely within the ambit of the notice-and-cure provision. All of the claims arise from the property inspections and BPOs obtained by Ocwen Servicing and charged to Plaintiffs pursuant to the terms of the Deed of Trust. *See* SAC ¶¶ 31, 40; Deed of Trust ¶ 9. Consequently, all of the claims "arise[] from the other party's actions pursuant to this Security Instrument." Deed of Trust ¶ 20. Under the plain language of the Deed of Trust, then, Plaintiffs were required to comply with the notice-and-cure provision before filing suit on those claims. This conclusion is consistent with the holding of *Johnson v. Countrywide Home Loans, Inc.*, in which the district court applied an identical notice-and-cure provision to bar claims brought under TILA, RESPA, the FDCPA, the FCRA on the basis that "*all* of Plaintiff's allegations arise from actions taken pursuant to the Deed of Trust." *Johnson v. Countrywide Home Loans, Inc.*, No. 1:10cv1018, 2010 WL 5138392, at *2 (E.D. Va. Dec. 10, 2010) (emphasis in original).

Defendants direct the Court's attention to *Cirino v. Bank of America, N.A.*, No. cv 13-8829 PSG (MRWx), 2014 WL 9894432 (C.D. Cal. Oct. 1, 2014), which addressed the scope of a choice of law provision in a deed of trust rather than a notice-and-cure provision. The court held that to the extent the plaintiff's state law claims could be said to "arise out of" the deed of trust, they were subject to the choice of law provision. *Id.* at *11. As relevant here, the court applied that test to the plaintiff's California UCL claims asserting that he had been charged unreasonable and unnecessary property inspection fees and had been misled into believing that the fees were authorized under the deed of trust. *Id.* The court held that those claims did arise out of the deed of trust and in fact were "inextricably intertwined" with the terms of the deed of trust. *Id.* The court therefore concluded that the claims were subject to the choice of law provision specifying application of Mississippi law, and thus could not be asserted under California's UCL. *Id.* at 11-12. While *Cirino* is not directly on point, the Court agrees with Defendants that it supports the

7

1    conclusion that the claims asserted by Plaintiffs arise out of the Deed of Trust or, more precisely,

2    Ocwen Servicing's actions pursuant to the Deed of Trust.

3          Plaintiffs cite three district court decisions which declined to apply identical or nearly

4    identical notice and cure provisions to bar non-contract claims. *See Schmidt v. Wells Fargo Home*

5    *Mtg.*, No. 3:11-CV-059, 2011 WL 1597658 (E.D. Va. Apr. 26, 2011); *Beyer v. Countrywide Home*

6    *Loans Servicing LP*, C07-1512MJP, 2008 WL 1791506 (W.D. Wash. Apr. 18, 2008); *Gerber v.*

7    *First Horizon Home Loans Corp.*, No. C05-cv-1554P, 2006 WL 581082 (W.D. Wash. Mar. 8,

8    2006). For the reasons discussed below, none of these cases persuades the Court that the notice-

9    and-cure provision in Plaintiffs' Deed of Trust should be so limited here.

10         In *Schmidt*, the court found that the notice-and-cure provision did not apply to the

11   plaintiffs' claims, because the plaintiffs had sued only the loan servicer and the court determined

12   that the notice-and-cure provision was limited to claims against the lender. *Schmidt*, 2011 WL

13   1597658, at *3. As discussed above, this Court has determined that, based on the Loan

14   Modification, the notice-and-cure provision in Plaintiffs' Deed of Trust applies to Plaintiffs'

15   claims against the loan servicer. Consequently, *Schmidt* is factually distinguishable. The *Schmidt*

16   court did note that "several courts have acknowledged that identical notice-and-cure provisions do

17   not extend to claims based on deceptive business practices," but it did not analyze the issue

18   further. *Id.* In both *Beyer* and *Gerber*, the courts declined to apply notice-and-cure provisions to

19   non-contract claims based upon express determinations that the claims at issue did "not arise from

20   the mortgage contract," *Beyer*, 2008 WL 1791506, at *4, and existed "independent of any contract

21   between the parties," *Gerber*, 2006 WL 581082, at *3. In the present case, this Court has

22   determined that all of Plaintiffs' claims are grounded in Ocwen Servicing's conduct taken

23   pursuant to the Deed of Trust. The Court thus does not find *Beyer* or *Gerber* to be persuasive.

24         In *Kim v. Shellpoint Partners, LLC*, a recent case cited by neither party, the court declined

25   to apply what appears to have been an identical notice-and-cure provision to the plaintiff's TILA

26   claim on the basis that "TILA duties are statutory, and do not arise under or out of the deed of

27   trust." *Kim v. Shellpoint Partners, LLC*, No. 15cv611-LAB (BLM), 2016 WL 1241541, at *7

28   (S.D. Cal. Mar. 30, 2016). The *Kim* court recognized that limiting the notice-and-cure provision

8

in this manner presented a "close" question. *Id.* However, the court devoted only two sentences to the analysis of that question and did not address the language of the provision compelling notice and opportunity to cure with respect to claims that arise from the other party's *actions pursuant to* the deed of trust. *Id.* In this Court's view, that language encompasses not only claims arising directly under or out of the Deed of Trust, but also claims arising from actions taken pursuant to authority granted by the Deed of Trust.

Accordingly, the Court GRANTS Defendants' motion to dismiss as to Ocwen Servicing.

Ocwen Servicing is the only Defendant alleged to have communicated or interacted directly with Plaintiffs. The remaining Defendants are alleged to be liable as Ocwen Servicing's co-conspirators. *See* SAC ¶ 8 ("Ocwen Financial, Erbey and Altisource [ ] have been named for their active roles in this complex mortgage scheme, including their actions in conspiring with and aiding and abetting Ocwen Servicing's conduct."). "[A]ider and abettor liability requires actual commission of the underlying tort." *Harrison Ventures, LLC v. Alta Mira Treatment Ctr., LLC*, No. C 10-00188 RS, 2010 WL 1929566, at *5 (N.D. Cal. May 12, 2010). Because Plaintiffs' claims against Ocwen Servicing are subject to dismissal, so too are their claims against the remaining Defendants.

Plaintiffs argue that even if the Court finds their claims against Ocwen Servicing to be barred by the notice-and-cure provision, their claims against Ocwen Financial, Altisource and Erbey are not barred. Plaintiffs quote *Ward v. Apple Inc.* for the proposition that "[i]t has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit." *Ward v. Apple Inc.*, 791 F.3d 1041, 1048 (9th Cir. 2015) (internal quotation marks and citation omitted). In *Ward*, the plaintiffs alleged an antitrust action against Apple based upon Apple's exclusivity agreement with an alleged nonparty co-conspirator to provide voice and data services for Apple's iPhone. The district court dismissed the action under Federal Rule of Civil Procedure 19 for failure to join the co-conspirator as a required party. The Ninth Circuit reversed, holding that because antitrust co-conspirators are jointly and severally liable for all damages caused by the conspiracy, "an absent antitrust co-conspirator generally will not be a required party." *Id.* at 1049. That holding is not relevant to the present case, in which the question is not

whether Plaintiffs may pursue a viable claim against one of two joint tortfeasors without naming the other, but whether Plaintiffs may pursue conspiracy/aiding and abetting claims when no underlying tort has been established.

The Court therefore GRANTS the motion to dismiss as to Ocwen Financial, Altisource, and Erbey.

### B.  Defendants' Other Arguments

Even if the notice-and-cure provision were not dispositive of Plaintiffs' claims, the Court would dismiss the claims on other grounds. While it need not address those grounds in light of its determination regarding the effect of the notice-and-cure provision, the Court highlights some of the other pleading defects that are fatal to Plaintiffs claims for the sake of completeness.

#### 1.  RICO (Claim 7)

Claim 7 alleges both a substantive RICO claim and a RICO conspiracy claim Defendants.

##### a.  Substantive RICO Claim

The elements of a substantive civil RICO claim are: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as predicate acts) (5) causing injury to the plaintiff's business or property." *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996) (internal quotation marks and citation omitted).

Plaintiffs allege predicate acts of mail and wire fraud. Where a civil RICO claim is based upon mail or wire fraud, those fraudulent acts must be alleged with the particularity required by Federal Rule of Civil Procedure 9(b). *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991); *Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1400-01 (9th Cir. 1986). "Federal Rule of Civil Procedure 9(b) requires a pleader of fraud to detail with particularity the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme." *Lancaster Cmty. Hosp.*, 940 F.2d at 405 (citing Fed. R. Civ. P. 9(b)).

"Mail and wire fraud can be premised on either a non-disclosure or an affirmative misrepresentation." *Eller v. EquiTrust Life Ins. Co.*, 778 F.3d 1089, 1092 (9th Cir. 2015). "A non-disclosure, however, can support a fraud charge only when there exists an independent duty that has been breached by the person so charged." *Eller*, 778 F.3d at 1092 (internal quotation

10

marks and citation omitted). "Absent an independent duty, such as a fiduciary duty or an explicit statutory duty, failure to disclose cannot be the basis of a [RICO] fraudulent scheme." *Id.* (internal quotation marks and citation omitted). In general, no fiduciary relationship exists between a mortgagee and the loan servicer. *See Monreal v. GMAC Mortg., LLC*, 948 F. Supp. 2d 1069, 1078 (S.D. Cal. 2013).[3]

This Court dismissed the RICO claim as alleged in the FAC for failure to allege an affirmative misrepresentation or a duty to disclose. Plaintiffs have failed to cure that defect in their SAC. Plaintiffs have clarified that their RICO claim is not based upon Ocwen Servicing's "no charge letters" or alleged "double dipping," but is based only on Ocwen Servicing's failure to disclose (or concealment, as Plaintiffs would have it) that *Altisource* added an upcharge – that is, charged Ocwen Servicing more than its bare cost – which Ocwen Servicing passed through to the Plaintiffs. However, Plaintiffs have not identified any legal basis for an assertion that Ocwen Servicing had a duty to determine the breakdown of the BPO fee Altisource was charging it and disclose to homeowners what portion of that fee was Altisource's own cost and what portion was profit to Altisource.

The Court is not persuaded that Plaintiffs may rely on the 2013 CFPB Consent Order as a basis for RICO liability. Plaintiffs have not cited, and the Court has not discovered, any case in which the CFPB Consent Order was held to establish a disclosure duty for purposes of a RICO claim. The *Ford Motor* case relied upon by Plaintiffs is distinguishable, as it involved Ford Motor Company's fraudulent concealment of its failure to divest itself of certain assets in compliance

---

[3] Plaintiffs assert that "concealment" of a material fact, as distinct from nondisclosure, also may support a RICO claim. The Supreme Court case cited for this proposition, *Neder v. United States*, addressed the issue of whether a misrepresentation or concealment asserted as a basis of a RICO claim must be a misrepresentation or concealment of a *material* fact. *Neder v. United States*, 527 U.S. 1, 21 (1999). The case did not draw the distinction between nondisclosure and concealment argued by Plaintiffs. Similarly, the Ninth Circuit case that Plaintiffs assert recognized concealment as a separate basis for mail and wire fraud is a criminal case that upheld the trial court's jury instruction distinguishing "between acts of concealment done in furtherance of the main criminal objectives of the conspiracy, and acts of concealment done after these central objectives have been attained, for the purpose only of covering up after the crime." *United States v. Stinson*, 647 F.3d 1196, 1215 (9th Cir. 2011). Finally, Plaintiffs rely heavily on a Fourth Circuit case, *United States v. Colton*, 231 F.3d 890, 899 (4th Cir. 2000). This Court cites and relies on recent Ninth Circuit authority for the elements of a civil RICO claim.

11

with a final judgment in an antitrust action brought by the United States Justice Department.  *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277 (3rd Cir. 1991).  The case did not address the question of whether a consent order (or other judicial order) creates a *duty to disclose* that may form the basis of a RICO wire fraud or mail fraud claim.

Plaintiffs similarly have failed to establish a duty to disclose based upon two cited provisions of the Code of Federal Regulations – 12 C.F.R. § 1024.35(b)(5) and 12 C.F.R. § 1026.41(d)(2)(ii) – neither of which imposes such a duty.

The Court notes that Plaintiffs devote significant argument to cases that the Court considered and distinguished in its prior order, most notably *Weiner v. Ocwen Financial*, No. 2:14-cv-02597-MCE-DAD, 2015 WL 4599427 (E.D. Cal. July 29, 2015), and *Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 937 (N.D. Cal. 2013).  The Court notes that while Plaintiffs now allege specifically that they were charged BPO fees in excess of prevailing market rates, as did the plaintiffs in *Weiner*, the *Weiner* decision is still distinguishable because the deed of trust in that case expressly prohibited the defendant from obtaining reimbursement for "marked up fees designed to make a profit" whereas the Deed of Trust in the present case contains no such restriction.

Plaintiffs' failure to allege a duty to disclose the breakdown of Altisource's BPO fee is fatal to their RICO claim.

                                             **b.**     **RICO Conspiracy Claim**

A failure to plead a substantive RICO violation is fatal to a RICO conspiracy claim.  *Howard v. America Online, Inc.*, 208 F.3d 741, 751 (9th Cir. 2000).  Because Plaintiffs fail to plead a substantive RICO violation, they likewise fail to plead a RICO conspiracy claim.

                   **2.**     **FDCPA and RFDCPA (Claims 5 and 6)**

Claims 5 and 6 allege claims under the FDCPA and RFDCPA, respectively, against Ocwen Servicing and Erbey.  These claims are based upon Plaintiffs' allegations that Ocwen Servicing and Erbey collected property inspection fees and BPO fees that they were not legally entitled to collect.  SAC ¶¶ 219, 229.

To establish liability under either the FDCPA or the RFDCPA, a plaintiff must show that

the defendant was a debt collector or engaged in debt collection activity. *Hunt v. Wells Fargo Bank, N.A.*, No. 2:13-cv-02435-MCE-KJN, 2014 WL 1028391, at *4-5 (E.D. Cal. Mar. 17, 2014). Under the FDCPA, the term "debt collector" means "[1] any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or [2] who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The RFDCPA defines "debt collector" as "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection." Cal. Civ. Code § 1788.2(c). Critical to both definitions of the term is the notion that a debt collector is one who directly or indirectly engages in collection activity. Erbey is not alleged to have taken any actions individually to collect property inspection fees or BPO fees. Plaintiffs argue that Erbey personally signed the "no charge letter" representing that property inspections would be done at no charge. However, no signature appears on that letter – Erbey's name is merely printed at the bottom. No Charge Letter, SAC Exh. 3, ECF 78-3. Moreover, the fact that Erbey's name appears on the letter containing information that no charge would be made for property inspections does not suggest that he personally took action to *collect* a debt from Plaintiffs.

In addition, Plaintiffs have not alleged facts showing that Ocwen Servicing or Erbey collected property inspection fees or BPO fees that they were not legally authorized to collect. The Deed of Trust expressly authorizes Ocwen Servicing to collect property inspection and BPO fees. Plaintiffs argue that despite this express authorization, Ocwen Servicing was not entitled to collect property inspection fees because the "no charge letter" stated that property inspections would be free; was not entitled to "double dip" by charging for contemporaneous property inspections and BPOs; and was not entitled to pass through Altisource's upcharge without obtaining a breakdown of Altisource's cost and profit and disclosing that to Plaintiffs. With respect to the "no charge letter," the schedule of fees stated expressly that "All fees and amounts are subject to change without prior notice. Additional fees and amounts may apply depending on your specific request and the status of your loan." No Charge Letter, SAC Exh. 3, ECF 78-3. Plaintiffs have cited no authority that a schedule of fees containing this type of disclaimer

1  precludes Ocwen Servicing from later charging a fee for property inspections. Similarly, Plaintiffs
2  offer no authority for the proposition that Ocwen Servicing could not obtain both a property
3  inspection and a BPO, other than Plaintiffs' own opinion that it was unnecessary to obtain both.
4  Finally, Plaintiffs offer no authority for the proposition that Ocwen Servicing's disclosure of the
5  amount of the BPO fee that it paid Altisource and recouped from Plaintiffs was inadequate
6  because Ocwen Servicing did not *also* obtain and disclose Altisource's breakdown of its cost and
7  profit.

### 3. UCL Unlawful, Fraudulent, and Unfair Prongs (Claims 1, 2, and 3)

Claims 1, 2, and 3 allege violations of the UCL's unlawful, fraudulent, and unfair prongs, respectively. *See* California Business & Professions Code § 17200 (prohibiting an individual or entity from engaging in an "unlawful, unfair or fraudulent business act or practice"). "Because the statute is written in the disjunctive, it is violated where a defendant's act or practice violates any of the foregoing prongs." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012).

#### a. Unlawful

"By proscribing any unlawful business practice, section 17200 borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000) (internal quotation marks and citation omitted). Plaintiffs base their UCL claim under the unlawful prong on asserted violations of the FDCPA, the RFDCPA, the CFPB Consent Order, and the Dodd-Frank Wall Street Reform and Consumer Protection Act. SAC ¶ 167. For the reasons discussed herein, Plaintiffs have failed to alleged violations of the FDCPA, RFDCPA, or the CFPB Consent Order. The Dodd-Frank Act prohibits "a covered person or service provider from committing or engaging in an unfair, deceptive, or abusive act or practice under Federal law in connection with any transaction with a consumer for a consumer financial product or service, or the offering of a consumer financial product or service." 12 U.S.C. § 5531(a). Plaintiffs have not alleged facts showing that the fees charged in this case were unfair, deceptive, or abusive.

#### b. Fraud

"A business practice is fraudulent under the UCL if members of the public are likely to be

14

deceived." *Davis*, 691 F.3d at 1169. Allegations of fraud under § 17200 must satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). Rule 9(b) requires that "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "'Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged.'" *Kearns*, 567 F.3d at 1124 (quoting *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)). As discussed at length above in the context of the RICO claim, Plaintiffs assert fraudulent concealment in this case but they do not allege facts showing that Defendants had a duty to disclose or that the fees charged to Plaintiffs were unlawful or unfair.

### c. Unfair

Plaintiffs allege that Defendants' conduct in charging inflated and duplicative fees was unfair. SAC ¶ 189. However, Plaintiffs have not alleged facts or presented legal authority showing that the "no charge letter," pass-through of Altisource's alleged upcharge, and practice of obtaining both property inspections and BPOs within a short period of time were unfair.

### 4. Fraud (Claim 4)

Claim 4 alleges fraud based upon the "no charge letter," pass-through of Altisource's alleged upcharge, and practice of "double-dipping," that is, obtaining both property inspections and BPOs within a short period of time. As discussed in the context of the RICO claim and UCL fraud prong claim, Plaintiffs have not alleged facts showing that any of the alleged conduct constituted actionable fraud.

### C. Leave to Amend

In deciding whether to grant leave to amend, the Court must consider the factors set forth by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), and discussed at length by the Ninth Circuit in *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2009). A district court ordinarily must grant leave to amend unless one or more of the *Foman* factors is present: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, and (5) futility of amendment. *Eminence Capital*, 316 F.3d at 1052. "[I]t is the consideration of prejudice to the opposing party that carries

the greatest weight." *Id.* However a strong showing with respect to one of the other factors may warrant denial of leave to amend. *Id.*

There is no suggestion in the record of undue delay, bad faith, or dilatory motive on the part of Plaintiffs. However, Plaintiffs have twice amended their pleading, once with the benefit of the Court's prior dismissal order, and they still have not alleged a viable claim. The defects in the pleading are defects in Plaintiffs' theories, not a dearth of facts to support what might otherwise be viable theories. Based upon the Court's conclusions that Plaintiffs' theories are not viable, any further amendment likely would be futile.

The Court notes that after submission of the present motion, Plaintiffs sought leave to supplement their opposition with a letter they recently had received from Ocwen Servicing, stating that an overcharge in the amount of $3.50 had been discovered and would be reimbursed to Plaintiffs by waiver of other fees due. *See* Pls.' Admin. Motion, ECF 95. The Court denied Plaintiffs' request to supplement their opposition, but indicated that it would consider the letter in determining whether to grant further leave to amend. Order issued 7/7/2016, ECF 101. The letter does not provide a basis for granting leave to amend, as the fact that Ocwen Servicing has admitted to an overcharge, which it has agreed to reimburse, does not support any of Plaintiffs' claims.

Accordingly, the Court will not grant Plaintiffs a further opportunity to amend.

## IV. ORDER

(1) Defendants' motion to dismiss is GRANTED without leave to amend; and

(2) The action is DISMISSED with prejudice.

Dated: August 24, 2016

_____
BETH LABSON FREEMAN
United States District Judge

16